1   KEVIN P. MUCK (CSB No. 120918)
    kmuck@fenwick.com
2   MICHAEL S. DICKE (CSB No. 158187)
    mdicke@fenwick.com
3   FENWICK & WEST LLP
    555 California Street, 12th Floor
4   San Francisco, CA  94104
    Telephone:    415.875.2300
5   Facsimile:    415.281.1350

6   Attorneys for Defendant
    Joseph L. Jackson

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                       OAKLAND DIVISION

11

12

13  IN RE WAGEWORKS, INC., SECURITIES          Case No.: 4:18-CV-01523-JSW
    LITIGATION
14                                             **DEFENDANT JOSEPH L. JACKSON'S**
                                               **NOTICE OF MOTION AND MOTION TO**
15                                             **DISMISS PLAINTIFFS' CONSOLIDATED**
                                               **AMENDED CLASS ACTION**
16                                             **COMPLAINT AND MEMORANDUM OF**
                                               **POINTS AND AUTHORITIES IN**
17                                             **SUPPORT OF MOTION TO DISMISS**

18                                             Hearing
                                               Date:        November 22, 2019
19                                             Time:        9:00 a.m.
                                               Courtroom:   Courtroom 5, 2nd Floor
20                                             Judge:       The Honorable Jeffrey S. White

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENT ................................................................................................. v

NOTICE OF MOTION AND MOTION TO DISMISS ......................................................... 1

STATEMENT OF ISSUES .................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 2

I.   INTRODUCTION .......................................................................................................... 2

II.  STATEMENT OF FACTS ............................................................................................. 3

III. LEGAL STANDARDS .................................................................................................. 4

IV.  PLAINTIFFS DO NOT PLEAD A SECTION 10(B) CLAIM AGAINST MR. JACKSON ....................................................................................................................... 4

    A.   Plaintiffs Fail to Plead Loss Causation and Scienter ........................................... 5

    B.   Plaintiffs' Allegations Regarding Mr. Jackson's Stock Sales Do Not Support a Strong Inference of Scienter ................................................................. 5

        1.   Plaintiffs' "Net Proceeds" Theory has No Basis in Law, and Plaintiffs' Focus on Total Volume of Shares Ignores Mr. Jackson's Actual Historical Practices .................................................................. 6

        2.   Mr. Jackson's Sales During the 2017 Offering are Entirely Consistent with His Prior Trading Practices ........................................... 7

        3.   Mr. Jackson's Class Period Sales Outside a Public Offering Are Entirely Consistent With His Pre-Class Period Sales Outside a Public Offering ...................................................................................... 8

        4.   The Timing of the Stock Sales Negates an Inference of Scienter ............. 10

    C.   None of Plaintiffs' Other Allegations Support a Strong Inference of Scienter ............................................................................................................... 13

    D.   Plaintiffs' Allegations Regarding Mr. Jackson, Considered in Their Totality As Required by *Tellabs*, Preclude an Inference of Scienter ................... 13

V.   PLAINTIFFS DO NOT AND CANNOT PLEAD A SECTION 11 CLAIM ................. 14

VI.  PLAINTIFFS DO NOT AND CANNOT PLEAD CONTROL PERSON LIABILITY UNDER SECTION 20(A) OF THE 1934 ACT OR SECTION 15 OF THE 1933 ACT ................................................................................................................. 14

VII. CONCLUSION ............................................................................................................... 15

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................................4

*Backe v. Novatel Wireless, Inc.*,
642 F. Supp. 2d 1169 (S.D. Cal. 2009) .................................................................v, 15

*Brodsky v. Yahoo! Inc.*,
630 F. Supp. 2d 1104 (N.D. Cal. 2009) ....................................................................10

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
880 F. Supp. 2d 1045 (N.D. Cal. 2012) ......................................................................5

*Costabile v. Natus Med. Inc.*,
293 F. Supp. 3d 994 (N.D. Cal. 2018) ...............................................................*passim*

*Glenbrook Cap. Ltd. P'ship v. Kuo*,
2009 WL 839289 (N.D. Cal. Mar. 30, 2009) .............................................................4

*Gompper v. VISX, Inc.*,
298 F.3d 893 (9th Cir. 2002) ...................................................................................13

*In re Accuray Sec. Litig.*,
757 F. Supp. 2d 936 (N.D. Cal. Aug. 31, 2010) .......................................................11

*In re Century Aluminum Co. Sec. Litig.*,
729 F.3d 1104 (9th Cir. 2013) ...............................................................................v, 14

*In re Cooper Mountain Sec. Litig.*,
311 F. Supp. 2d 857 (N.D. Cal. 2004) ......................................................................11

*In re Immersion Corp. Sec. Litig.*,
2011 WL 6303389 (N.D. Cal. Dec. 16, 2011), *aff'd*, 762 F.3d 880 (9th Cir.
2014) ........................................................................................................................12

*In re NVIDIA Corp. Sec. Litig.*,
768 F.3d 1046 (9th Cir. 2014) ...................................................................................13

*In re Pixar Sec. Litig.*,
450 F. Supp. 2d 1096 (N.D. Cal. 2016) ...................................................................8, 9

*In re Quality Sys., Inc. Sec. Litig.*,
865 F.3d 113 (9th Cir. 2017) ......................................................................................6

*In re Rigel Pharms., Inc. Sec. Litig.*,
697 F.3d 869 (9th Cir. 2012) ......................................................................................4

*In re Silicon Graphics, Inc. Sec. Litig.*,
183 F.3d 970 (9th Cir. 1999), *superseded by statute on other grounds as stated
in Burbrink v. Campbell*, 734 F. App'x 416 (9th Cir. 2018) ...........................*passim*

