STEPHEN R. BASSER (121590)
SAMUEL M. WARD (216562)
**BARRACK, RODOS & BACINE**
One America Plaza
600 West Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
Facsimile: (619) 230-1874
*sbasser@barrack.com*
*sward@barrack.com*

JEFFREY A. BARRACK (admitted *pro hac vice*)
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-0600
Facsimile: (215) 963-0838
*jbarrack@barrack.com*

*Attorneys for Lead Plaintiffs the Public
Employees' Retirement System of Mississippi, the
Public Employees Retirement Association of New
Mexico, and the Government Employees'
Retirement System of the Virgin Islands and the
Proposed Settlement Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| IN RE WAGEWORKS, INC., SECURITIES LITIGATION | CASE NO. 4:18-CV-01523-JSW |
| This Document Relates to:<br><br>ALL ACTIONS. | **LEAD PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Judge: Hon. Jeffrey S. White**<br>**Dept.: Courtroom 5**<br>**Hearing Date: May 7, 2021**<br>**Hearing Time: 9:00 a.m.** |

### NOTICE OF MOTION AND MOTION

**TO**:   **ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 7, 2021, 2021, at 9:00 a.m., or as soon thereafter as they may be heard, if a hearing is required by the Court, the Public Employees' Retirement System of Mississippi, the Public Employees Retirement Association of New Mexico, and the Government Employees' Retirement System of the Virgin Islands (collectively "Lead Plaintiffs"), on behalf of themselves and all members of the settlement class, as defined below, will move this Court for an Order, pursuant to Federal Rules of Civil Procedure 23(a), (b)(3), and (e): (i) preliminarily approving a proposed settlement of the above captioned class action (the "Settlement"); (ii) certifying, for settlement purposes only, the "1934 Act Class" and "1933 Act Class," as defined below, (collectively the "Settlement Class"), pursuant to Rules 23(a) and (b)(3), and appointing Lead Plaintiffs as Class Representatives, and the law firm of Barrack, Rodos & Bacine as Class Counsel for the Settlement Class; (iii) directing that notice of the Settlement be provided to the Settlement Class; (iv) scheduling a hearing to consider the fairness, reasonableness, and adequacy of the Settlement, the proposed Plan of Allocation respecting the Settlement proceeds, and Lead Counsel's application for an award of attorneys' fees and expenses; and (v) granting such other and further relief as this Court deems just and proper. Defendants do not oppose the motion.

This motion is supported by the following memorandum of points and authorities, the accompanying Declaration of Samuel M. Ward, dated March 29, 2021 ("Ward Declaration") and the exhibits attached thereto, including the Stipulation and Agreement of Settlement, dated as of March 29, 2021 ("Settlement Agreement"), Ward Decl. Ex. 1.

A proposed Order Granting Preliminary Approval of Class Action Settlement, Approving Form and Manner of Notice, and Setting Date for Hearing on Final Approval of Settlement ("Preliminary Approval Order"), with annexed exhibits, is also submitted herewith.

# TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ................................................................................... 1

   A.  The Procedural History of the Case ..................................................................... 2

   B.  Prosecution of the Litigation – Discovery .......................................................... 4

   C.  Settlement Discussions ........................................................................................ 4

   D.  The Proposed Settlement ..................................................................................... 5

II.  Proposed Schedule of Events ................................................................................... 6

III. The Settlement Merits Preliminary Approval .......................................................... 7

   A.  The Proposed Settlement Meets the Standards for Preliminary Approval .......... 7

   B.  The Settlement is the Result of a Thorough, Rigorous, and Arm's-length Process by Well-Qualified Representation Without Collusion ............................................. 9

   C.  The Settlement is Well Within the Range of Reasonableness ........................... 14

   D.  The Proposed Notice Program Satisfies Rules 23(d) and (e) as well as Due Process Requirements ...................................................................................................... 16

   E.  The Plan of Allocation is Fair and Reasonable ................................................. 18

   F.  Anticipated Legal Fees and Expenses ............................................................... 18

IV.  THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS 19

   A.  Standards Applicable to Class Certification ...................................................... 19

   B.  The Settlement Class Meets the Requirements of Rule 23(a) ........................... 21

      1.   Rule 23(a)(1): Numerosity ...................................................................... 21

      2.   Rule 23(a)(2): Questions of Law or Fact Are Common .......................... 21

      3.   Rule 23(a)(3): Lead Plaintiffs' Claims Are Typical .............................. 22

      4.   Rule 23(a)(4): The Lead Plaintiffs Are Adequate ................................. 22

   C.  The Settlement Class Meets the Requirements of Rule 23(b)(3) ...................... 23

      1.   Common Questions of Law or Fact Predominate ................................... 23

      2.   A Class Action is a Superior Method of Adjudication ........................... 24

V.   CONCLUSION ........................................................................................................ 24

# TABLE OF AUTHORITIES

**CASES** **PAGE**

*Adams v. Inter-Con Sec. Sys., Inc.*, No. C-06-5428 MHP,
    2007 WL 3225466 (N.D. Cal. Oct. 30, 2007) ...................................................... 13

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ......................................................................................... 20, 23

*Andrews Farms v. Calcot, Ltd.*, No. CV-F-07-0464 LJO DLB,
    2011 WL 2923886 (E.D. Cal. July 18, 2011) ...................................................... 8

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975) ............................................................................... 22

*Carnegie v. Household Int'l, Inc.*,
    376 F. 3d 656 (7th Cir. 2004) .............................................................................. 20

*Carson v. Am. Brands, Inc.*,
    450 U.S. 79 (1981) ................................................................................................ 7

*Ching v. Siemens Indus., Inc.*, No. C 11-4838 MEJ,
    2013 WL 6200190 (N.D. Cal. Nov. 27, 2013) .................................................... 17

*Churchill Vill., L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ............................................................................... 12

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ............................................................................... 8

*Desai v. Deutsche Bank Sec. Ltd.*,
    573 F.3d 931 (9th Cir. 2009) ......................................................................... 20, 24

*Ellis v. Naval Air Rework Facility*,
    87 F.R.D. 15 (N.D. Cal. 1980) ............................................................................ 14

*Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC,
    2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ................................................. 13-14

*Grant v. Capital Mgmt. Servs., L.P.*, No. 10-CV-2471-WQH
    (BGS), 2013 WL 6499698 (S.D. Cal. Dec. 11, 2013 ....................................... 8, 9

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .............................................................. 7-8, 21, 22

*Harris v. Palm Springs Alpine Estates, Inc.*,
    329 F.2d 909 (9th Cir. 1964) ............................................................................... 21

*Hildes v. Arthur Andersen LLP.*

734 F.3d 854 (9th Cir. 2013) ............................................................... 11

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ............................................................... 13

*In re Computer Memories Sec. Litig.*,
111 F.R.D. 675 (N.D. Cal. 1986) ...................................................... 22

*In re Cooper Cos. Sec. Litig.*,
254 F.R.D. 628 (C.D. Cal. 2009) ........................................... 20, 21, 23

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig., No. MDL-901*,
1993 WL 144861 (C.D. Cal. Feb. 26, 1993) ..................................... 23

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
279 F.R.D. 151 (S.D.N.Y. 2011) ...................................................... 20

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007) ............................................ 13

*In re Indep. Energy Holdings PLC, No. 00 Civ. 6689*
(SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ..................... 13

*In re Juniper Networks, Inc. Sec. Litig.*,
264 F.R.D. 584 (N.D. Cal. 2009) ...................................................... 22

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ............................................................. 22

*In re Mercury Interactive Corp. Sec. Litig.*,
618 F.3d 988 (9th Cir. 2010) ............................................................... 7

*In re NVIDIA Corp. Derivative Litig., No. C-06-06110-SBA*
(JCS), 2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) ........................ 14

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ....................................... 14, 16

*In re Par Pharm. Sec. Litig., No. CIV.A. 06-3226-ES*,
2013 WL 3930091 (D.N.J. July 29, 2013) .................................... 15-16