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF AUTHORITIES**
**(Continued)**

Page(s)

*In re Vantive Corp. Sec. Litig.*,
   283 F.3d 1079 (9th Cir. 2002), *abrogated on other grounds as recognized in*
   *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776 (9th Cir. 2008) ................................. 8, 11, 12

*Loos v. Immersion Corp.*,
   762 F.3d 880 (9th Cir. 2014) ........................................................................................ v

*Madden v. Cowen & Co.*,
   576 F.3d 957 (9th Cir. 2009) ........................................................................................ 4

*McCasland v. FormFactor, Inc.*,
   2009 WL 2086168, *8 (N.D. Cal. July 14, 2009) ......................................................... 12

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
   540 F.3d 1049 (9th Cir. 2008) .................................................................................. 4, 8, 13

*Navarro v. Block*,
   250 F.3d 729 (9th Cir. 2001) ........................................................................................ 4

*Ronconi v. Larkin*,
   253 F.3d 423 (9th Cir. 2001) .................................................................................. *passim*

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
   552 U.S. 148 (2008) ..................................................................................................... 4

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ................................................................................................. 5, 14

*Thomas v. Magnachip Semiconductor Corp.*,
   167 F. Supp. 3d 1029 (N.D. Cal. 2016) ........................................................................ 14

*Tripp v. Indymac Fin. Inc.*,
   2007 WL 4591930 (C.D. Cal. Nov. 29, 2007) ............................................................... 8

*Webb v. SolarCity Corp.*,
   884 F.3d 844 (9th Cir. 2018) ............................................................................. v, 5, 14-15

*Wenger v. Lumisys, Inc.*,
   2 F. Supp. 2d 1231 (N.D. Cal. 1998) ........................................................................ 10, 12

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) .................................................................................. *passim*

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

**STATUTES AND RULES**

Federal Rules of Civil Procedure
 Rule 9(b) ...............................................................................................................1, 4
 Rule 12(b)(6) ...............................................................................................................1

Securities Act of 1933
 § 11, 15 U.S.C. § 77k .................................................................................... *passim*
 § 15, 15 U.S.C. § 77o .........................................................................................v, 1, 15

Securities Exchange Act of 1934
 § 10(b), 15 U.S.C. § 78j(b) .......................................................................... *passim*
 § 20(a), 15 U.S.C. § 78t ....................................................................................v, 1, 14

Securities and Exchange Commission
 Rule 10b-5, 17 C.F.R. § 240.10b-5 ...................................................................1

# SUMMARY OF ARGUMENT

Defendant Joseph L. Jackson ("Mr. Jackson") joins in the motion to dismiss filed by Defendant WageWorks, Inc. ("WageWorks" or "the Company"), and writes separately to address: (1) Plaintiffs' scienter allegations regarding Mr. Jackson, which are insufficient to state a claim against him under Section 10(b) of the Securities Exchange Act of 1934 ("1934 Act"); and (2) Plaintiffs' "control person" claims against Mr. Jackson pursuant to Section 20(a) of the 1934 Act and Section 15 of the Securities Act of 1933 ("1933 Act").

As set forth in WageWorks' motion, Plaintiffs' Section 10(b) claim against Mr. Jackson fails because Plaintiffs do not plead facts establishing a strong inference of scienter, *see Webb v. SolarCity Corp.*, 884 F.3d 844, 850-51 (9th Cir. 2018), or loss causation, *see Loos v. Immersion Corp.*, 762 F.3d 880, 887 (9th Cir. 2014). As to scienter, Plaintiffs do not allege facts showing Mr. Jackson was aware of the issue that ultimately led WageWorks to restate its financial results (*i.e.*, the government's surprising interpretation of its contract with the Company), let alone that he knew the government's position could impact the recognition of revenue. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009). Allegations regarding Mr. Jackson's stock sales do nothing to support a strong inference of scienter because Plaintiffs do not identify any trading that is remotely "suspicious" or "unusual." *Ronconi v. Larkin*, 253 F.3d 423, 435-36 (9th Cir. 2001); *Costabile v. Natus Med. Inc.*, 293 F. Supp. 3d 994, 1019 (N.D. Cal. 2018). With respect to loss causation, Plaintiffs do not plead facts showing that the decline in WageWorks' stock price was caused by a revelation of the alleged fraud. *Loos*, 762 F.3d at 887. Furthermore, Plaintiffs' inability to plead that the Company violated Section 10(b) means the "control person" claim against Mr. Jackson under Section 20(a) fails as a matter of law. *Webb*, 884 F.3d at 858.

As discussed by WageWorks, PERA's failure to allege that its purchase of shares is traceable to the public offering means that the Section 11 claim must be dismissed for lack of standing. *See In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104 (9th Cir. 2013). Because Plaintiffs have not stated a claim against WageWorks under Section 11 of the 1933 Act, Mr. Jackson cannot be liable as a control person under Section 15. *See Backe v. Novatel Wireless, Inc.*, 642 F. Supp. 2d 1169, 1192 (S.D. Cal. 2009).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on November 22, 2019 at 9:00 a.m., in Courtroom 5 of the United States District Court, 1301 Clay Street, Oakland, California, Defendant Joseph L. Jackson will, and hereby does, move to dismiss the Consolidated Amended Complaint ("CAC").