*In re Portal Software, Inc. Sec. Litig., No. C-03-5138 VRW*,
2007 WL 1991529 (N.D. Cal. June 30, 2007) ..................................... 9

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
163 F.R.D. 200 (S.D.N.Y. 1995) ...................................................... 20

*In re Syncor ERISA Litig.*,
227 F.R.D. 338 (C.D. Cal. 2005) ...................................................... 22

*In re Syncor ERISA Litig.*,
516 F.3d 1095 (9th Cir. 2008) ............................................................. 8

*In re THQ Inc. Sec. Litig.*, No. CV-00-1783AHM
　　(EX), 2002 WL 1832145 (C.D. Cal. Mar. 22, 2002) .......................................... 20

*In re Veritas Software Corp. Sec. Litig.*,
　　496 F.3d 962 (9th Cir. 2007) ..................................................................... 17

*In re Washington Pub. Power Supply Sys. Sec. Litig.*, MDL No. 551,
　　1988 WL 158947 (W.D. Wash. July 28, 1988) ................................................ 12

*In re Wireless Facilities, Inc. Sec. Litig.*,
　　253 F.R.D. 630 (S.D. Cal. 2008) ................................................................. 17

*In re Zynga Inc. Sec. Litig.*, No. 12-CV-04007
　　(JSC) 2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) .......................................... 8

*Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
　　No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742 (D. Nev. Oct. 19, 2012) ................. 16

*Jaffe v. Morgan Stanley & Co.*, No. C 06-3903 TEH,
　　2008 WL 346417 (N.D. Cal. Feb. 7, 2008) .................................................... 19

*Lane v. Facebook, Inc.*,
　　696 F.3d 811 (9th Cir. 2012) ..................................................................... 17

*Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ,
　　1997 WL 450064 (N.D. Cal. July 18, 1997) ................................................... 9

*Lo v. Oxnard European Motors, LLC*, No. 11CV1009 JLS
　　(MDD), 2011 WL 6300050 (S.D. Cal. Dec. 15, 2011) ...................................... 16

*McPhail v. First Command Fin. Planning, Inc.*,
　　247 F.R.D. 598 (S.D. Cal. 2007) ................................................................. 24

*McPhail v. First Command Fin. Planning, Inc.*, No. 05-cv-179-IEG-JMA,
　　2009 WL 839841 (S.D. Cal. Mar. 30, 2009) .................................................. 16

*Satchell v. Fed. Express Corp.* No. C-03-2878-SI,
　　2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ................................................ 13

*Officers for Just. v. Civil Serv. Comm'n*,
　　688 F.2d 615 (9th Cir. 1982) ..................................................................... 8

*Orvis v. Spokane Cty.*,
　　281 F.R.D. 469 (E.D. Wash. 2012) ............................................................. 16

*Perez-Funez v. Dist. Dir., I.N.S.*,
　　611 F. Supp. 990 (C.D. Cal. 1984) ............................................................. 21

*Rodriguez v. West Publ'g Corp.*,
　　563 F.3d 948 (9th Cir. 2009) ..................................................................... 17

*Sandoval v. Tharaldson Emp. Mgmt.*, No. EDCV 08-00482-VAPOP,

2009 WL 3877203 (C.D. Cal. Nov. 17, 2009) ....................................................... 20

*Schuler v. Medicines Co., No. CV 14 Civ. 1149*
   (CCC), 2016 WL 3457218 (D.N.J. June 24, 2016) ........................................... 15

*Staton v. Boeing Co.,*
   327 F.3d 938 (9th Cir. 2003) ............................................................................. 8

*Torrisi v. Tucson Elec. Power Co.,*
   8 F.3d 1370 (9th Cir. 1993) ............................................................................... 6

*Tsirekidze v. Syntax-Brillian Corp., No. CV-07-02204-PHX-FJM,*
   2009 WL 2151838 (D. Ariz. July 17, 2009) ..................................................... 22

*Van Bronkhorst v. Safeco Corp.,*
   529 F.2d 943 (9th Cir. 1976) ............................................................................. 8

*Vinh Nguyen v. Radient Pharma. Corp., No. SACV 11-00406 DOC*
   (MLGx), 2014 U.S. Dist. LEXIS 63312, 2014 WL 1802293 (C.D. Cal. May 6, 2014) ...... 18

*West v. Circle K Stores, Inc., No. CIV S-04-0438 WBS GGH,*
   2006 WL 1652598 (E.D. Cal. June 13, 2006) ........................................... 7, 14, 15

*Williams v. Costco Wholesale Corp., No. O2CV2003 IEG*
   (AJB), 2010 WL 761122 (S.D. Cal. Mar. 4, 2010) ........................................... 23

## STATUTES, RULES & REGULATIONS

Rule 23 of the Federal Rules of Civil Procedure ................................................. *passim*

Rule 10 of the Federal Rules of Civil Procedure.................................................... 3

Securities Exchange Act of 1933 ...................................................................... *passim*

Securities Exchange Act of 1934 ...................................................................... *passim*

**STATEMENT OF ISSUES TO BE DECIDED**

(1)     Should the Court grant preliminary approval of the proposed Settlement on the terms set forth in the Settlement Agreement?

(2)     Should the Court preliminarily certify the Settlement Class consisting of the 1934 Act Class and the 1933 Act Class, as defined below (collectively the "Settlement Class") for settlement purposes only, and preliminarily appoint Lead Plaintiffs as Class Representatives, Barrack, Rodos & Bacine as Class Counsel, and Heffler Claims Group as Claims Administrator?

(3)     Should the Court approve the form and substance of the proposed Postcard Summary Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and Expenses ("Postcard Notice"), Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and Expenses ("Notice"), Proof of Claim and Release form ("Claim Form"), and Summary Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and Expenses ("Summary Notice"), appended as Exhibits A-1 through A-4 respectively, to the proposed Preliminary Approval Order, as well as the manner of notifying the Settlement Class of the Settlement?

(4)     Should the Court schedule a hearing to determine whether the Settlement and Plan of Allocation should be finally approved and to consider Lead Counsel's application for an award of attorneys' fees and payment of expenses ("Settlement Hearing")?

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

**I.     PRELIMINARY STATEMENT**

Lead Plaintiffs, through Lead Counsel, Barrack, Rodos & Bacine ("Lead Counsel" or "Barrack"), submit this memorandum of points and authorities in support of their unopposed motion, pursuant to Federal Rules of Civil Procedure 23(a), (b)(3), and (e), for preliminary approval of a proposed Thirty Million Dollar ($30,000,000.00) settlement (the "Settlement") of this action on behalf of the proposed Settlement Class, respecting claims arising under the Securities Exchange Act of 1934 ("1934 Act") and the Securities Act of 1933 ("1933 Act"), as set forth in the Settlement Agreement entered into between Lead Plaintiffs and Defendants WageWorks, Inc. ("WageWorks" or the "Company"), Joseph L. Jackson ("Jackson"), Colm M. Callan ("Callan") Mariann Byerwalter ("Byerwalter"), Thomas A. Bevilacqua ("Bevilacqua"), Bruce G. Bodaken ("Bodaken", Jerome D. Gramaglia ("Gramaglia"), John W. Larson ("Larson"), and Robert L. Metzger ("Metzger") (collectively "Defendants").

Lead Plaintiffs respectfully submit that the Court should grant the accompanying [Proposed] Order Granting Preliminary Approval of Class Action Settlement and Directing

1  Notice to the Settlement Class ("Preliminary Approval Order") and (i) grant the relief set forth

2  therein and in the Notice of Motion and Motion and the Statement of Issues above; (2) certify,

3  for purposes of settlement only, a class consisting of all Persons who, during the period from

4  May 6, 2016 through March 1, 2018, inclusive, (the "Class Period"), purchased or otherwise

5  acquired shares of WageWorks's publicly traded common stock in the open market, and were

6  damaged thereby (the "1934 Act Class"); and (iii) certify for settlement purposes only, a class

7  consisting of all persons and entities who purchased or otherwise acquired WageWorks common

8  stock issued pursuant to or traceable to WageWorks's public offering of common stock in the its

9  public secondary offering on June 19, 2017 (the "Offering" or "June 2017 Offering") pursuant

10 to the Registration Statement and Prospectus for the Offering and were damaged thereby (the

11 "1933 Act Class").[1]

12      Lead Plaintiffs respectfully submit that the Settlement is an excellent result for the

13 Settlement Class, both quantitatively and when considering the risk of a lesser (or no) recovery

14 if the case proceeded through dispositive motions and trial.