Mr. Jackson moves to dismiss the CAC pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) and the Private Securities Litigation Reform Act of 1995 ("PSLRA") on the grounds that Plaintiffs fail to state a claim upon which relief can be granted under Section 10(b) or Section 20(a) of the Securities Exchange Act of 1934 ("the 1934 Act"), or Section 11 or Section 15 of the Securities Act of 1933 ("the 1933 Act").  Mr. Jackson joins in the motion to dismiss filed by Defendant WageWorks, Inc. ("WageWorks") on July 26, 2019 ("the WageWorks Motion").  Mr. Jackson's motion is based on the following Memorandum of Points and Authorities, the accompanying Request for Judicial Notice in Support of Motion to Dismiss ("RJN"), the accompanying Declaration of Kevin P. Muck in Support of Motion to Dismiss ("Muck Decl.") and attached exhibits,[1] the pleadings, records and papers on file, including the WageWorks Motion and accompanying papers, the arguments of counsel, and any other matters that may be presented to the Court at or prior to the hearing.

## STATEMENT OF ISSUES

1.    Should the claim against Mr. Jackson under Section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), and Securities and Exchange Commission ("SEC") Rule 10b-5 ("Rule 10b-5"), 17 C.F.R. § 240.10b-5, be dismissed for failure to plead scienter and loss causation?

2.    Should the claim against Mr. Jackson under Section 20(a) of the 1934 Act, 15 U.S.C. § 78t, be dismissed for failure to plead an underlying violation of the 1934 Act?

3.    Should the claim against Mr. Jackson under Section 11 of the 1933 Act, 15 U.S.C. § 77k, be dismissed for lack of standing?

4.    Should the claim against Mr. Jackson under Section 15 of the 1933 Act, 15 U.S.C. 77o, be dismissed for failure to plead an underlying violation of the 1933 Act?

---

[1] Unless otherwise stated, all references in the brief to exhibits (*e.g.*, "Ex. A") relate to exhibits to the Muck Decl.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

In 2017, the federal government refused to pay WageWorks for six months of services the Company rendered, which amounted to less than one percent of the Company's revenue for the previous year.  As a result of the government's ongoing failure to pay, which is still being disputed, WageWorks was forced to restate its financial results for certain quarters of 2016 and 2017.  The changes were minor: the revenue adjustments ranged from 2.4 to 4.1 percent, and in one quarter the Company's revenues actually increased due to the restatement.  Yet armed with nothing more than that restatement, Plaintiffs now bring securities fraud claims against the Company and several other entities and individuals, including Mr. Jackson, the Company's former CEO and Chairman of the Board.  Plaintiffs' theory regarding Mr. Jackson (who is neither an accountant nor a lawyer) is that after eleven highly successful years as the Company's CEO, he intentionally misinterpreted WageWorks' contract with the government, risking his reputation and livelihood, in order to overstate the Company's 2016 revenue by less than one percent.

Mr. Jackson joins in WageWorks' motion to dismiss Plaintiffs' Section 10(b) claim.  As set forth in WageWorks' brief, Plaintiffs do not allege that Mr. Jackson (or any other defendant) knew of the government's belief that it would receive six months of services for free, let alone that the government's position could impact the Company's revenue.  Unable to plead facts establishing a strong inference of scienter, Plaintiffs rely on a litany of generalized, circumstantial allegations, none of which come close to meeting their pleading burden under the PSLRA.  The allegations regarding Mr. Jackson's stock sales are particularly unpersuasive.  Plaintiffs fail to identify any sale that is suspicious or unusual, as required by Ninth Circuit law; to the contrary, the sales are consistent with Mr. Jackson's previous trading practices and timed in a manner that negates, rather than supports, an inference of scienter.  As none of Plaintiffs' allegations, alone or together, establish a strong inference of scienter, the Section 10(b) claim must be dismissed.

Mr. Jackson also joins in the Company's motion to dismiss the Section 11 claim.  Moreover, because Plaintiffs do not allege a viable claim against WageWorks under Section 10(b) or Section 11, the control person claims against Mr. Jackson must be dismissed.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## II.     STATEMENT OF FACTS

WageWorks is a leader in administering consumer-directed benefits, including pre-tax spending accounts such as Health Savings Accounts, Flexible Spending Accounts ("FSA"), Health Reimbursement Arrangements, consumer benefits and other employee benefits.[2] CAC ¶ 43.

Mr. Jackson served as WageWorks' CEO from 2007 until April 5, 2018; he then served as the Company's Executive Chairman of the Board until September 12, 2018. *Id.* ¶ 34; Ex. E. Under his leadership, WageWorks not only completed a successful initial public offering, but also demonstrated impressive business growth and profitability. In 2013, WageWorks' first full year as a public company, annual revenues were $219.3 million and net income was $21.7 million. *See* Declaration of Betty Chang Rowe in Support of WageWorks' Motion to Dismiss, filed July 26, 2019 ("Rowe Decl."), Ex. B at 32. By 2017, annual revenues had grown to $476.1 million (an increase of 117%) and net income rose to $54.4 million. *See id.*

This lawsuit involves WageWorks' March 1, 2016 contract with the United States Office of Personnel Management ("OPM") to administer OPM's FSA program ("the OPM Contract"). CAC ¶ 60. In February 2017, WageWorks submitted an invoice to OPM that included $5.1 million for services performed in the first six months of the contract, *id.* ¶ 86, which OPM never paid, *id.* ¶ 122. After OPM denied WageWorks' certified claim, WageWorks filed an appeal, which the company is still vigorously litigating against OPM. *See* Rowe Decl. Ex. B at 28.

On April 5, 2018, WageWorks disclosed that its financial statements for certain quarters of 2016 and 2017 would be restated. CAC ¶ 140. WageWorks filed its restated 2016 and 2017 financial results on March 18, 2019, reporting that revenues for the second, third, and fourth quarters of 2016 were adjusted slightly downward by approximately $3.1 million (3.5%), $3.7 million (4.1%), and $2.4 million (2.4%), respectively. Ex. C at 10; Ex. D at 11; Rowe Decl. Ex. B at 79. Notably, the Company reported that revenues and net income had been ***understated*** for the first quarter of 2017, by more than $1 million and nearly $5 million, respectively. Rowe Decl. Ex.