15      **A.      The Procedural History of the Case**

16      On March 9, 2018, a class action complaint, *Government Employees' Retirement System*

17 *of the Virgin Islands*, Case No. 4:18-CV-01523-JSW, was filed in this Court alleging violations

18 of the 1934 Act. On August 7, 2018, the Court issued an order appointing Lead Plaintiffs and

19 approving their selection of Barrack as Lead Counsel. ECF No. 74.

20      On May 16, 2019, Lead Plaintiffs filed a Consolidated Class Action Complaint (the

21 "Complaint"), which alleged violations of the 1934 Act by defendants WageWorks, Jackson, and

22 Callan (the "1934 Act Defendants) and violations of the 1933 Act against the Company, Jackson,

23 and the Outside Director Defendants (collectively, the "1933 Act Defendants"), arising from the

24 issuance of 2.5 million shares of WageWorks common stock in a secondary offering on June 19,

25 2017 (the "Offering" or "June 2017 Offering"). ECF No. 87. Before filing the Complaint, Lead

26 Plaintiffs, via Lead Counsel, conducted an extensive investigation, including, *inter alia*,

27

---

[1]      Defendants Byerwalter, Bevilaqua, Bodaken, Gramaglia, Larson, and Metzger (the "Outside Director Defendants") are sued on behalf of the 1933 Act Class and only as to 1933 Act Claims.

interviews of numerous fact witnesses and consultations with forensic expertise in accounting. Lead Counsel also secured several thousand pages of documents from the United States Office of Professional Management ("OPM").

In a nutshell, the Complaint alleged that during the Class Period, the 1934 Act Defendants made materially false and misleading statements and material omissions in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder, with respect to the Company's second and third quarter and fiscal year 2016 financial results, compliance with General Accepted Accounting Principles ("GAAP"), and the adequacy of its internal controls over financial reporting. The accounting issues, which led to a formal Restatement issued March 18, 2019 (the "Restatement"), largely arise from a billing dispute between WageWorks and OPM. The Complaint further alleged that, as a result of WageWorks's false accounting, enabling WageWorks to meet earnings guidance, and related misrepresentations, the price of WageWorks common stock was artificially inflated during the Class Period. The Complaint alleged that the 1934 Act Class members sustained losses and resulting damages when it is was ultimately disclosed on March 1, 2018 that WageWorks had to delay the filing of its Annual Report on Form 10-K for its fiscal year ending December 31, 2017 ("2017 Form 10-K"), triggering a halt of the trading of its common stock by the New York Stock Exchange, and subsequent disclosures of March 2, 2018, April 5, 2018, September 12, 2018, and the March 18, 2019 Restatement associated with OPM-related revenue recognized in 2016, which WageWorks admitted "should not have been recognized" during that that time period due to a dispute over payment with OPM. The Complaint also alleged that WageWorks's June 2017 Offering, Registration Statement, and prospectus incorporated its prior false and misleading financial results as well as false statements regarding the adequacy of its internal controls and compliance with GAAP, in violation of Section 11 of the 1933 Act. Meanwhile, during the Class Period, defendant Jackson sold $43 million of WageWorks stock at prices allegedly inflated by WageWorks's false accounting, $31 million of which was during the Offering.

On July 26, 2019, Defendants WageWorks and Jackson each filed a Motion to Dismiss the Complaint. Defendant Callan and the Outside Director Defendants joined in WageWorks's

and Jackson's motion (collectively the "Motions to Dismiss"). On September 10, 2019, named underwriter Defendants were voluntarily dismissed without prejudice by Lead Plaintiffs. The Motions to Dismiss were fully briefed by the Parties and, on June 1, 2020, the Court denied Defendants' Motions to Dismiss, ruling that Lead Plaintiffs had adequately alleged claims arising under the 1934 Act and the 1933 Act. ECF No. 130. The Defendants answered the Complaint on July 31, 2020. ECF Nos. 142-145.

**B.      Prosecution of the Litigation – Discovery**

After the Complaint was sustained, Lead Counsel secured over 498,000 pages of documents from the Defendants, and over 82,000 pages of documents from third party KPMG, LLP. Lead Counsel also consulted extensively with forensic econometric experts respecting loss causation and damages, and forensic accountants with respect to the alleged false accounting claims, GAAP violations, and inadequate internal controls over financial reporting.[2] Lead Counsel reviewed all of the documents produced by the Defendants, all of the most significant documents bearing on issues of liability out of the 82,000 pages of documents by third-party KPMG, and all of the documents produced by OPM.

**C.      Settlement Discussions**

Prior to any ruling on the Motions to Dismiss, on October 29, 2019, the Parties engaged in a mediation before a respected mediator with JAMS. Beforehand, the Parties exchanged extensive mediation statements detailing the strengths and weaknesses of their respective positions. While this mediation did not produce a settlement, the Parties developed a better understanding of each other's positions. It was only after the receipt of over 580,000 pages of documents from Defendants and third party KPMG following denial of the Motions to Dismiss, and extensive evaluation of that evidence, investigation, and consultation with experts, that Lead Plaintiffs mediated this Action before the Hon. Layn R. Phillips (Ret.) ("Judge Phillips"). The Parties engaged in an all-day, extensive mediation with Judge Phillips commencing at 8:00 a.m.

---

[2]      Prior to filing the Complaint, Lead Counsel made a Freedom of Information Act ("FOIA"), request, securing, after litigation, several thousand pages of documents from OPM associated with a March 1, 2016 contract between OPM and WageWorks (the "OPM Contract"), the terms of which were the focal point of the dispute between the Company and OPM that gave rise to the Restatement.

on February 10, 2021, lasting late into the evening and culminating in an agreed upon Term Sheet on February 11, 2021.

### D.    The Proposed Settlement

Pursuant to the proposed Settlement, Defendants will cause to be deposited $30,000,000.00 ($30 million) into an interest-bearing escrow account (the "Settlement Fund") no later than thirty (30) business days after (i) the Court enters the Preliminary Approval Order, and (ii) Lead Counsel provides to counsel for WageWorks all information necessary to effectuate a transfer of funds. In exchange, upon the Effective Date of the Settlement, Lead Plaintiffs and the Settlement Class will release all Released Claims against the Released Defendant Parties.

The Settlement, and the vigorous prosecution of the Action that preceded it, reflects zealous advocacy by Barrack on behalf of the Settlement Class. Lead Plaintiffs and Lead Counsel believe that the Settlement is an excellent result and is fair, adequate, and reasonable in all respects. As set forth in the Settlement Agreement, and as reasonably allocated per the Plan of Allocation, the average recovery per allegedly damaged share of publicly traded common stock of WageWorks with regard to the 1934 Act claims would be $1.92 before deduction of Court-approved fees and expenses, such as attorneys' fees and expenses, and approximately $1.47 after deduction of the attorneys' fees and expenses. The average recovery per allegedly damaged share purchased directly in the Offering at the Offering price of $69.25, is estimated to be $2.56, before deduction of attorneys' fees and expenses and $1.96 after such reductions. Had plaintiffs prevailed at trial on each of the claims set forth in the Complaint, Lead Counsel believe that per share damages would have ranged between $0.00 per share and $14.01 per share for the 1934 Act claims and between $0.00 and $14.01 per share for the 1933 Act claims, depending on when the shares at issue were purchased and/or sold and reflecting the impact of certain alleged fraud-related corrective disclosures and price movement of the Company's stock and/or non-fraud related diminished valuation. As such, this motion should be granted.