---

[2] A description of the parties and the relevant facts is contained in WageWorks' Memorandum of Points and Authorities in Support of Motion to Dismiss ("WageWorks Mem."), filed July 26, 2019. As noted above, Mr. Jackson joins in WageWorks' motion and, for purposes of efficiency, refers the Court to the additional factual background in the Company's brief.

B at 99.  The Company reversed $3.6 million in revenue from the OPM contract, which

constituted *less than one percent* of the previously-reported revenue.  Rowe Decl. Ex. B at 68.

Plaintiffs are three public retirement funds who allege that they acquired WageWorks

common stock between May 6, 2016 and March 1, 2018 ("the Class Period"), CAC ¶¶ 2, 29, or

that they purchased WageWorks common stock traceable to WageWorks' June 19, 2017 public

offering ("the 2017 Offering"), *id.* ¶¶ 24, 32.  They bring claims against Mr. Jackson pursuant to

Sections 10(b) and 20(a) of the 1934 Act and Sections 11 and 15 of the 1933 Act.

### III.     LEGAL STANDARDS

A motion to dismiss "tests the legal sufficiency of a claim."  *Navarro v. Block*, 250 F.3d

729, 732 (9th Cir. 2001).  The Court examines well-pleaded factual allegations, and any materials

referenced in the pleading or subject to judicial notice, and "determine[s] whether they plausibly

give rise to an entitlement to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  The Court also

assesses the sufficiency of allegations in light of heightened pleading standards that may apply to

the claim at issue.  For example, Plaintiffs' Section 10(b) claim must be pleaded in accordance

with Federal Rule of Civil Procedure 9(b) and the PSLRA, which contains numerous provisions

"limiting the potential liability of defendants" and "requiring plaintiffs . . . to surmount a number

of procedural hurdles."  *Madden v. Cowen & Co.*, 576 F.3d 957, 964 (9th Cir. 2009); *Glenbrook

Cap. Ltd. P'ship v. Kuo*, 2009 WL 839289, at *18 (N.D. Cal. Mar. 30, 2009).  Likewise, Section

11 claims "grounded in fraud" must comply with Rule 9(b).  *In re Rigel Pharms., Inc. Sec. Litig.*,

697 F.3d 869, 885-56 (9th Cir. 2012).

### IV.     PLAINTIFFS DO NOT PLEAD A SECTION 10(B) CLAIM AGAINST MR. JACKSON

To state a claim under Section 10(b), Plaintiffs must plead: (1) a material misstatement or

omission; (2) scienter; (3) purchase or sale of a security; (4) reliance; (5) economic loss; and

(6) loss causation.  *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157

(2008).  Plaintiffs must support each element with particularized facts sufficient to satisfy both

Rule 9(b) and the "formidable pleading requirements" of the PSLRA.  *Metzler Inv. GMBH v.

Corinthian Colls., Inc.*, 540 F.3d 1049, 1055 (9th Cir. 2008).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Moreover, the PSLRA requires Plaintiffs to establish a "strong inference" of scienter with respect to each defendant. *Webb v. SolarCity Corp.*, 884 F.3d 844, 850-51 (9th Cir. 2018). To satisfy that requirement, Plaintiffs must allege facts showing that Mr. Jackson knowingly made false statements or acted with deliberate recklessness tantamount to actual intent. *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 976-77 (9th Cir. 1999), *superseded by statute on other grounds as stated in Burbrink v. Campbell*, 734 F. App'x 416 (9th Cir. 2018). As the Supreme Court has explained, the inference of scienter "must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 309 (2007).

## A.  Plaintiffs Fail to Plead Loss Causation and Scienter

Mr. Jackson joins WageWorks' motion to dismiss, which explains that the Section 10(b) claim fails because Plaintiffs do not: (1) plead particularized facts supporting a strong inference of scienter as to any defendant (including Mr. Jackson); and (2) adequately allege loss causation. Mr. Jackson writes separately to address the absence of specific facts demonstrating his scienter; indeed, allegations regarding his stock sales ultimately negate an inference of fraudulent intent.

## B.  Plaintiffs' Allegations Regarding Mr. Jackson's Stock Sales Do Not Support a Strong Inference of Scienter

Under Ninth Circuit law, a defendant's stock sales cannot support a strong inference of scienter unless plaintiffs specifically identify "unusual" or "suspicious" trading, *i.e.*, trading that is "***dramatically out of line*** with prior trading practices at times ***calculated to maximize the personal benefit*** from undisclosed inside information." *Silicon Graphics*, 183 F.3d at 986 (emphasis added). As this Court has held, in determining whether sales are suspicious, the relevant factors to consider are: (1) the amount and percentage of shares sold; (2) the timing of sales; and (3) consistency with prior trading history. *Costabile v. Natus Med. Inc.*, 293 F. Supp. 3d 994, 1019 (N.D. Cal. 2018); *see also City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1069 (N.D. Cal. 2012). The stock sales must be "significant enough and uncharacteristic enough to cast doubt" on the defendant's motives. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1006 (9th Cir. 2009).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Plaintiffs have utterly failed to meet their burden to plead facts demonstrating that Mr. Jackson's stock sales were out of line, let alone "dramatically" out of line, with his prior practices. Although Plaintiffs focus on the total market value and amounts of Mr. Jackson's sales over the entire Class Period in an attempt to make the sales seem suspicious, that effort is both misleading and legally flawed.  When Mr. Jackson's sales are considered in light of his actual trading history, they are entirely consistent with his prior trading practices.  Furthermore, Plaintiffs are unable to show that his sales during the Class Period were timed in a manner suggesting any connection to the Company's announcements of its allegedly inflated results.