## II.    PROPOSED SCHEDULE OF EVENTS

Lead Counsel and Lead Plaintiffs request permission to provide notice of the Settlement

to members of the Settlement Class.[3] Lead Plaintiffs respectfully propose the following schedule

for the various Settlement-related deadlines and events:[4]

| EVENT | DEADLINE |
|---|---|
| Deadline for mailing individual Postcard Notice (the "Notice Date"): | *10 business days after entry of Preliminary Approval Order.* |
| Posting of the Notice and Claim Form in downloadable form on www.wageworkssettlement.com | *Contemporaneous with the mailing of the Postcard Notice:* |
| Deadline for Publication of Summary Notice in *Investor's Business Daily* and transmission over the *PR Newswire* settlement website www.wageworkssettlement.com | *Within 14 business days of the Notice Date.* |
| Deadline for filing motions in support of the Settlement, the Plan of Allocation, and/or Lead Counsel's application for an award of attorneys' fees and expenses: | *No later than 35 days before the Settlement Hearing.* |
| Deadline for submission of requests for exclusion from the Settlement Class or objections to the Settlement, Plan of Allocation, or the request for attorneys' fees and expenses: | *Received by the Court no later than 21 days before the Settlement Hearing.* |
| Deadline for filing reply papers in support of the Settlement, the Plan of Allocation, and/or Lead Counsel's application for an award of attorneys' fees and expenses: | *No later than 7 days before the Settlement Hearing.* |

---

[3]    Pursuant to the Class Action Fairness Act ("CAFA"), WageWorks shall timely serve a CAFA notice within ten days of entry of the Preliminary Approval Order.

[4]    This proposed schedule shall provide due process to Settlement Class Members with respect to their rights concerning the Settlement. *See, e.g.*, *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374-75 (9th Cir. 1993).

| Settlement Hearing: | At the Court's convenience, but ***approximately 100 days after entry of the Preliminary Approval Order***. |
| --- | --- |
| Submission of Proofs of Claim: | ***Postmarked or received no later than 120 calendar days after the Notice Date***. |

This schedule complies with the Ninth Circuit's ruling in *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010) (requiring that fee motion be made available to the class before the deadlines for objecting to the fee) and the recently revised Procedural Guidance for Class Action Settlements, *see https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/*. If the Settlement Hearing is held 90 calendar days from entry of the Preliminary Approval Order, the Notice, which contains information about the Settlement and Lead Counsel's maximum request for fees and expenses, will be issued 80 days before the hearing. Settlement Class Members will have 59 days to review the Notice before the objection/exclusion deadline and 14 days to consider the filed versions of the motions in support of approval of the Settlement and approval of Lead Counsel's fee and expense motion, which will be filed with the Court and posted on the Settlement website and Lead Counsel's website.

## III.    THE SETTLEMENT MERITS PRELIMINARY APPROVAL

### A.    The Proposed Settlement Meets the Standards for Preliminary Approval

Settlement approval pursuant to Federal Rule of Civil Procedure 23(e) is a two-stage process. The Court must first determine whether to grant preliminary approval, provide notice of the settlement to the class, and establish a schedule for, *inter alia*, filing claims, hearing objections, and hearing a motion for final approval. *See, e.g., West v. Circle K Stores, Inc.*, No. CIV S-04-0438 WBS GGH, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006). The Court's analysis of the terms of the settlement at this preliminary stage is limited and should not "resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981).

Following dissemination of notice to the Class, the Court evaluates whether the Agreement is "fair, reasonable and adequate." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1027

(9th Cir. 1998). The Court's ultimate determination as to whether the settlement is fair, reasonable and adequate will consider the risk, expense, complexity, and likely duration of further litigation; the amount offered in settlement; the stage of the proceedings; and the experience and views of counsel. *See, Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003).

The Court's sound discretion in considering the preliminary approval of the Settlement is tempered by the Ninth Circuit's "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008).[5] Indeed, "there is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). *See also Grant v. Capital Mgmt. Servs., L.P.*, No. 10-CV-2471-WQH (BGS), 2013 WL 6499698, at *2 (S.D. Cal. Dec. 11, 2013) ("voluntary conciliation and settlement are the preferred means of dispute resolution in complex class action litigation").[6]

Preliminary approval of the Settlement should be granted if the Settlement falls within the "***range of possible approval***" as "fair, adequate, and reasonable" so that notice can be given to the class and a hearing for final approval may be scheduled. *Andrews Farms v. Calcot, Ltd.*, No. CV-F-07-0464 LJO DLB, 2011 WL 2923886, at *14 (E.D. Cal. July 18, 2011) (emphasis added); Manual for Complex Litigation §13.14, at 173 (4th ed. 2004) ("First, the judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing. If so, the final decision on approval is made after the hearing."); *see also In re Zynga Inc. Sec. Litig.*, No. 12-CV-04007 (JSC) 2015 WL 6471171, at *8-11 (N.D. Cal. Oct. 27, 2015) (granting preliminary approval where proposed settlement was "non-collusive," lacked "obvious deficiencies" and was "within the range of possible approval"). A court "need not conduct a full

---

[5]     The Ninth Circuit has cautioned that "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Just. v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)*.

[6]     Citations and internal quotations omitted unless noted otherwise.

settlement fairness appraisal before granting preliminary approval." *Grant*, 2013 WL 6499698 at *5. Applying the standards set forth above, the Settlement merits preliminarily approval.

**B.    The Settlement is the Result of a Thorough, Rigorous, and Arm's-length Process by Well-Qualified Representation Without Collusion**

There is an initial presumption that a proposed settlement is fair and reasonable when it is "the product of arms-length negotiations." *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 1991529, at *5 (N.D. Cal. June 30, 2007). *Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 WL 450064, *5 1997 (N.D. Cal. July 18, 1997); *aff'd* 151 F.3d 1234 (9th Cir. 1998) ("The involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place, create a presumption that the agreement is fair."); *see also, Torrisi*, 8 F.3d at 1375.

The settlement process was extensive and involved two mediation sessions: October 29, 2019 and February 10, 2021. Before, during, and following the two mediations, the strengths and weaknesses of Lead Plaintiffs' and Defendants' respective claims and defenses were fully explored by the Settling Parties. The two mediations — overseen initially by a mediator from JAMS. and thereafter by Judge Phillips — focused on many disputed issues of liability, falsity, materiality, *scienter*, loss causation, so-called "negative causation," due diligence, good faith reliance on the advice of professionals, and damages. The Settling Parties considered the impact of a United States Civilian Board of Contract Appeals ("CBCA") decision of December 18, 2020, favorable to WageWorks, (and a subsequent "settlement" by Messrs. Jackson and Callan with the Securities and Exchange Commission culminating in a cease-and-desist order with "findings" that are inadmissible as evidence against them, did not require a disgorgement of defendant Jackson's insider selling proceeds, and did not issue any action versus the Outside Director Defendants). The Settling Parties also considered extensive econometric evaluations of loss causation and damages assessments respecting 1934 Act claims, and the 1933 Act Defendant's position with respect to so-called "negative causation."

The 1934 Act Defendants hotly contested **scienter** and **materiality**. They were expected to present evidence at trial to the effect that they honestly believed in WageWorks's entitlement

to be paid for the work it rendered in the 2016 financial periods, entitled to recognize associated revenue, and had no intention of deceiving investors. For example, Defendants contended with respect to revenue WageWorks acknowledged on March 18, 2019, "should not have been recognized," that such revenue was contractually owed to the Company by OPM, and that OPM's refusal to pay WageWorks was contrary to the terms of the OPM Contract.