> **1.     Plaintiffs' "Net Proceeds" Theory has No Basis in Law, and Plaintiffs' Focus on Total Volume of Shares Ignores Mr. Jackson's Actual Historical Practices**

Plaintiffs combine all of Mr. Jackson's stock sales during the Class Period in an attempt to claim that the total amount of shares sold and total net proceeds of those sales are unusual or suspicious when compared with the total amounts and net proceeds of Mr. Jackson's sales during the 664 days prior to the Class Period, which Plaintiffs dub "the pre-Class Period."  *See* CAC ¶¶ 187-92.  This analysis is misleading.

As this Court has explained, there is no legal basis for Plaintiffs' "net proceeds" theory. *See Costabile*, 293 F. Supp. 3d at 1020 ("Plaintiff, however, does not cite any case for the authority that courts should look to the realized proceeds of a sale, and the Court has located none.").  In any securities fraud case, the defendants' sales during the class period will ***almost always*** result in higher proceeds than sales outside the class period, because if the stock price was not higher during the class period than it was outside the class period, the plaintiffs would not even have a theoretical case.  For that reason, courts focus on the ***number of shares sold***, not the alleged proceeds the defendant made from the sales.  *See id.* ("[T]he relevant authority directs the Court to examine 'the amount and percentage of shares sold.'" (quoting *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1146 (9th Cir. 2017))).

More importantly, Plaintiffs' analysis ignores that the vast majority of the shares Mr. Jackson sold during the Class period were sold pursuant to the Company's 2017 Offering – and

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   that sale is entirely consistent with what Mr. Jackson did in WageWorks' prior public offering.[3]

2   In WageWorks' public offering on August 13, 2013 ("the 2013 Offering"), Mr. Jackson sold

3   **340,000 shares**, *see* Ex. A, a number that is not "dramatically out of line" with the 495,148 shares

4   he sold in the 2017 Offering. *See Silicon Graphics*, 183 F.3d at 986. Likewise, as discussed

5   further below, none of the sales Mr. Jackson made outside a public offering during the Class

6   Period was inconsistent with the sales he made outside a public offering prior to the Class Period.

7          Lumping all of Mr. Jackson's sales during the Class Period together, without examining the

8   specific transactions, is both disingenuous and ineffective in satisfying Plaintiffs' pleading burden.

9   During the Class Period, Mr. Jackson made a few small sales of approximately 10% of his

10  holdings, just as he had done in the past, and then sold a larger percentage of his holdings in the

11  Company's public offering, just as he had done in the past. When Mr. Jackson's individual stock

12  sales are considered in comparison with his actual historical practices, as required under Ninth

13  Circuit law, it is clear that none of Mr. Jackson's sales are remotely "unusual" or "suspicious."

14  *Silicon Graphics*, 183 F.3d at 986. To the contrary, Mr. Jackson's "prior trading history

15  undermines any inference of scienter that may otherwise have arisen from [his Class Period] stock

16  sales." *Costabile*, 293 F. Supp. 3d at 1020.

17              **2.      Mr. Jackson's Sales During the 2017 Offering are Entirely Consistent**
                          **with His Prior Trading Practices**
18
          Plaintiffs have not and cannot demonstrate that Mr. Jackson's sales in the 2017 Offering
19
    were inconsistent with his prior trading practices. As noted above, Mr. Jackson sold 495,148
20
    shares in the 2017 Offering. *See* CAC ¶ 192; Ex. A. This is entirely consistent with Mr.
21
    Jackson's behavior during the Company's prior public offering, in which he also sold hundreds of
22
    thousands of shares. *See Costabile*, 293 F. Supp. 3d at 1019-20 (no scienter where defendant sold
23
    270,000 shares during fourth quarter of class period year because his sale of 206,878 shares during
24

25  _____

26  [3] Plaintiffs improperly limit their "analysis" of Mr. Jackson's prior trading to the "664 days"
    preceding the Class Period (CAC ¶ 187), and presumably will try to justify that approach because
    664 days is the length of their arbitrarily-selected Class Period. However, the proper analysis
27  under the PSLRA is not whether a defendant sold more or fewer shares during artificial windows
    selected unilaterally by Plaintiffs, but whether the full context of the sales suggests that they are
28  dramatically out of line with prior trading history. *See Costabile*, 293 F. Supp. 3d at 1020.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   fourth quarter of previous year "reinforce[ed] the inference that it was not unusual for him to

2   make large fourth quarter sales"); *In re Pixar Sec. Litig.*, 450 F. Supp. 2d 1096, 1105 (N.D. Cal.

3   2016) (no scienter where defendant sold 150,000 shares during class period in light of trading

4   history consisting of sale of 100,000 shares prior to class period).  The mere size of a defendant's

5   sale is not evidence of scienter where plaintiffs fail to demonstrate that it is inconsistent with prior

6   trading practices.  *See Zucco Partners*, 552 F.3d at 1006 ("no inference of scienter can be

7   gleaned" from large stock sales where there was "no allegation" that the sales, "though

8   significant," were "inconsistent with their usual trading patterns"); *Ronconi v. Larkin*, 253 F.3d

9   423, 435-36 (9th Cir. 2001) (no scienter even assuming defendant's large sales of 98% of total

10  shares were "suspicious in amount and timing" where there was no evidence they were

11  dramatically out of line with prior trading practices); *In re Vantive Corp. Sec. Litig.*, 283 F.3d

12  1079, 1092 (9th Cir. 2002) ("[B]y themselves, large numbers do not necessarily create a strong

13  inference of fraud."), *abrogated on other grounds as recognized in South Ferry LP, No. 2 v.*

14  *Killinger*, 542 F.3d 776, 784 (9th Cir. 2008).