Defendants were expected to argue that, in practical terms, WageWorks' earnings performance in the second and third quarters and fiscal year 2016 supported prior revenue guidance, even if the revenue should not have been "recognized" until a later date. The 1934 Act Defendants were expected to contend that they always believed and fully expected that OPM would ultimately pay the invoiced amounts, that the revenue would be forthcoming from OPM, and that it was not until long after the Company invoiced OPM, that OPM formally determined and gave formal notice to the Company that it would not pay that invoice, though it paid other invoices for significant amounts. Defendants were expected to contend that, even if there was a violation of GAAP by the revenue at issue, OPM was in all other respects continuing to honor the OPM Contract for work performed from and after September 1, 2016. The Contract remained in full force and effect.  Hence, they were expected to contend that WageWorks' future revenue and prospects were not adversely impacted, and that reasonable investors would not have found the alleged premature revenue recognition GAAP violation material when making their investment decisions with respect to purchasing shares in the June 2017 Offering, especially since the Company had a successful first quarter of 2017.

As a companion to their arguments regarding the lack of materiality – an intensely factual issue – the amounts of improperly recognized revenue in violation of GAAP amounted to about 1% of the Company's total revenue for fiscal year 2016. The 1934 Act Defendants also strongly contested the element of "*loss causation*" arising from the alleged corrective disclosures. They were expected to point to the fact that while the Company's stock price declined precipitously on March 1, 2018 when it was disclosed that it would delay filing its 2017 Form 10-K – without any express disclosure at that time regarding any GAAP accounting violations and premature recognition of revenue – once the March 1, 2018 trading halt was lifted, the stock price rebounded

significantly on March 2, 2018. They were expected to note that when fraud related information was disclosed on April 5, 2018, including what Lead Plaintiffs contended were fraud-related "resignations" of Defendants Jackson and Callan, WageWorks stock price only declined $0.49 per share, which was not statistically significant. Although immediately after an alleged corrective disclosure on September 12, 2018, the Company's stock price declined significantly, Defendants would likely have contended that much of that decline was either due to information disclosed to the market that was not fraud related or was not new information. The 1934 Act Defendants were also expected to point to the fact that, when the Restatement disclosing the exact second and third quarter and fiscal year 2016 revenue that "should not have been recognized" was formally issued on March 18, 2019, WageWorks's stock price increased by 4.69%. They were also expected to contend at trial that the Company's stock price declines on the alleged corrective disclosures needed to be "disaggregated" in order to parse out fraud from non-fraud related declines in assessing both loss causation and damages.[7]

Indeed, Defendants hotly contested damages and were expected to contend that possible 1934 Act damages were significantly lower than Lead Plaintiffs contended as were 1933 Act damages. Additionally, the individual 1933 Act Defendants posited that they relied on the advice of professionals at all times material and engaged in pre-Offering due diligence in good faith.

With an informed understanding of these various issues, the Settling Parties agreed to the Settlement. There was no collusion, nor is there any preferential treatment of any Lead Plaintiff or any other Settlement Class Member.[8]

---

[7] While "loss causation" is not a *prima facie* element of a claim arising under section 11 of the 1933 Act, the 1933 Act Defendants raised an affirmative defense of "negative causation". In that regard, the affirmative defense of negative causation prevents recovery for losses that the defendant proves are not attributable to the alleged misrepresentation or omission in the registration statement. *Hildes v. Arthur Andersen LLP*. 734 F.3d 854,860 (9th Cir. 2013). The defendant bears a "heavy burden" of proof on this defense and must show that the depreciation in value of a plaintiff's stock "resulted from the factors other than the alleged material misstatement" in the defendant's registration statement. *Id. See also* 15 U.S.C. §77k(e).

[8] The proposed Plan of Allocation provides formulas for calculating the recognized claim of each Settlement Class Member, and in consideration of the proposed plan of Allocation does not discriminate against any class member or treat them disproportionately. Lead Plaintiffs will receive a distribution from the Net Settlement Fund based on the same formulas that apply to the recovery of all similarly situated members of the Settlement Class.

The fairness and adequacy of the Settlement is underscored by taking into account the obstacles the Settlement Class would face in ultimately succeeding on the merits, as well as the expense and likely duration of the litigation. *See, e.g.*, *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citing risk, expense, complexity, and likely duration of further litigation as factors supporting final approval of settlement). Indeed, at this juncture, the $30 million Settlement results in an immediate and substantial tangible recovery, without the considerable risk, expense, and delay of discovery, summary judgment motions, trial, and post-trial litigation. *See, e.g.*, *In re Washington Pub. Power Supply Sys. Sec. Litig.*, MDL No. 551, 1988 WL 158947, at *4 (W.D. Wash. July 28, 1988) (finding settlement to be in the "best interests of the class . . . before it is subjected further to the vagaries of litigation").

Although Lead Plaintiffs believe that this case is meritorious, they would have faced considerable obstacles over the course of continuing the Action. Specifically, there would be substantial challenges regarding materiality, the falsity of statements regarding internal controls, *scienter* and loss causation and damages in connection with the 1934 Act claims, and various affirmative defenses with respect to the 1933 Act claims, including so-called "negative causation" and damages. While the CBCA decision may likely have been ruled inadmissible, it was possible that the Court, on summary judgment, or a jury, could have come to the same or similar conclusion that the terms of the OPM Contract entitled WageWorks to be paid for its services during the disputed period of June 1, 2016 through August 31, 2016, despite any contrary position by OPM based on its interpretation of the Contract. If so, the 1934 Act Defendants could posit that they acted in good faith, and that the financial results were accurate in a practical sense even if, technically, the revenue in question should have been recognized at a later date. Lead Plaintiffs would have been required to respond to Defendants' anticipated motion for summary judgment directed to both liability and damages issues and their likely attacks directed at class certification.

From the inception of the Action, Defendants vigorously denied (and continue to deny) all of the claims and arguments made by Lead Plaintiffs. Any trial of the Action would have no certain outcome and likely would involve lengthy appeals. At the point of settlement, Lead

1   Plaintiffs were in an excellent position to evaluate the strengths and weaknesses of their

2   allegations against Defendants, the defenses raised thereto, and the substantial risks of continued

3   litigation, because of, among other things, the considerable factual and legal research their

4   counsel performed in connection with the motion to dismiss briefing and the extensive

5   preparation work that was performed in connection with the extensive mediations, including

6   thorough extensive document review and conferring with experts.

7          While Lead Plaintiffs believe their case has merit and that they could respond to

8   challenged issues and vigorously disagree with Defendants' positions, resolution of these

9   complex loss causation and damages issues would, at the end of the day, hinge upon extensive

10  expert discovery and testimony. A trial would have entailed "a 'battle of experts,'" with "no

11  guarantee whom the jury would believe." *In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir.

12  2001). *See, e.g., In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007)

13  (recognizing "the issues of *scienter* and causation are complex and difficult to establish at trial"

14  and therefore concluding "settlement is a prudent course").

15         The Settlement was ultimately achieved with the intensive assistance of Judge Phillips,

16  an exceptionally experienced and highly regarded mediator. Courts have recognized that "[t]he

17  assistance of an experienced mediator in the settlement process confirms that the settlement is

18  non-collusive." *Satchell v. Fed. Express Corp.*, No. C-03-2878-SI, 2007 WL 1114010, at *4

19  (N.D. Cal. Apr. 13, 2007); *see also Adams v. Inter-Con Sec. Sys., Inc.*, No. C-06-5428 MHP,

20  2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007) (same). Indeed, "the fact that the Settlement

21  was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator

22  experienced in complex litigation," provides further proof that approval is appropriate. *In re*

23  *Indep. Energy Holdings PLC*, No. 00 Civ. 6689(SAS), 2003 WL 22244676, at *4 (S.D.N.Y.

24  Sept. 29, 2003). *See also Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862,

25  at *5 (N.D. Cal. Jan. 26, 2007) ("The settlement was negotiated and approved by experienced

26  counsel on both sides of the litigation, with the assistance of a well-respected mediator with

27  substantial experience … [and] this factor supports approval of the settlement."). Here, Judge

Phillips noted that "the Settlement represents a recovery and outcome that is reasonable and fair

13

for the Settlement Class and all parties involved. I further believe it was in the best interests of the parties that they avoid the burdens and risks associated with taking a case of this size and complexity to trial[.]" Ward Decl. Ex. 2, Declaration of Judge Layn R. Phillips (Fmr.) at ¶ 11.