15       Nor is there a strong inference of scienter based upon the percentage of his holdings that

16  Mr. Jackson sold in the 2017 Offering.  Indeed, Mr. Jackson **retained one-third of his holdings**

17  after the 2017 Offering and continued to hold those shares through the end of the Class Period.

18  *See* Ex. A; Ex. B.  That fact undermines any inference of scienter.  *See Tripp v. Indymac Fin. Inc.*,

19  2007 WL 4591930, at *4 (C.D. Cal. Nov. 29, 2007) (the "inference of scienter is functionally

20  negated" by defendants' retention of a large percentage of their stock).  Moreover, courts have

21  regularly found that sales of higher percentages of a defendant's shares are not suspicious.  *See,*

22  *e.g.*, *Silicon Graphics*, 183 F.3d at 987-88 (no inference of scienter where stock sales were in

23  excess of 75.3% of defendant's holdings); *Metzler*, 540 F.3d at 1067 (no scienter where one

24  defendant sold 100% of his holdings and another sold 37%).

25           **3.    Mr. Jackson's Class Period Sales Outside a Public Offering Are
26                   Entirely Consistent With His Pre-Class Period Sales Outside a Public
                     Offering**

27       Whether considered individually or collectively, Mr. Jackson's sales during the class period

28  outside the 2017 Offering are entirely consistent with his sales made prior to the Class Period

outside a public offering.  The following charts outline Mr. Jackson's stock sales outside a public offering during Plaintiffs' "pre-Class Period" and the Class Period, respectively:[4]

| Pre-Class Period | |
|---|---|
| *Date* | *Shares* |
| 3/13/2015 | 95,095 |
| 3/8/2016 | 6,791 |
| 3/9/2016 | 58,394 |
| 3/14/2016 | 13,639 |
| **Total:** | **173,919** |

| Class Period | |
|---|---|
| *Dates* | *Shares* |
| 5/20/2016 | 50,000 |
| 5/23/2016 | 21,198 |
| 5/24/2016 | 24,883 |
| 12/13/2016 | 54,929 |
| 12/14/2016 | 32,820 |
| **Total:** | **183,830** |

As reflected in these charts, Mr. Jackson sold 183,830 shares outside of a public offering during the Class Period, and 173,919 shares outside of a public offering prior to the Class Period, *a difference of less than six percent*.  This slight difference in the amount of shares sold prior to and during the Class Period is nowhere near sufficient to constitute "inconsistent" trading that raises a strong inference of scienter.  *See, e.g.*, *In re Pixar Sec. Litig.*, 450 F. Supp. 2d at 1105.  Nor is the amount of shares Mr. Jackson sold in any one sale during the Class Period inconsistent with the amounts of shares Mr. Jackson sold during individual sales prior to the Class Period.[5]

Similarly, the percentage of holdings that Mr. Jackson sold during the Class Period (outside of the 2017 Public Offering) is nearly identical to his prior dispositions.  During *every one* of Mr. Jackson's sales outside of a public offering, whether in the Class Period or before it, he sold about the same portion of his shares and vested options within one week: (1) prior to the Class Period, he sold approximately 11% of his holdings on March 13, 2015, and 9% from March 8, 2014 through March 14, 2016; and (2) during the Class Period, Mr. Jackson sold approximately 12% of his holdings from May 20, 2016 through May 23, 2016, and 12% of his holdings from December 13, 2016 through December 14, 2016.  *See* Ex. A; Ex. B.

---

[4] The information in these charts is derived from paragraphs 191-92 of the CAC.

[5] As discussed above, it is the amount of shares sold, and not the proceeds from the sales, that courts analyze.  *See Costabile*, 293 F. Supp. 3d at 1020.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1       As Plaintiffs have failed to demonstrate that Mr. Jackson's stock sales are inconsistent with

2   his prior trading practices, the sales cannot support an inference of scienter.  *See Zucco Partners*,

3   552 F.3d at 1006; *Ronconi*, 253 F.3d at 435-36.

4           **4.**      **The Timing of the Stock Sales Negates an Inference of Scienter**

5       Even if Mr. Jackson's stock sales were inconsistent with his prior trading – which they are

6   not – the stock sales cannot contribute to an inference of scienter because Plaintiffs fail to identify

7   ***any*** link between the allegedly misstated financial results and Mr. Jackson's trading.  *See Silicon*

8   *Graphics*, 183 F.3d at 986.  Plaintiffs bear the burden of demonstrating that the sales were made

9   "at times calculated to maximize the personal benefit from undisclosed inside information."  *Id.*

10  Plaintiffs' meager allegations regarding timing do not come close to meeting this burden.

11      First, Plaintiffs allege in a conclusory fashion that Mr. Jackson's trades occurred while

12  WageWorks stock was selling at "unusually high trading prices."  CAC ¶ 193.  However, they fail

13  to allege that the ***particular*** dates and prices of Mr. Jackson's trades are suspicious.  None of Mr.

14  Jackson's Class Period sales were made when the stock price was at or near its highest price,

15  $80.20 per share, *see* Rowe Decl. Ex. E, and Plaintiffs do not identify any other aspect of the

16  timing that is suspicious.  As a result, there is no inference of scienter.  *See Brodsky v. Yahoo!*

17  *Inc.*, 630 F. Supp. 2d 1104, 1118-19 (N.D. Cal. 2009) (no scienter where amount and percentage

18  of shares sold were suspicious but only timing allegations were that defendants sold stock

19  following earnings releases, "which is common practice among corporate executives"); *Wenger v.*

20  *Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1251 (N.D. Cal. 1998) (no scienter where "none of the sales

21  occurred at suspicious times, such as immediately before a negative earnings announcement.").