Importantly, each of the Lead Plaintiffs is an extremely sophisticated institutional investor. *See* ECF No. 31. They agreed to the Settlement with an informed understanding of the strengths and weaknesses of the case. Additionally, throughout the Action, Lead Plaintiffs had the benefit of the advice of knowledgeable counsel with extensive experience in shareholder class action litigation and securities fraud cases. *See* Barrack Firm Biography, Ward Decl. Ex. 3. Courts give considerable weight to the opinion of experienced and informed counsel. *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight."), *aff'd* 661 F. 2d 939 (9th Cir. 1981). *See also, e.g.*, *In re NVIDIA Corp. Derivative Litig.*, No. C-06-06110-SBA (JCS), 2008 WL 5382544, at *4 (N.D. Cal. Dec. 22, 2008) ("[S]ignificant weight should be attributed to counsel's belief that settlement is in the best interest of those affected by the settlement."). Therefore, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008). Lead Counsel likewise have a thorough understanding of the merits of the Action and extensive experience in securities fraud litigation in particular. *See,* Barrack Firm Biography, Ward Decl. Ex. 3. Lead Counsel's belief in the fairness and reasonableness of the Settlement warrants a presumption of reasonableness.

**C.  The Settlement is Well Within the Range of Reasonableness**

"[A]t this preliminary approval stage, the court need only 'determine whether the proposed settlement is within the range of possible approval.'" *West*, 2006 WL 1652598, at *11. This Settlement is well within the range of reasonableness for several reasons.

**First**, the $30 million Settlement compares favorably to other securities class action settlements. As recently reported by NERA Economic Consulting, the *median* annual settlement value in securities fraud class actions between 2017 and 2020 ranged from $7 million in 2017 to $13 million in 2020. *See*, Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities*

*Class Action Litigation: 2020 Full Year Review* (NERA Economic Consulting January 25, 2021). Ward Decl. Ex. 4. The median ratio of settlement to investor losses in 2020 was 1.7%. *Id.* at p. 20. The median settlement value in securities class action settlements in 2019 was reported by Cornerstone Research to be $10.1 million, *see* Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements. 2020 Review and Analysis*, at 1 (Cornerstone Research 2021). Ward Decl. Ex. 5.

**Second**, Lead Plaintiffs' damages expert estimated that if liability were established with respect to all of the remaining claims, including statistically significant price drops following the alleged corrective disclosures, the maximum aggregate 1934 Act damages recoverable at trial based on the non-disaggregated stock price declines on disclosures dates of March 1-2, 2018, and September 12, 2018, would be approximately $123.7 million after considered assumptions regarding the number of damaged shares. Lead Plaintiffs' damages expert estimates that Section 11 damages for the 1933 Act claims are approximately $21.2 million after considered assumptions regarding the number of damaged shares and before addressing any potential offsetting valuation defenses. This does not include a statistically insignificant stock price drop on the April 5, 2018 corrective disclosure, nor credit the statistically significant stock price increase of 4.69% when the March 18, 2019 Restatement was issued.[9]

Significantly, the Settlement recovers more than 20.7% of estimated potential damages. Since the passage of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), courts have approved settlements that recovered far smaller percentages of maximum damages. *See, e.g.*, *Schuler v. Medicines Co.*, No. CV 14 Civ. 1149 (CCC), 2016 WL 3457218, at *8 (D.N.J. June 24, 2016) (approving $4,250,000 settlement reflecting approximately 4.0% of estimated recoverable damages and noting percentage "falls squarely within the range of previous settlement approvals"); *In re Par Pharm. Sec. Litig.*, No. CIV.A. 06-3226-ES, 2013 WL 3930091, at *2 (D.N.J. July 29, 2013) (approving settlement of $8.1 million, amounting to

---

[9]     Had the case proceeded, the 1934 Act Defendants were expected to strenuously argue for the exclusion of all non-fraud related declines or full disaggregation of confounding non-fraud information on the grounds Lead Plaintiff could not sufficiently link each to the 1934 Act Defendants' alleged fraud.

approximately 7% of class-wide damages); *Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc*., No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742, at *2-3 (D. Nev. Oct. 19, 2012) (approving $12.5 million settlement recovering about 3.5% of the maximum damages that plaintiffs believed could be recovered at trial and noting that the amount was within the median recovery in securities class actions settled in the last few years); *McPhail v. First Command Fin. Planning, Inc*., No. 05-cv-179-IEG-JMA, 2009 WL 839841, at *5 (S.D. Cal. Mar. 30, 2009) (finding a $12 million settlement recovering 7% of estimated damages was fair and adequate); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1042 ($13.75 million settlement yielding 6% of potential damages after deducting fees and costs was "higher than the median percentage of investor losses recovered in recent shareholder class action settlements").

In view of the foregoing, the proposed Settlement represents an excellent resolution given the substantial risks of expense and delay of continued litigation versus the certain and immediate recovery for the Settlement Class. *See, e.g.*, *Orvis v. Spokane Cty.*, 281 F.R.D. 469, 475 (E.D. Wash. 2012) ("[T]he proposed benefit to class members appears to the Court to be within the range of fair and reasonable compensation given the uncertain outcome of the legal arguments and the risks and probable delay for Plaintiff and class members if litigation were to proceed toward trial."); *Lo v. Oxnard European Motors, LLC*, No. 11CV1009 JLS (MDD), 2011 WL 6300050, at *5 (S.D. Cal. Dec. 15, 2011) (addressing preliminary approval and stating that "'[c]onsidering the potential risks and expenses associated with continued prosecution of the Lawsuit, the probability of appeals, the certainty of delay, and the ultimate uncertainty of recovery through continued litigation,' the Court finds that, on balance, the proposed settlement is fair, reasonable, and adequate.") (alteration in original).

### D.    The Proposed Notice Program Satisfies Rules 23(d) and (e) as well as Due Process Requirements

Lead Counsel propose that notice be given in a form substantially similar to the Postcard Notice, Notice, and Summary Notice, attached as Exhibits A-1, A-2, and A-4 to the proposed Preliminary Approval Order. This vigorous program, providing notice to the Settlement Class in

1  the form and in the manner set forth in the proposed Preliminary Approval Order, fulfills the

2  requirements of due process and complies with the Federal Rules of Civil Procedure and the

3  PSLRA.

4       Notice must be given to class members in the most practicable manner under the

5  circumstances and must describe "'the terms of the settlement in sufficient detail to alert those

6  with adverse viewpoints to investigate and to come forward and be heard.'" *See, e.g.*, *Lane v.*

7  *Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012) (quoting *Rodriguez v. West Publ'g Corp.*, 563

8  F.3d 948, 962 (9th Cir. 2009)); *see also* Fed. R. Civ. P. 23(c)(2)(B). In addition, pursuant to the

9  PSLRA, "every settlement notice must include a statement explaining a plaintiff's recovery." *In*

10 *re Wireless Facilities, Inc. Sec. Litig.*, 253 F.R.D. 630, 636 (S.D. Cal. 2008) (citing *In re Veritas*

11 *Software Corp. Sec. Litig.*, 496 F.3d 962, 969 (9th Cir. 2007)). Lead Plaintiffs propose giving

12 interested parties notice in several ways: (i) by sending a "Postcard Notice," first-class mail,

13 addressed to all Settlement Class Members who can reasonably be identified and located

14 ("Postcard Notice"); and (ii) by posting the Notice and Claim Form in downloadable form on the

15 settlement website: www.wageworkssettlement.com and (iii) by publication of the Summary

16 Notice in *Investor's Business Daily*, and by transmission over *PR newswire*.

17      The form and substance of the notice program are sufficient. The proposed forms of

18 notice describe the Settlement Class, the terms of the Settlement Agreement and consideration

19 that caused Lead Plaintiffs and Lead Counsel to conclude that the Settlement is fair, adequate,

20 and reasonable; the maximum attorneys' fees and expenses that may be sought; the procedure for

21 requesting exclusion from the Settlement Class; the procedure for objecting to the Settlement;

22 the procedure for participating in the Settlement; and the date and place of the Settlement

23 Hearing. *See Ching v. Siemens Indus., Inc.*, No. C 11-4838 MEJ, 2013 WL 6200190, at *6 (N.D.

24 Cal. Nov. 27, 2013) (approving notice that "adequately describes the nature of the action,

25 summarizes the terms of the settlement, identifies the class and provides instruction on how to

26 opt out and object, and sets forth the proposed fees and expenses to be paid to Plaintiff's counsel

27 and the settlement administrator in clear, understandable language"). The Postcard Notice, when

   mailed, in combination with the posting of the Notice and publication of the Summary Notice,

1    as provided for in the Preliminary Approval Order, fairly apprise Settlement Class Members of

2    the Settlement and their options with respect thereto, and fully satisfy due process requirements.