22      Second, by considering all of Mr. Jackson's stock sales during the Class Period

23  collectively, Plaintiffs conveniently avoid the fact that Mr. Jackson **sold no stock during the first**

24  **six months of 2017**, the time period following the announcement of WageWorks' third quarter

25  earnings and full year results for 2016, when WageWorks' stock price rose above $80 a share.

26  *See* Rowe Decl. Ex. E.  Instead, after his routine, small sales of approximately 10% of his

27  holdings in May 2016 and December 2016, Mr. Jackson held on to ***nearly ninety percent*** of his

28  holdings for ***seven months*** and waited to sell his stock until WageWorks' next public offering, on

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

1    June 19, 2017, just as he had done in the past.  *See* Ex. A, Ex. B.  By that time, WageWorks' stock

2    had fallen to $69.25 per share.  *See* Rowe Decl. Ex. E.  Had Mr. Jackson wanted to maximize his

3    personal benefit from undisclosed non-public information regarding results that were later

4    restated, he would have sold his shares when the stock price rose following the earnings releases,

5    as opposed to waiting until many months later, after the stock had ***lost*** 14% of its value.  *See In re*

6    *Cooper Mountain Sec. Litig.*, 311 F. Supp. 2d 857, 875 (N.D. Cal. 2004) ("Had [defendants'] sales

7    been calculated to reap the benefits of the undisclosed information, it is likely that at least some of

8    the stock sales would have been at a price closer to the stock's maximum value.").

9         The stock price the day before the Class Period began was $52.82 per share.  Thus, the

10   difference between the highest stock price during the Class Period ($80.20) and the price on the

11   date Mr. Jackson sold the majority of his stock ($69.25) represented nearly 40% of the entire price

12   increase during the Class Period.  *See* Rowe Decl. Ex. E.  In other words, by waiting to sell his

13   shares until the 2017 Offering, Mr. Jackson missed out on nearly 40% of the alleged stock

14   increase, which is entirely inconsistent with an inference of scienter.  *See Ronconi*, 253 F.3d at

15   435 (finding no scienter where defendants sold at share prices averaging $54 and the stock price

16   ultimately rose to $73 because "[w]hen insiders miss the boat this dramatically, their sales do not

17   support an inference that they are preying on ribbon clerks who do not know what the insiders

18   know"); *Vantive*, 283 F.3d at 1093-94 (no scienter where defendant sold the majority of his shares

19   at prices between $20-25 per share and the price ultimately peaked at $39; defendant's sales were

20   "below a price at which [he] could be seen to have maximized the value of inside knowledge"); *In*

21   *re Accuray Sec. Litig.*, 757 F. Supp. 2d 936, 950-51 (N.D. Cal. Aug. 31, 2010) (no scienter where

22   the stock traded at $29.25 per share but all of the insider sales were at or below $18 per share).

23        Third, following the Audit Committee's investigation, the Company determined that it

24   ***understated its net income and revenues*** for the first quarter of 2017.  In particular, revenues for

25   the first quarter of 2017 were ***understated by $1.0 million*** and net income was ***understated by***

26   ***nearly $5 million***.  *See* Rowe Decl. Ex. B at 99.  The Company reported the original, understated

27   first quarter results on May 5, 2017, about a month prior to Mr. Jackson's sales in the 2017

28   Offering.  Mr. Jackson's decision to sell stock at a time when the Company's revenues and net

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   income were ***understated***, not overstated, completely undermines any inference of fraud.

2   Plaintiffs bear the burden of demonstrating that the timing of Mr. Jackson's sales indicates an

3   effort to maximize profits from non-public information. *See Silicon Graphics*, 183 F.3d at 986.

4   Plaintiffs simply cannot make this showing when the majority of Mr. Jackson's Class Period sales

5   were made when the Company's results were ***understated***. *See In re Immersion Corp. Sec. Litig.*,

6   2011 WL 6303389, at *9 (N.D. Cal. Dec. 16, 2011) (no scienter where stock sales occurred when

7   net income and revenues were understated), *aff'd*, 762 F.3d 880 (9th Cir. 2014); *see also*

8   *McCasland v. FormFactor, Inc.*, 2009 WL 2086168, at *8 (N.D. Cal. July 14, 2009) ("Another

9   logical problem with plaintiffs' fraud theory is that a number of defendants' challenged stock

10   trades occurred during [quarters] when … gross margins were understated and presumably a time

11   when the stock price would be negatively affected by such reporting.").

12       Fourth, the fact that Mr. Jackson chose to wait to sell his shares until the 2017 Offering

13   negates an inference of scienter given the extensive and thorough due diligence process required

14   in connection with a public offering.  As the Ninth Circuit has explained, "[c]ontext is important,

15   especially for assessing the weight to attach to the timing of the sales." *Vantive*, 283 F.3d at 1092.

16   Had Mr. Jackson truly believed that WageWorks was improperly inflating its revenue, it is

17   nonsensical that he would wait to sell his shares until numerous sophisticated investment banks

18   and law firms were examining every aspect of WageWorks' business, including its calculation of

19   revenue. *See Ronconi*, 253 F.3d at 436 (no scienter where "knowledgeable insiders act in a way

20   inconsistent with the inference that the favorable characterizations of the company's affairs were

21   known to be false when made"); *Wenger*, 2 F. Supp. 2d at 1251 (plaintiff failed to meet his burden

22   to establish a strong inference of scienter where none of the sales occurred at suspicious times).

23       Plaintiffs' other allegations are equally unpersuasive.  Plaintiffs emphasize that Mr. Jackson

24   "sold no WageWorks stock" between March 1, 2018, the end of the Class Period, and his last day

25   as CEO (CAC ¶ 195), but conveniently omit that this time period was only 35 days. *See id.* ¶ 34.