3        Lead Counsel also propose that the Court appoint Heffler as the Claims Administrator

4    for the Settlement. Heffler has the experience to efficiently and accurately act as the claims

5    administrator having administered hundreds of securities class action settlements.[10] *See* Ward

6    Decl., Ex. 6, Heffler Claims Group Overview.

7        **E.**    The Plan of Allocation is Fair and Reasonable

8        A plan of allocation "is governed by the same standards of review applicable to approval

9    of the settlement as a whole; the plan must be fair, reasonable and adequate." *Vinh Nguyen v.*

10   *Radient Pharma. Corp.*, No. SACV 11-00406 DOC (MLGx), 2014 U.S. Dist. LEXIS 63312, 2014

11   WL 1802293, at *5 (C.D. Cal. May 6, 2014). "[A]n allocation formula need only have a

12   reasonable, rational basis, particularly if recommended by experienced and competent counsel."

13   *Id. See also*, Zynga at *51 (same). The proposed Plan of Allocation, which is detailed in the

14   proposed Claim Form, Exhibit A-3 hereto, provides formulas for calculation of the recognized

15   claim of each Settlement Class Member, based on each such person's purchases and sales of

16   WageWorks' publicly traded common stock during the Settlement Class Period, or with respect

17   to shares issued in and directly purchased on the June 2017 Offering, taking into account the

18   timing and impact of the alleged corrective disclosures, including their impact on liability and

19   damages, the merits of the respective liability claims, and the recommendations of experienced

20   and competent Lead Counsel with respect to an appropriate allocation. Lead Plaintiffs will receive

21   a distribution from the Net Settlement Fund based on the same formulas that apply to the recovery

22   of all similarly situated shares purchased by the respective members of the Settlement Class.

23       **F.**    Anticipated Legal Fees and Expenses

24       As set forth in the Notice, Lead Counsel intends to move for attorneys' fees not to exceed

25   22.5% of the Settlement Fund plus reimbursement of litigation expenses, exclusive of notice and

26

27

---

[10]    While the costs of administration of the settlement are dependent on the total cost of reimbursements to banks, brokers, and nominees, Heffler has agreed to a cap of $150,000 for all other administration fees and expenses. Thus, costs of administration, which will be paid for out of the settlement fund, should approximate less than 1% of the settlement.

18

administration costs, of no more than $290,000.00. Such expenses may include a request for reimbursement of the reasonable costs and expenses incurred by Lead Plaintiffs directly related to the representation of the Settlement Class and will include approximately $80,000.00 in expert-related expenses, $69,000.00 in investigative expenses, and $33,000.00 in expenses related to document collection and databases. The basis of Lead Counsel's fee and expense request will be addressed in their upcoming motion requesting fees and expenses. To date, Lead Counsel's recorded "lodestar," as of March 31, 2021, is $4,346,657.25, based on 6,748.25 hours of professional and staff time.

With respect to Notice and Administration Expenses, Lead Plaintiffs have chosen Heffler as the proposed Claims Administrator. Lead Plaintiffs chose Heffler after soliciting multiple bids, reviewing bids received, and considering other factors, including Lead Counsel's experience prior experience working with the Claims Administrator. During the last two years, Lead Counsel has not entered into any new engagements with Heffler as a settlement administrator. Heffler estimates that its fees and expenses in connection with the notice and claims administration process will be less than $150,000 and has agreed to cap its fees and expenses, exclusive of fees charged by brokers, banks, and nominees, which will be reimbursed at cost, at $150,000. Notice and Administration Expenses with be paid from the Settlement Fund. *See* Settlement Agreement ¶ 3.6.

## IV. THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS

### A. Standards Applicable to Class Certification

At the Settlement Hearing, the Court will be asked to grant final approval to the Settlement on behalf of the Settlement Class. Thus, at the preliminary approval stage, it is appropriate for the Court to consider whether a Settlement Class can be certified. *See Jaffe v. Morgan Stanley & Co.*, No. C 06-3903 TEH, 2008 WL 346417, at *2 (N.D. Cal. Feb. 7, 2008).[11]

---

[11] There are no material differences between the Settlement Class as defined in the Settlement Agreement and the Class proposed in the Consolidated Complaint, nor are their material differences in the Released Claims and the claims alleged in the Consolidated Complaint.

Courts have acknowledged the propriety of certifying a class solely for purpose of a class action settlement. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Certification of a settlement class "'has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants.'" *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 158 (S.D.N.Y. 2011) (quoting *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 205 (S.D.N.Y. 1995)). In the Ninth Circuit, "Rule 23 is to be liberally construed in a securities fraud context because class actions are particularly effective in serving as private policing weapons against corporate wrongdoing." *In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628, 642 (C.D. Cal. 2009); *see also In re THQ Inc. Sec. Litig.*, No. CV-00-1783AHM(EX), 2002 WL 1832145, at *2 (C.D. Cal. Mar. 22, 2002) ("[T]he law in the Ninth Circuit is very well established that the requirements of Rule 23 should be liberally construed in favor of class action cases brought under the federal securities laws.").

A settlement class must satisfy all the requirements of Rule 23(a) and (b). *See Hanlon*, 150 F.3d at 1022. Nevertheless, the manageability concerns of Rule 23(b)(3) are not at issue for a settlement class. *See Amchem*, 521 U.S. at 593 ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested.").[12] The Action satisfies all the factors for certification. Under Rule 23(a), a class may be certified if: (i) it is so numerous that joinder of all members is impracticable; (ii) there are questions of law and fact common to the class; (iii) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (iv) the representative parties will fairly and adequately protect the interests of the class. *See, e.g.*, *Sandoval v. Tharaldson Emp. Mgmt.*, No. EDCV 08-00482-VAPOP, 2009 WL 3877203, at *1 (C.D. Cal. Nov. 17, 2009). The proposed class must also fall within one of the three categories of class actions defined in Rule 23(b). *See, e.g.*, *Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 936 (9th Cir. 2009).

---

[12]     Manageability concerns may be disregarded "because the settlement might eliminate all the thorny issues that the court would have to resolve if the parties fought out the case." *Carnegie v. Household Int'l, Inc.*, 376 F. 3d 656, 660 (7th Cir. 2004) (citing *Amchem*, 521 U.S. at 620).

Here, both the 1933 Act Class and the 1934 Act Class readily meet the requirements of Rule 23 and Lead Plaintiffs request that the Court grant preliminarily class certification.

**B.      The Settlement Class Meets the Requirements of Rule 23(a)**

**1.      Rule 23(a)(1): Numerosity**

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable. "'[I]mpracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964). The exact size of the class need not be known so long as "'general knowledge and common sense indicate that [the class] is large.'" *Perez-Funez v. Dist. Dir., I.N.S.*, 611 F. Supp. 990, 995 (C.D. Cal. 1984). Courts regularly find the numerosity requirement is satisfied with respect to putative purchasers of nationally traded securities on the volume of outstanding shares. *See, Cooper Cos.*, 254 F.R.D. at 634 ("The Court certainly may infer that, when a corporation has millions of shares trading on a national exchange, more than 40 individuals purchased stock . . . . It is likely that thousands of people made such purchases.").