26   Plaintiffs also allege that Mr. Jackson's only stock purchases during the Class Period were made

27   pursuant to an Employee Stock Purchase Plan ("ESPP"). *See id.* ¶ 195.  This fact, however,

28   undermines scienter, because it is yet another instance in which Mr. Jackson's Class Period

transactions are consistent with prior practices. After WageWorks' initial public offering, Mr. Jackson *only* purchased shares pursuant to an ESPP, and obtained the vast majority of his stock through grants of stock options and restricted stock units as executive compensation. *See* Ex. A.

### C.     None of Plaintiffs' Other Allegations Support a Strong Inference of Scienter

None of Plaintiffs' other allegations support a strong inference of scienter with respect to Mr. Jackson. The CAC includes a series of boilerplate allegations (*see* CAC ¶¶ 160-185) that, as discussed in WageWorks' motion, do not contain "specific 'contemporaneous statements or conditions' that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made." *Ronconi*, 253 F.3d at 432.

Most importantly, Plaintiffs do not plead any facts demonstrating that Mr. Jackson *knew* that the government believed it did not need to pay for six months of services. *See Costabile*, 293 F. Supp. 3d at 1018-19 (no scienter where defendant's statements regarding a payment schedule were "subject to a competing inference" that they reflected "nothing more than [the defendant's] then-held belief about when payments actually would be received" based on his own interpretation of the contract); *Metzler*, 540 F.3d at 1068-69 (no inference of scienter from a restatement or accounting violation unless plaintiffs allege specific facts showing defendant "knowingly and recklessly engaged in an improper accounting practice."). Plaintiffs' allegation that calculation of revenue under the OPM Contract was "straightforward" is belied by the contract itself and the lengthy ongoing legal battle between WageWorks and OPM regarding that revenue. Put simply, Plaintiffs do not plead a single fact showing that Mr. Jackson's statements reflected anything other than his honest belief at the time. *See Costabile*, 293 F. Supp. 3d at 1018-19.

### D.     Plaintiffs' Allegations Regarding Mr. Jackson, Considered in Their Totality As Required by *Tellabs*, Preclude an Inference of Scienter

Because the CAC's individual allegations do not raise a strong inference of scienter, the Court must consider the relevant facts "holistically" to determine if, "taken together," they satisfy plaintiff's heavy burden. *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1056 (9th Cir. 2014). The PSLRA requires the Court to "consider all reasonable inferences…, including [those] unfavorable to the plaintiffs." *Gompper v. VISX, Inc.*, 298 F.3d 893, 897 (9th Cir. 2002).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Here, based on a "holistic" analysis of Plaintiffs' allegations, the most plausible inference is that Mr. Jackson honestly believed WageWorks was entitled to payment for all of its services to OPM under the contract, and he was not aware that OPM had a different understanding that (under complicated legal and accounting rules) would affect WageWorks' ability to recognize revenue for the first six months of its services.  Plaintiffs' contrary theory – that Mr. Jackson, who had been WageWorks' CEO for over eleven years, intentionally risked his livelihood and reputation over *less than one percent* of one year of the Company's revenue, and that he did so by *knowingly* misinterpreting the accounting rules relating to a complex legal document (as to which there is *still* a dispute between the Company and the government), then held on to *ninety percent* of his shares for *seven months* until the Company's next public offering, thereby missing out on a large portion of the gains from the alleged fraud – is entirely illogical.  *See Zucco Partners*, 552 F.3d at 981 (finding no scienter based on alleged accounting manipulations where allegations of fraud were not as cogent or compelling as plausible alternative inference that company experienced problems controlling its accounting practices but had no specific intent to fabricate its profits).

Accordingly, when the relevant facts are considered in their totality, it is clear that Plaintiffs have not come close to pleading a strong inference of scienter, and that the facts Plaintiffs identify actually negate an inference of scienter.  *See Tellabs*, 551 U.S. at 314; *Webb*, 884 F.3d at 856-57.

## V.      PLAINTIFFS DO NOT AND CANNOT PLEAD A SECTION 11 CLAIM

As set forth in the Company's motion to dismiss, *see* WageWorks Mem. at 18-20, which Mr. Jackson joins, PERA's Section 11 claim must be dismissed for lack of standing because PERA fails to allege that its purchase of WageWorks shares is traceable to the 2017 Offering. *See In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104 (9th Cir. 2013); *Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029 (N.D. Cal. 2016).

## VI.      PLAINTIFFS DO NOT AND CANNOT PLEAD CONTROL PERSON LIABILITY UNDER SECTION 20(A) OF THE 1934 ACT OR SECTION 15 OF THE 1933 ACT

Because Plaintiffs fail to plead an underlying violation of Section 10(b), Plaintiffs cannot state a claim against Mr. Jackson for control person liability under Section 20(a).  *Webb*, 884 F.3d

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    at 858.  Likewise, because Plaintiffs have not stated a claim against Mr. Jackson under Section 11,

2    there can be no control person liability under Section 15.  *See Backe v. Novatel Wireless, Inc.*, 642

3    F. Supp. 2d 1169, 1192 (S.D. Cal. 2009).  Accordingly, Counts II and IV fail as a matter of law.

4    **VII.    CONCLUSION**

5              For the foregoing reasons, Mr. Jackson respectfully requests that his motion to dismiss be

6    granted.  As Plaintiffs have already amended their complaint, dismissal should be with prejudice.

7    Dated:    July 26, 2019                              FENWICK & WEST LLP

8
                                                          By    */s/ Kevin P. Muck*
9                                                                Kevin P. Muck

10                                                        Attorneys for Defendant Joseph L. Jackson