Here, there can be no dispute that the Settlement Class satisfies numerosity. During the Class Period, WageWorks had approximately 39.6 million shares of common stock outstanding that were actively traded on the NASDAQ. Common sense dictates that these shares were purchased by many hundreds of investors, making joinder impracticable.

**2.      Rule 23(a)(2): Questions of Law or Fact Are Common**

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This requirement is viewed "permissively," and "[a]ll questions of fact and law need not be common to satisfy the rule." *Hanlon*, 150 F.3d at 1019. Securities fraud cases have long been found to satisfy the commonality requirement:

> The overwhelming weight of authority holds that repeated misrepresentations of the sort alleged here satisfy the "common question" requirement. Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions. . . .

1   *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975); *see also, In re Juniper Networks, Inc. Sec.*

2   *Litig*., 264 F.R.D. 584, 588 (N.D. Cal. 2009) ("Repeated misrepresentations by a company to its

3   stockholders satisfy the commonality requirement of Rule 23(a)(2).").

4          Here, common questions of law and fact abound. The central questions – whether

5   Defendants' public statements were false and material and whether Defendants acted with the

6   requisite mental state – are the same for all class members.

7                  **3.       Rule 23(a)(3): Lead Plaintiffs' Claims Are Typical**

8          Rule 23(a)(3) is satisfied where the claims of the proposed class representatives arise

9   from the same course of conduct that gives rise to the claims of the other class members, and

10  where the claims are based on the same legal theory. *In re Computer Memories Sec. Litig.*, 111

11  F.R.D. 675, 680 (N.D. Cal. 1986). Rule 23(a)(3) does not require plaintiffs to show that their

12  claims are identical on every issue to those of the class, but merely that significant common

13  questions exist. *In re Syncor ERISA Litig.*, 227 F.R.D. 338, 344 (C.D. Cal. 2005). Differences in

14  the amount of damages, the size or manner of purchase, type of purchase, and even the specific

15  documents influencing the purchase will not render the claim atypical. *See Tsirekidze v. Syntax-*

16  *Brillian Corp.*, No. CV-07-02204-PHX-FJM, 2009 WL 2151838, at *4 (D. Ariz. July 17, 2009).

17         Lead Plaintiffs' claims are identical to those of the Class Members they represent. Like

18  all Settlement Class Members, Lead Plaintiffs purchased WageWorks's publicly traded common

19  stock at allegedly artificially inflated prices during the Class Period and claim to have suffered

20  damages when Defendants' alleged material misstatements and omissions were revealed.

21                 **4.       Rule 23(a)(4): The Lead Plaintiffs Are Adequate**

22         Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect

23  the interests of the class." Fed. R. Civ. P. 23(a)(4). "The proper resolution of this issue requires

24  that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts

25  of interest with other class members and (b) will the named plaintiffs and their counsel prosecute

26  the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454,

27  462 (9th Cir. 2000) (citing *Hanlon*, 150 F.3d at 1020). Lead Plaintiffs all are sophisticated

    institutional investors who have represented the interests of the Settlement Class fairly and

1   adequately. There is no antagonism or conflict of interest between Lead Plaintiffs and the

2   proposed Settlement Class. Lead Plaintiffs and Members of the Settlement Class share the

3   common objective of maximizing their recovery from Defendants when considering the totality

4   of the relevant circumstances. In addition, Lead Counsel has extensive experience and expertise

5   in complex securities litigation and class action proceedings throughout the United States[13] and

6   are well qualified and able to conduct the Action. Therefore, Rule 23(a)(4) is satisfied.[14]

7       **C.**    **The Settlement Class Meets the Requirements of Rule 23(b)(3)**

8           **1.**    **Common Questions of Law or Fact Predominate**

9         Rule 23(b)(3) sets forth two requirements, the first being that the "questions of law or

10  fact common to the members of the class predominate over any questions affecting only

11  individual members." Fed. R. Civ. P. 23(b)(3). The predominance inquiry "tests whether

12  proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*

13  *Prods.*, 521 U.S. at 623. The predominance requirement is "readily met" in securities class

14  actions. *Amchem Prods.*, *Id.* at 625; *see also, Cooper Cos.*, 254 F.R.D. at 632 ("[S]ecurities fraud

15  cases fit Rule 23 'like a glove.'"). In addition, common questions of law and fact predominate

16  over individual questions in this Action because Defendants' alleged false and/or fraudulent

17  statements and omissions affected all Settlement Class Members in the same manner (*i.e.*,

18  through public statements made to the market). "[C]ommon issues predominate in federal

19  securities actions where the proposed class members have all been injured by the same alleged

20  course of conduct[.]" *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, No. MDL-901,

21  1993 WL 144861, at *6 (C.D. Cal. Feb. 26, 1993).

22

23

24

---

25   [13]    *See* Barrack Firm Resume, Ward Decl. Ex. 3.

26   [14]    Lead Counsel has and will continue to fairly and adequately represent the interests of the
Settlement Class and thus should be appointed as Class Counsel for the Settlement Class under

27   Rule 23(g)(1). *See, e.g.*, *Williams v. Costco Wholesale Corp.*, No. O2CV2003 IEG (AJB), 2010
WL 761122, at *6 (S.D. Cal. Mar. 4, 2010) (appointing as Class Counsel attorneys with
"extensive experience in class actions" who appeared "competent to represent the class").

## 2.     A Class Action is a Superior Method of Adjudication

Rule 23(b)(3) also requires that the action be superior to other available methods for the fair and efficient adjudication of the controversy. Pertinent to this finding are: (a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D); *see also Desai*, 573 F.3d at 937. Each factor weighs in favor of superiority here. *See, e.g.*, *McPhail v. First Command Fin. Planning, Inc.*, 247 F.R.D. 598, 615 (S.D. Cal. 2007) (noting "class action is the superior method for fair and efficient adjudication" because individual suits would "'clog [ ] the federal courts with innumerable individual suits litigating the same issues repeatedly,'" the plaintiffs assert complex claims that would "be very costly to litigate," and each claim is for a "relatively small amount") (alteration in original).

Without the settlement class device, Defendants could not obtain a class-wide release, and therefore would have little, if any, incentive to enter into the Settlement. Certification of a class will allow the Settlement to be administered in an organized and efficient manner. Accordingly, this Court should preliminarily certify the Settlement Class.

## V.     CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court issue an order substantially in the form of the proposed Preliminary Approval Order: (a) preliminarily certifying the Settlement Class; (b) preliminarily approving the Settlement; (c) holding that the manner and form of notice set forth in the Preliminary Approval Order satisfies due process and is the best notice practicable under the circumstances; (d) setting a date for the Settlement Hearing; (e) approving the forms of the Notice, Proof of Claim, and Summary Notice; (f) appointing Lead Plaintiffs as Class Representatives and Barrack, Rodos & Bacine as Class Counsel; (g) appointing Heffler as claims administrator; and (h) ordering that notice substantially in the form of the proposed Notice be given to the proposed Settlement Class.

DATED: April 1, 2021

Respectfully submitted,

BARRACK, RODOS & BACINE
STEPHEN R. BASSER (121590)
sbasser@barrack.com
SAMUEL M. WARD (216562)
sward@barrack.com


/s/ STEPHEN R. BASSER
STEPHEN R. BASSER

600 West Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
Facsimile: (619) 230-1874

JEFFREY A. BARRACK (admitted *pro hac vice*)
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-0600
Facsimile: (215) 963-0838
jbarrack@barrack.com

*Lead Counsel for Lead Plaintiffs the Public
Employees' Retirement System of Mississippi, the
Public Employees Retirement Association of New
Mexico, and the Government Employees' Retirement
System of the Virgin Islands, and the Proposed
Settlement Class*