STEPHEN R. BASSER (121590)
SAMUEL M. WARD (216562)
**BARRACK, RODOS & BACINE**
One America Plaza
600 West Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
Facsimile: (619) 230-1874
*sbasser@barrack.com*
*sward@barrack.com*

JEFFREY A. BARRACK (admitted *pro hac vice*)
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-0600
Facsimile: (215) 963-0838
*jbarrack@barrack.com*

*Attorneys for Lead Plaintiffs the Public Employees'*
*Retirement System of Mississippi, the Public Employees*
*Retirement Association of New Mexico, and the Government*
*Employees' Retirement System of the Virgin Islands and the*
*Proposed Settlement Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| IN RE WAGEWORKS, INC., SECURITIES LITIGATION | CASE NO. 4:18-CV-01523-JSW |
| This Document Relates to:<br><br>ALL ACTIONS. | **LEAD PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT, APPROVAL OF THE PLAN OF ALLOCATION, AND CERTIFICATION OF A SETTLEMENT CLASS, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Judge: Hon. Jeffrey S. White**<br>**Dept.: Courtroom 5**<br>**Hearing Date: August 20, 2021**<br>**Hearing Time: 9:00 A.M.** |

# TABLE OF CONTENTS

Page(s)

NOTICE OF MOTION AND MOTION ................................................................ vi

I.      INTRODUCTION ........................................................................... 1

II.     DESCRIPTION OF THE LITIGATION ........................................ 3

    A.  Filing of Complaints, and Appointment of Lead Plaintiffs ............ 3

    B.  Overview of the Allegations of the Complaint ............................... 3

    C.  Defendants' Motions to Dismiss and Subsequent Denial ............... 4

    D.  Prosecution of the Litigation – Discovery .................................... 5

    E.  Settlement Discussions and Mediation Before an Experienced Neutral Mediators ......... 5

    F.  The Settlement .............................................................................. 6

    G.  Preliminary Approval is Granted and the Notice Program is Undertaken ................ 6

III.    ARGUMENT ................................................................................. 8

    A.  The Standards for Approval of a Class Action Settlement ............. 8

    B.  The Agreed Upon Settlement of $30 Million is Eminently Fair, Adequate, and
        Reasonable .................................................................................. 9

        1.  The Settlement Reflects a Balance of the Risk, Expense, Complexity, and Likely
            Duration of Further Litigation with the Strength of Lead Plaintiffs' Case ......... 9

        2.  The Risk of Maintaining Class Action Status throughout the Trial .................. 13

        3.  The Extent of the Discovery Completed and the Stage of the
            Proceedings ......................................................................... 14

        4.  The Amount Offered in Settlement .............................................. 14

        5.  The Experience and Views of Counsel and the Support
            of Lead Plaintiffs, Each Sophisticated Institutional Investors .................. 17

        6.  The Reaction of the Settlement Class Members to the Proposed Settlement is
            Indicative of Their Strong Approval .......................................... 19

        7.  The Settlement is the Result of a Thorough, Rigorous, Arm's Length
            Process by Well Qualified Counsel and Private Mediators ...................... 19

IV.     ALLOCATION OF THE SETTLEMENT AND CALCULATION OF CLAIMS ........ 21

V.      SETTLEMENT CLASS MEMBERS HAVE BEEN PROVIDED ADEQUATE
        NOTICE OF THE SETTLEMENT ................................................ 22

VI.     FINAL CERTIFICATION OF THE CLASS FOR PURPOSES OF SETTLEMENT IS
        MERITED....................................................................................................................23

VII.    CONCLUSION...........................................................................................................24

# TABLE OF AUTHORITIES

**CASES**                                                        **Page(s)**

*Adams v. Inter-Con Sec. Sys., Inc.*, No. C-06-5428 MHP, 2007 WL 3225466,
    (N.D. Cal. Oct. 30, 2007)…………………………………………………....21

*Boring v. Bed Bath & Beyond of Cal. LLC,* No. 12-cv-05259-JST,
    2014 U.S. Dist. LEXIS 90258, (N.D. Cal. June 30, 2014)……………………......24

*Carson v. Am. Brands, Inc.*, 450 U.S. 79 (1981)…………………………………………....8

*Ching v. Siemens Indus., Inc.*, No. C 11-4838 MEJ, 2013 WL 6200190,
    (N.D. Cal. Nov. 27, 2013)……………………………………………..……23

*Churchill Vill. L.L.C. v. General Electric*, 361 F.3d 566 (9th Cir. 2004) ………………….........9

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992)……………………………9, 18

*Eisen v. Porsche Cars N. Am., Inc.,* No. 11-cv-09405-CAS, 2014 WL 439006
    (C.D. Cal. Jan. 30, 2014)………………………………………………………..21

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15 (N.D. Cal. 1980)……………………………17

*Grant v. Capital Mgmt. Servs., L.P.*, No. 10-CV-2471-WQH (BGS),
    2013 WL 6499698, (S.D. Cal. Dec. 11, 2013)…………………………………...8

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)…………………………………9

*Hildes v. Arthur Andersen LLP*. 734 F.3d 854 (9th Cir. 2013)…………………………………13

*Horton v. USAA Cas. Ins. Co.*, 266 F.R.D. 36 (D. Ariz. 2009)…………………………………9

*Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
    No. 3:09-cv-  00419-MMD-WGC,  2012  WL 5199742
    (D. Nev. Oct. 19, 2012)……………….......................................................................16

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. 02 Civ. 5575
    (SWK), 2006 U.S. Dist. LEXIS 17588 (S.D.N.Y. April 6, 2006)………………………10

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011)……………………..20

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.,*
    MDL Docket No. 901, 1992 U.S. Dist. LEXIS 14337 (C.D. Cal. June 10, 1992)…......18

*In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 U.S. Dist. LEXIS 13555,
    (C.D. Cal. June 10, 200…………………………………………………..……….22

iii

*In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689(SAS),
    2003 WL 22244676, at (S.D.N.Y. Sept. 29, 2003)……………………………….........21

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000)
    *as amended* (Aug. 4, 1999)……………………………………………………..*passim*

*In re NVIDIA Corp. Derivative. Litig.*, No. C-06-06110-SBA (JCS),
    2008 U.S. Dist. LEXIS 117351 (N.D. Cal. Dec. 19, 2008)………………...……....17

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008)…………...…...10, 17, 22

*In re Oracle Sec. Litig.*, No. C-90-9031-VRW, 1994 U.S. Dist. LEXIS 21593
    (N.D. Cal. June 16, 1994)………………………………………………………….22

*In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 1991529
    (N.D. Cal. June 30, 2007)………………………………………………………….20

*In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735 (S.D.N.Y. 1985),
    *aff'd*, 798 F.2d 35 (2d Cir. 1986)…………………………………………………….15

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379 (D. Ariz. 1989)…………..18

*Lemus v. H&R Block Enters., LLC*, No. C-09-03179-SI,
    2013 U.S. Dist. LEXIS 103037 (N.D. Cal. July 23, 2013)…………………...……..8

*Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 WL 450064
    (N.D. Cal. July 18, 1997)………………………………………………………….....20

*Lo v. Oxnard European Motors, LLC*, No. 11CV1009 JLS (MDD), 2011 WL 6300050
    (S.D. Cal. Dec. 15, 2011)………………………………………………………….17

*Morales v. Stevco, Inc.*,No. 09-cv-704-AWI, JLT, 2011 U.S. Dist. Lexis 130604
    (E.D. Cal. Nov. 10, 2011)………………………………………………………….....9

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004)…………10

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ……………………………………………………..8

*Orvis v. Spokane Cty.*, 281 F.R.D. 469 (E.D. Wash. 2012)……………………………………17

*Redwen v. Sino Clean Energy, Inc.*, No. 11-cv-3936-PA,
    2013 U.S. Dist. LEXIS 100275 (C.D. Cal. July 9, 2013)…………………………...14, 22

*Satchell v. Fed. Express Corp.*, No. C-03-2878-SI, 2007 WL 1114010,
    (N.D. Cal. Apr. 13, 2007)………………………………………………………….21

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003)……………………………………………...8

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993)……………………………………………......…..……8

*Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437 (9th Cir. 1989)………………8

*United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010)……………………………..23

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976)…………………………………8

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005)…………………………19

## FEDERAL RULES OF CIVIL PROCEDURE

Rule 23 ...........................................................................................................9, 23, 25

## STATUTES

15 U.S.C. §78u-4(e) ...............................................................................................23

28 U.S.C. §1332(d) .................................................................................................23

28 U.S.C. §1453 ......................................................................................................23

28 U.S.C. §1711-1715 .............................................................................................23

## OTHER

Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements. 2020 Review
    and Analysis*, at 1 (Cornerstone Research 2021). ECF No. 167-5…………………………15

NERA Economic Consulting, *Recent Trends in Securities Class Action Litigation: 2020 Full
    Year Review* (January 25, 2021). ECF No. 167-4……………………………………………..15

**NOTICE OF MOTION AND MOTION**

**TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

**PLEASE TAKE NOTICE** that on August 20, 2021, at 9:00 a.m., or as soon thereafter as counsel may be heard, the Court appointed lead plaintiffs, Public Employees' Retirement System of Mississippi, the Public Employees Retirement Association of New Mexico, and the Government Employees' Retirement System of the Virgin Islands, (collectively "Lead Plaintiffs"), will move before the Honorable Jeffrey S. White, United States Senior District Judge, at the United States District Court, Northern District of California, Oakland Courthouse, Courtroom 5, 1301 Clay Street, Oakland, CA 94612 for orders: (i) granting final approval of the settlement set forth in the Stipulation and Agreement of Settlement ("Settlement Agreement"), dated April 1, 2021; (ii) approving the proposed Plan of Allocation; and (iii) granting final certification of a Settlement Class as more fully defined in Part I hereof ("Lead Plaintiffs' Motion").[1]

The Motion is based on the attached Memorandum of Points and Authorities in Support of Lead Plaintiffs' Motion, the Declaration of Stephen R. Basser in support thereof ("Basser Declaration" or "Basser Decl."), filed concurrently herewith, the declarations of Lead Plaintiffs, the Declaration of Rob Cormio ("Cormio Declaration" or Cormio Decl."), the Declaration of retired United States District Court Judge Layn R. Phillips ("Phillips Declaration") (ECF No. 167-2), and such additional evidence on argument as may be required by the Court.

---

[1] All capitalized terms used herein are defined in the Settlement Agreement and have the same meaning as set forth therein. ECF. No. 167-1.

**STATEMENT OF ISSUES TO BE DECIDED**
**Civil L.R. 7-4(a)(3)**

1. Whether the proposed Settlement, on the terms and conditions provided in the Settlement Agreement, is fair, reasonable, and adequate and should be approved by the Court.

2. Whether the proposed Plan of Allocation of the Net Settlement Fund is fair and reasonable and should be approved by the Court.

3. Whether the Settlement Class, as defined in Part I below, should be finally certified for the purposes of the Settlement only; whether Lead Plaintiffs should be finally certified as Class Representatives for the Settlement Class; and whether the law firm of Barrack, Rodos & Bacine should be appointed Class Counsel for the Settlement Class.

4. Whether a Final Judgment and Order of Dismissal with Prejudice should be entered, dismissing the Action in its entirety and with prejudice; whether the covenants by the Settlement Class and the release by the Settlement Class of the Released Claims, as set forth in the Settlement Agreement, should be provided to the Released Defendant Parties; and whether the Settlement Class should be forever barred and enjoined from commencing, instituting, prosecuting or maintaining any of the Released Claims against the Released Defendant Parties.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Lead Plaintiffs, through their appointed Lead Counsel, Barrack, Rodos & Bacine ("Barrack" or "Lead Counsel"), submit this memorandum of points and authorities in support of their motion, pursuant to Federal Rules of Civil Procedure 23(a), (b)(3), and (e), for final approval of the proposed $30,000,000 ($30 Million) settlement (the "Settlement") of this securities class action on behalf of a proposed settlement class (the "Settlement Class") as defined below. On May 3, 2021, this Court granted preliminary approval (the "Preliminary Approval Order") of the Settlement entered into between Lead Plaintiffs and Defendants WageWorks ("WageWorks" or the "Company"), Joseph L. Jackson ("Jackson"), Colm M. Callan ("Callan"), Mariann Byerwalter ("Byerwalter"), Thomas A. Bevilacqua ("Bevilacqua"), Bruce G. Bodaken ("Bodaken"), Jerome D. Gramaglia ("Gramaglia"), John W. Larson

1

("Larson"), and Robert L. Metzger ("Metzger") (collectively "Defendants").[2] ECF No. 178. The Settlement is fair, reasonable, and merits approval by the Court. The Settlement Class should be certified and the Settlement approved as the final disposition of this Action.

Pursuant to the Preliminary Approval Order, the Court preliminarily certified the following defined classes (collectively, the "Settlement Class"), for the purposes of settlement only, pursuant to Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure:

> All persons and entities who purchased or otherwise acquired WageWorks Common Stock issued pursuant or traceable to the Registration Statement and prospectus for WageWorks' public offering of common stock on June 19, 2017 (the "Offering" or "June 2017 Offering"), and who were damaged thereby (the "1933 Act Class", and, together with the 1934 Act Class, the "Settlement Class" or "Class"). Excluded from the 1933 Act Class are Defendants; the officers and directors of WageWorks; WageWorks' successor in interest, HealthEquity, Inc.; members of Defendants' families and their legal representatives, heirs, successors, and assigns; and any entity in which Defendants have or had a controlling interest. In addition, any person or entity who or which submits a request for exclusion from the 1933 Act Class that is accepted by the Court shall also be excluded from the 1934 Act Class.

> - OR-

> All persons and entities who purchased or otherwise acquired WageWorks' publicly traded common stock on the open market between May 6, 2016 and March 1, 2018, inclusive, and were damaged thereby (the "1934 Act Class" and, together with the 1933 Act Class, the "Settlement Class" or "Class"). Excluded from the Class are Defendants; the officers and directors of WageWorks, WageWorks' successor in-interest, HealthEquity, Inc.; members of Defendants' families and their legal representatives, heirs, successors, and assigns, and any entity in which Defendants have or had a controlling interest. In addition, any person or entity who or which submits a request for exclusion from the 1934 Act Class that is accepted by the Court shall also be excluded from the 1933 Act Class.

Lead Plaintiffs seek final certification of the aforementioned Settlement Class. At bottom, Lead Plaintiffs further respectfully submit that the Settlement is an excellent result for the Settlement Class, both quantitatively and when considering the risk of a lesser (or no) recovery if the case proceeded through class certification, dispositive motions and trial, and should be finally approved.

---

[2]     Defendants Byerwalter, Bevilacqua, Bodaken, Gramaglia, Larson, and Metzger (the "Outside Director Defendants") are sued on behalf of the 1933 Act Class and only as to 1933 Act claims.

2

## II.   DESCRIPTION OF THE LITIGATION

### A.   Filing of Complaints, and Appointment of Lead Plaintiffs

On March 9, 2018, a class action complaint by the Government Employees' Retirement System of the Virgin Islands, was filed against defendants WageWorks, Inc., Joseph L. Jackson, and Colm M. Callan, Case No. 4:18-CV-01523-JSW, alleging violations of the Securities Exchange Act of 1934 (the "1934 Act"). ECF No. 1. On August 7, 2018, the Court issued an order appointing Lead Plaintiffs pursuant to the Private Securities Litigation Reform Act of 1934 ("PSLRA") and approving their selection of Barrack as Lead Counsel. ECF No. 74.

On May 16, 2019, Lead Plaintiffs filed a Consolidated Class Action Complaint (the "Complaint"), alleging violations of the 1934 Act by defendants WageWorks, Jackson, and Callan (the "1934 Act Defendants) arising from stated financial results issued from May 6, 2016 through March 1, 2018 (the "Class Period"), and violations of the Securities Act of 1933 ("1933 Act") against the Company, Jackson, and the Outside Director Defendants (collectively, the "1933 Act Defendants"), arising from the issuance of 2.5 million shares of WageWorks common stock in the June 2017 Offering. ECF No. 87. Before filing the Complaint, Lead Plaintiffs, via Lead Counsel, conducted an extensive investigation, including, *inter alia*, interviews of numerous fact witnesses and consultations with forensic experts in accounting. Lead Counsel also secured several thousand pages of documents from the United States Office of Personnel Management ("OPM").

### B.   Overview of the Allegations of the Complaint

The Complaint alleged that during the Class Period, the 1934 Act Defendants made materially false and misleading statements and material omissions in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder, with respect to the Company's second and third quarter and fiscal year 2016 financial results, compliance with General Accepted Accounting Principles ("GAAP"), and the adequacy of its internal controls over financial reporting. The accounting issues, which led to a formal restatement issued on March 18, 2019 (the "Restatement"), largely arise from a billing dispute between WageWorks and OPM and their conflicting interpretations of a March 1, 2016 contract

3

between WageWorks and OPM (the "OPM Contract"). The Complaint further alleged that, as a result of WageWorks's false accounting enabling WageWorks to meet earnings guidance in certain 2016 quarters and for full year 2016, and related misrepresentations, the price of WageWorks common stock was artificially inflated during the Class Period. The Complaint alleged that the 1934 Act Class members sustained losses and resulting damages when, on March 1, 2018, WageWorks announced that it had to delay the filing of its Annual Report on Form 10-K for its fiscal year ending December 31, 2017 ("2017 Form 10-K"). This triggered a halt of the trading of its common stock by the New York Stock Exchange, and subsequent disclosures of March 2, April 5, and September 12, 2018, and the March 18, 2019 Restatement associated with OPM-related revenue recognized in 2016, which WageWorks admitted "should not have been recognized" during that time period due to a then pending dispute over payment with OPM. The Complaint also alleged that the Registration Statement and prospectus issued pursuant to the June 2017 Offering incorporated its prior false and misleading financial results, as well as false statements regarding the adequacy of its internal controls and compliance with GAAP, in violation of Section 11 of the 1933 Act. During the Class Period, defendant Jackson sold $43 million of WageWorks stock at prices allegedly inflated by WageWorks's false accounting, $31 million of which was sold in the Offering.

**C.    Defendants' Motions to Dismiss and Subsequent Denial**

On July 26, 2019, Defendants WageWorks and Jackson filed separate Motions to Dismiss the Complaint. Defendant Callan and the Outside Director Defendants joined in WageWorks's and Jackson's motions (collectively the "Motions to Dismiss").[3] ECF Nos. 108, 110, 113, and 115. On June 1, 2020, the Court denied said motions, ruling that Lead Plaintiffs had adequately alleged claims arising under the 1934 Act and the 1933 Act. ECF No. 130. The Defendants answered the Complaint on July 31, 2020. ECF Nos. 142-145.

---

[3]    On September 10, 2019, named underwriter Defendants were voluntarily dismissed without prejudice by Lead Plaintiffs.

### D.     Prosecution of the Litigation – Discovery

After the Complaint was sustained, Lead Counsel crafted and served comprehensive document requests upon all the defendants and third-party KPMG, LLP ("KPMG"), ultimately securing over 498,000 pages of documents from the Defendants and over 82,000 pages of documents from KPMG. Lead Counsel also consulted extensively with forensic econometric experts respecting loss causation and damages, and forensic accountants with respect to the allegations of false accounting, GAAP violations, and inadequate internal controls over financial reporting.[4] Lead Counsel reviewed all of the documents produced by the Defendants, all of the most significant documents bearing on issues of liability of the documents by KPMG, and all of the documents produced by OPM. Lead Counsel also reviewed and analyzed volumes of filings with the Securities Exchange Commission ("SEC"), analyst reports, pleadings before and a decision, dated December 18, 2020, rendered by the U.S. Civilian Board of Contract Appeals ("CBCA"), and a subpoena and subsequent cease and desist order, dated February 2, 2021, rendered by the SEC.

### E.     Settlement Discussions and Mediation Before an Experienced Neutral Mediators

On October 29, 2019, prior to any ruling on the Motions to Dismiss, the Parties engaged in an all-day mediation before Robert Meyer, Esquire, a respected mediator with JAMS. Beforehand, the Parties exchanged extensive mediation statements detailing the strengths and weaknesses of their respective positions. While this mediation did not produce a settlement, the Parties developed a better understanding of each other's positions.

It was only after the receipt of documents from OPM and over 580,000 pages of documents from Defendants and KPMG following denial of the Motions to Dismiss, and extensive evaluation of that evidence, investigation, and consultation with experts, that Lead Plaintiffs mediated this Action before the Hon. Layn R. Phillips (Ret.) ("Judge Phillips"). The Parties engaged in an all-day, extensive mediation with Judge Phillips commencing at 8:00 a.m.

---

[4]     Prior to filing the Complaint, Lead Counsel made a Freedom of Information Act request, securing, only after commencing independent litigation, several thousand pages of documents from OPM associated with the OPM Contract, the terms of which gave rise to a dispute between the Company and OPM resulting in the March 2019 Restatement.

5

on February 10, 2021, lasting late into the evening and culminating in an agreed upon Term Sheet on February 11, 2021. Basser Decl. ¶ 56.

**F.    The Settlement**

Pursuant to the proposed Settlement, Defendants caused to be deposited $30,000,000.00 ($30 Million) into an interest-bearing escrow account (the "Settlement Fund") at Wells Fargo Bank ("Escrow Agent"). In exchange, upon the Effective Date of the Settlement, Lead Plaintiffs and the Settlement Class will release all Released Claims against the Released Defendant Parties.

The Settlement, and the vigorous prosecution of the Action that preceded it, reflect zealous advocacy by Barrack on behalf of the Settlement Class. Lead Plaintiffs and Lead Counsel believe that the Settlement is an excellent result and is fair, adequate, and reasonable in all respects. Significantly, the Settlement recovers more than 20% of estimated damages for the Settlement Class. As set forth in the Settlement Agreement, and as reasonably allocated per the Plan of Allocation, the average recovery per allegedly damaged share of publicly traded common stock of WageWorks with regard to the 1934 Act claims would be approximately $1.92 before deduction of Court-approved attorneys' fees and expenses, and approximately $1.47 after deduction of the attorneys' fees and expenses. The average recovery per allegedly damaged share purchased directly in the Offering at the offering price of $69.25, is estimated to be $2.56, before deduction of attorneys' fees and expenses and $1.96 after such reductions. Basser Decl. at ¶ 60. Given this excellent recovery, this motion should be granted.

**G.    Preliminary Approval is Granted and the Notice Program is Undertaken**

On May 3, 2021, the Court issued an order granting preliminary approval of the Settlement and approving the dissemination of the Postcard Notice, Notice, Proof of Claim, and Summary Notice to the Settlement Class. ECF No. 178. Copies of the Postcard Notice, Notice, Proof of Claim, and Summary Notice are attached as Exs. A-D to the Cormio Declaration. In granting preliminary approval of the Settlement, the Court also appointed Kroll Settlement Administration (formerly Heffler Claims Group) ("Kroll") as the Claims Administrator and set

a hearing date of August 20, 2021, to consider the fairness, reasonableness and adequacy of the Settlement and Plan of Allocation.[5]

In compliance with the Preliminary Approval Order and under the supervision of Lead Counsel, Kroll mailed the Postcard Notice to (i) all potential members of the Settlement Class who could be reasonably identified; and (ii) known brokers/nominees who may have purchased WageWorks common stock for the beneficial interest of individual investors. Cormio Decl. ¶¶ 3-9. In addition, the Notice, Proof of Claim and other documents relevant to the Settlement were posted on the websites of Lead Counsel, Kroll, and on a website, www.WageWorksSettlement.com, maintained by Kroll. *Id.* ¶ 10. Kroll also issued the Summary Notice for publication in *Investor's Business Daily* and dissemination via *PR Newswire*. *Id.* ¶ 13. To date, Kroll has mailed 27,752 Postcard Notices *Id.* ¶ 9. The Notice described the claims asserted in the Action, the contentions of the Settling Parties, a history of the litigation of the Action, the terms of the Settlement, the proposed Plan of Allocation, the maximum amount of the fees and expenses that Lead Counsel intended to seek; the right of Settlement Class Members to (i) be excluded from the Settlement Class; (ii) to object to the Settlement; and (iii) to make an appearance at the Final Approval Hearing; and apprised Settlement Class Members of all deadlines relevant to the exercise of the above rights. Cormio Decl. Ex. B.

The response of the Settlement Class to the Settlement has been overwhelmingly positive. As of July 15, 2021, no requests to be excluded from the Settlement Class have been received and no objections to the Settlement have been received.[6] *Id.* at ¶ 15. This response is strong indicia of the fairness, adequacy, reasonableness, and adequacy of the Settlement.

---

[5]   On April 20, 2021, as a result of the 2019 acquisition of Heffler Claims Group by Kroll Business Services, Heffler Claims Group changed its name to Kroll Settlement Administration. Cormio Decl. ¶ 1.

[6]   A "conditional objection" was filed prior to preliminary approval with regard to the scope of the release, not the amount of the settlement. ECF No. 169. Lead Plaintiffs' response demonstrates that the Settlement Release language is typical and standard in a securities class action settlement. ECF No. 171 at 2-4.

7

Ld Pls' Notice of Mot. and Mot. for Final Approval of Proposed Class Action Settlement and Memo. of Ps & As in Support Thereof - Case No.: 5:11-cv-05235-RMW

III.     ARGUMENT

A.     The Standards for Approval of a Class Action Settlement

"[V]oluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). The difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation all counsel toward resolving class action suits through voluntary compromise. *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ("[T]here is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits."); *see also Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989); *Officers for Justice,* 688 F.2d at 625; *Lemus v. H&R Block Enters., LLC*, No. C-09-03179-SI, 2013 U.S. Dist. LEXIS 103037 *4 (N.D. Cal. July 23, 2013). *See also Grant v. Capital Mgmt. Servs., L.P.*, No. 10-CV-2471-WQH (BGS), 2013 WL 6499698, at *2 (S.D. Cal. Dec. 11, 2013) ("voluntary conciliation and settlement are the preferred means of dispute resolution in complex class action litigation").

In deciding whether to approve the settlement of a class action brought under Rule 23(e) of the Federal Rules of Civil Procedure, the Court must find that the proposed agreement is "fair, adequate and reasonable." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) *as amended* (Aug. 4, 1999). The determination of whether a settlement comports with the requirements of Rule 23(e) is within the sound discretion of the court. *Officers for Justice*, 688 F.2d at 625. However, as the Supreme Court has cautioned, upon such review the Court should not attempt to "resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 at n.14 (1981); *see also Staton v. Boeing Co.*, 327 F.3d 938, 963, at n.16 (9th Cir. 2003).

The Ninth Circuit has identified several non-exhaustive factors relevant to the determination of whether a settlement is fair, adequate, and reasonable. Those factors include:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

8

*Churchill Vill. L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) *citing Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). *See also In re Mego Fin.* 213 F.3d at 458. *Accord Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992). As the Ninth Circuit has observed:

> the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned… the … fairness hearing is not to be turned into a trial or rehearsal for trial on the merits…nor …reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements… not to be judged against a hypothetical or speculative measure of what ***might*** have been achieved by the negotiators.

*Officers for Justice*, 688 F.2d at 625 (emphasis in original). *See also Horton v. USAA Cas. Ins. Co.*, 266 F.R.D. 360, 363 (D. Ariz. 2009) (citations omitted) (same); *Morales v. Stevco, Inc.*, No. 09-cv-704-AWI, JLT, 2011 U.S. Dist. Lexis 130604, *42 (E.D. Cal. Nov. 10, 2011) (*quoting In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)) (same). As set forth below, consideration of these factors counsels in favor of final approval of the Settlement.

### B. The Agreed Upon Settlement of $30 Million is Eminently Fair, Adequate, and Reasonable

An analysis of the factors that the Ninth Circuit has endorsed for the evaluation of settlement fairness easily establishes that the Settlement is fair, adequate, and reasonable. The Settlement provides a certain and substantial recovery for Settlement Class Members while avoiding the certainty of lengthy litigation, escalation of expenses, and the uncertainty of class certification, further dispositive motions, and trial, each of which provides an avenue for Defendants to significantly limit or foreclose any recovery for the Settlement Class.

#### 1. The Settlement Reflects a Balance of the Risk, Expense, Complexity, and Likely Duration of Further Litigation with the Strength of Lead Plaintiffs' Case

Courts have long recognized that compromise and settlement is a fundamentally important tool in litigating complex class actions. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 458 (recognizing "the risk, expense, complexity, and likely duration of further litigation" as the

9

first factor to be evaluated in considering settlement approval). *See also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) ("*Omnivision*") (recognizing that settlement "which offers an immediate and certain award for a large number of potential class members, appears a much better option" than continued litigation; *see also In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. 02 Civ. 5575 (SWK), 2006 U.S. Dist. LEXIS 17588 at *31 (S.D.N.Y. April 6, 2006) ("Due to its notorious complexity, securities class action litigation is often resolved by settlement, which circumvents the difficulty and uncertainty inherent in long, costly trials."); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("The Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in hand instead of a prospective flock in the bush.") (internal citations and quotations omitted). Thus, "[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." A. Conte & H. Newberg, *Newberg on Class Actions,* § 11:50 at 155 (4th ed. 2002).

Lead Plaintiffs recognize that further litigation of this case would have faced considerable obstacles, including significant challenges in asserting, through the class certification process, dispositive motions and trial, the actionability of statements, their materiality, Defendants' *scienter*, loss causation, and the establishment of damages. Failure on any of these points would have been fatal to Lead Plaintiffs' claims and would have eliminated the possibility of ***any*** recovery for the Settlement Class.

The evaluation of a proposed settlement requires that the court balance the continuing risks of litigation against the benefits afforded to the class and the immediacy and certainty of a substantial recovery. *In re Mego Fin.*, 213 F.3d at 458. As set forth in detail in § II *supra*, while Lead Plaintiffs believe that the case they developed against the Defendants was meritorious, in light of the significant challenges that the case would face, as well as the fact that, should the case have continued through class certification, further dispositive motions, trial, and subsequent appeal, a recovery by Settlement Class members would have been delayed indefinitely. The

10

1  speedy resolution of the action and the certainty of the recovery and its size are all indicative of

2  the fact that the Settlement is extremely beneficial to the Settlement Class.

3       In order to prove liability under the Exchange Act, a plaintiff must prove, *inter alia*, that:

4  (i) defendants were responsible for materially false or misleading representations entering the

5  market; (ii) defendants acted with scienter (*i.e.*, that defendants made their misrepresentations

6  knowingly or recklessly); (iii) plaintiff's losses were caused by defendants' misrepresentations

7  (*i.e.*, "loss causation"); and (iv) plaintiff and the class members suffered damages. *Dura Pharms.,*

8  *Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005). As more fully discussed in the Basser Declaration,

9  in ¶¶ 39-51 thereof, proving several of these requirements posed significant risk to any potential

10  recovery by the Settlement Class.

11       While Lead Plaintiffs believe that they could present evidence supporting the allegations

12  that by the advent of, or within, the Class Period, the 1934 Act Defendants knew that OPM did

13  not intend to pay WageWorks for services provided prior to September 1, 2016, and that the

14  Company needed to write-off the value of its KP Connector software platform, the 1934 Act

15  Defendants hotly contested ***scienter*** and ***materiality***. They were expected to present evidence at

16  trial to the effect that they honestly believed WageWorks was entitled to be paid for the work it

17  rendered in the 2016 financial periods and entitled to recognize associated revenue, and had no

18  intention of deceiving investors. For example, Defendants contended with respect to revenue

19  WageWorks acknowledged on March 18, 2019, "should not have been recognized," that such

20  revenue was contractually owed to the Company by OPM, the Company had performed the

21  services, and that OPM's refusal to pay WageWorks was contrary to the terms of the OPM

22  Contract.

23       Defendants were expected to argue that, in practical terms, WageWorks's earnings

24  performance in the second and third quarters and fiscal year 2016 supported prior revenue

25  guidance, even if the revenue should not have been "recognized" until a later date. The 1934 Act

26  Defendants were expected to contend that they always believed and fully expected that OPM

27  would ultimately pay the invoiced amounts, that the revenue would be forthcoming from OPM,

and that it was not until after the Company invoiced OPM on February 15, 2017, that OPM

11

formally determined and gave formal notice to the Company that it would not pay that invoice, though it paid other invoices for significant amounts.

With regard to the alleged violations of the 1933 Act, the 1933 Act Defendants were expected to contend that, even if there was a violation of GAAP by recognizing the revenue at issue, OPM was, in all other respects, continuing to honor the OPM Contract for work performed from and after September 1, 2016 and that the OPM Contract remained in full force and effect. Hence, they were expected to contend that WageWorks's future revenue and prospects were not adversely impacted, and that reasonable investors would not have found the alleged premature revenue recognition and related GAAP violation material when making their investment decisions with respect to purchasing shares in the June 2017 Offering, especially since the Company had a successful first quarter of 2017.

As a companion to their arguments regarding the lack of materiality – an intensely factual issue – the amounts of improperly recognized revenue in violation of GAAP amounted to about 1% of the Company's total revenue for fiscal year 2016. The 1934 Act Defendants also strongly contested the element of "*loss causation*" arising from the alleged corrective disclosures. They were expected to point to the fact that while the Company's stock price declined precipitously on March 1, 2018 when it was disclosed that it would delay filing its 2017 Form 10-K – without any express disclosure regarding any GAAP accounting violations and premature recognition of revenue – once the March 1, 2018 trading halt was lifted, the stock price rebounded significantly on March 2, 2018. They were expected to note that when fraud related information was disclosed on April 5, 2018, including what Lead Plaintiffs contended were fraud-related "resignations" of Defendants Jackson and Callan, WageWorks's stock price only declined $0.49 per share, which was not statistically significant. Although immediately after an alleged corrective disclosure on September 12, 2018, the Company's stock price declined significantly, Defendants contended that much of that decline was either due to information disclosed to the market that was not fraud related or was not new information. The 1934 Act Defendants were also expected to point to the fact that, when the Restatement disclosing the exact second and third quarter and fiscal year 2016 revenue that "should not have been recognized" was formally issued on March 18, 2019, along

12

with a disclosure regarding the write-off of the value of its KP Connector software platform, WageWorks's stock price increased by 4.69%. They were also expected to contend at trial that the Company's stock price declines on the alleged corrective disclosures needed to be disaggregated in order to parse out fraud from non-fraud related declines in assessing both loss causation and damages.[7]

Indeed, Defendants hotly contested damages and were expected to contend that both 1933 and 1934 Act damages were significantly lower than Lead Plaintiffs contended. Additionally, the individual 1933 Act Defendants posited that they relied on the advice of professionals at all times material, and engaged in pre-Offering due diligence in good faith, thus negating their liability under Section 11 of the 1933 Act and that the decline in the value of WageWorks common stock post-offering was largely unrelated to the alleged false financial statements or the write-off of the KP Connector software platform.

Additionally, the many factual issues for consideration by the court or jury required highly technical analysis by expert witnesses skilled in accounting, internal controls over financial reporting, econometric analysis, and damages evaluation. This expert analysis would doubtless have been challenged by Defendants, leading to a "battle of the experts" at trial, the outcome of which courts have recognized as impossible to predict with any certainty. *See, e.g., In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986).

### 2.     The Risk of Maintaining Class Action Status throughout the Trial

At the time a tentative agreement regarding settlement was reached, Lead Counsel was preparing a motion for class certification for filing. Absent the Settlement, a contested motion for class certification would have followed, the outcome of which may have limited or even

---

[7]     While loss causation is not a *prima facie* element of a claim arising under section 11 of the 1933 Act, the 1933 Act Defendants raised an affirmative defense of negative causation. In that regard, the affirmative defense of negative causation prevents recovery for losses that the defendant proves are not attributable to the alleged misrepresentation or omission in the registration statement. *Hildes v. Arthur Andersen LLP*. 734 F.3d 854, 860 (9th Cir. 2013). The defendant bears a "heavy burden" of proof on this defense and must show that the depreciation in value of a plaintiff's stock "resulted from factors other than the alleged material misstatement" in the defendant's registration statement. *Id. See also* 15 U.S.C. §77k(e).

eliminated the possibility of a recovery for many members of the Settlement Class. While Lead Counsel were confident that they would have presented a compelling motion for class certification, the process would have added time and expense to the proceedings, and the outcome of such a contested motion, including the definition of a certified class, was far from certain. The Settlement, which does not compromise the Settlement Class alleged in the Complaint, avoids that uncertainty and lengthy delay.

### 3. The Extent of the Discovery Completed and the Stage of the Proceedings

Lead Plaintiffs undertook substantial discovery in this action. Defendants produced, and Plaintiffs' Counsel reviewed, over 500,000 pages of documents including, *inter alia*: productions from each of the Defendants, third party KPMG, and documents produced by OPM pursuant to a FOIA request. Basser Decl. ¶¶ 26, 33-34.

Lead Counsel also consulted with forensic accounting experts regarding false accounting claims, GAAP violations, and inadequate controls over internal reporting, as well as with economic experts regarding the issues of damages, loss causation and "price impact" attributable to the alleged false and misleading statements and material omissions. These experts analyzed a variety of materials and provided Lead Counsel with a thorough understanding of issues related to liability and damages. Basser Decl. ¶¶ 37-38. In addition, Lead Counsel interviewed and/or conferred with former employees of WageWorks regarding the allegations of the Complaint. Basser Decl. ¶ 14. This discovery provided significant insight into the strengths and challenges of the case and was essential in forming Lead Counsel's views on the Settlement. *Redwen v. Sino Clean Energy, Inc.*, No. 11-cv-3936-PA, 2013 U.S. Dist. LEXIS 100275, at *22 (C.D. Cal. July 9, 2013) (settlement approved when, as here, "the parties have spent a significant amount of time considering the issues and facts in this case and are in a position to determine whether settlement is a viable alternative").

### 4. The Amount Offered in Settlement

Under the terms of the Settlement, a Settlement Fund of $30,000,000 has been created. The $30,000,000 Settlement reflects the fact that, if Defendants were successful in challenging

14

materiality, *scienter,* loss causation, or damages. Lead Plaintiffs and the Settlement Class would have recovered nothing or substantially less. When considering settlements in light of potential damages, the Ninth Circuit Court of Appeals has recognized that "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does ***not per se*** render the settlement inadequate or unfair." *In re Mego Fin*, 213 F.3d at 459; *see also Martin v. AmeriPride Servs.*, No. 08-cv-440-MMA, 2011 U.S. Dist. LEXIS 61796, *19 (S.D. Cal. June 9, 2011). *In re Cendant Corp., Derivative. Action Litig.*, 232 F. Supp. 2d 327, 336 (D.N.J. 2002) (approving a settlement that "represents less than two percent" of estimated damages where "the Settling Defendants appear to have significant defenses that increase the risks of litigation"); *In re LDK Solar Secs. Litig.*, No. C-07-5182-WHA, 2010 U.S. Dist. LEXIS 20797, *5 (N.D. Cal. Feb. 17, 2010) (approving settlement where settlement award was approximately 5% of plaintiff's estimated damages). This is true even where the class has succeeded at trial and the settlement is less than the verdict. *See, e.g. In re Terra-Drill P'ships Sec. Litig.,* 733 F. Supp. 1127 (S.D. Tex. 1990) (where the court approved a settlement for $13.5 million, after a jury verdict resulting in a judgment for more than $72 million for the class). As set forth in more detail below, in light of the procedural posture of the case, the substantial challenges raised by Defendants and the strength of Lead Plaintiffs' case, the $30,000,000 Settlement reflects an excellent recovery and is more than fair and reasonable.

The $30 million Settlement compares favorably to other securities class action settlements. As recently reported by NERA Economic Consulting, the *median* annual settlement value in securities fraud class actions between 2017 and 2020 ranged from $7 million in 2017 to $13 million in 2020. *See*, NERA Economic Consulting, *Recent Trends in Securities Class Action Litigation: 2020 Full Year Review* (January 25, 2021). ECF No. 167-4. The median ratio of settlement to investor losses in 2020 was 1.7%. *Id.* at 20. The median settlement value in securities class action settlements in 2020 was reported by Cornerstone Research to be $10.1 million, *see* Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements. 2020 Review and Analysis*, at 1 (Cornerstone Research 2021). ECF No. 167-5.

15

Ld Pls' Notice of Mot. and Mot. for Final Approval of Proposed Class Action Settlement and Memo. of Ps & As in Support Thereof - Case No.: 5:11-cv-05235-RMW

1    Lead Plaintiffs' damages expert estimated that if liability were established with respect

2    to all of the remaining claims, including statistically significant price drops following the alleged

3    corrective disclosures, the maximum aggregate 1934 Act damages recoverable at trial based on

4    the non-disaggregated stock price declines on disclosures dates of March 1-2, 2018, and

5    September 12, 2018, would be approximately $123.7 million after considered assumptions

6    regarding the number of damaged shares. Lead Plaintiffs' damages expert estimates that Section

7    11 damages for the 1933 Act claims are approximately $21.2 million after considered

8    assumptions regarding the number of damaged shares and before addressing any potential

9    offsetting valuation defenses. This does not include a statistically insignificant stock price drop

10   on the April 5, 2018 corrective disclosure, nor credit the statistically significant stock price

11   increase of 4.69% when the March 18, 2019 Restatement was issued.[8]

12   Here, the Settlement recovers m o r e  t h a n  20% of estimated total damages. Since the

13   passage of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), courts have

14   approved settlements that recovered far smaller percentages of maximum damages. *See, e.g.,*

15   *Schuler v. Medicines Co.,* No. C V 14 Civ. 1149 (CCC), 2016 WL 3457218, at *8 (D.N.J.

16   June 24, 2016) (approving $4,250,000 settlement reflecting approximately 4.0% of estimated

17   recoverable damages and noting percentage "falls squarely within the range of previous

18   settlement approvals"); *In re Par Pharm. Sec. Litig.,* No. CIV.A. 06-3226-ES, 2013 WL

19   3930091, at *2 (D.N.J. July 29, 2013) (approving settlement of $8.1 million, amounting to

20   approximately 7% of class-wide damages); *Int'l Bhd. of Elec. Workers Local 697 Pension Fund*

21   *v. Int'l Game Tech., Inc.,* No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742, at *2-3 (D.

22   Nev. Oct. 19, 2012) (approving $12.5 million settlement recovering about 3.5% of the

23   maximum damages that plaintiffs believed could be recovered at trial and noting that the

24   amount was within the median recovery in securities class actions settled in the last few years);

25   *McPhail v. First Command Fin. Planning, Inc.,* No. 05-cv-179-IEG-JMA, 2009 WL 839841,

26   at *5 (S.D. Cal. Mar. 30, 2009) (finding a $12 million settlement recovering 7% of estimated

27

---

[8]    Had the case proceeded, the 1934 Act Defendants were expected to argue for the exclusion
of all non-fraud related declines or full disaggregation of non-fraud information on the grounds
that they could not be linked to the 1934 Act Defendants' alleged fraud.

16

damages was fair and adequate); *Omnivision*, 559 F. Supp. 2d at 1042 ($13.75 million settlement yielding 6% of potential damages after deducting fees and costs was "higher than the median percentage of investor losses recovered in recent shareholder class action settlements").

In view of the foregoing, the proposed Settlement represents an excellent resolution given the substantial risks of expense and delay of continued litigation versus the certain and immediate recovery for the Settlement Class. *See, e.g.*, *Orvis v. Spokane Cty.*, 281 F.R.D. 469, 475 (E.D. Wash. 2012) ("[T]he proposed benefit to class members appears to the Court to be within the range of fair and reasonable compensation given the uncertain outcome of the legal arguments and the risks and probable delay for Plaintiff and class members if litigation were to proceed toward trial."); *Lo v. Oxnard European Motors, LLC*, No. 11CV1009 JLS (MDD), 2011 WL 6300050, at *5 (S.D. Cal. Dec. 15, 2011) (addressing preliminary approval and stating that "'[c]onsidering the potential risks and expenses associated with continued prosecution of the Lawsuit, the probability of appeals, the certainty of delay, and the ultimate uncertainty of recovery through continued litigation,' the Court finds that, on balance, the proposed settlement is fair, reasonable, and adequate.") (alteration in original).

### 5. The Experience and Views of Counsel and the Support of Lead Plaintiffs, Each Sophisticated Institutional Investors

Courts recognize that the opinion of experienced counsel supporting the settlement after vigorous arms'-length negotiations is entitled to considerable weight. *See, e.g., Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) *aff'd* 661 F.2d 939 (9th Cir. 1981) ("the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight"); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979); s*ee also, e.g.*, *In re NVIDIA Corp. Derivative. Litig.*, No. C-06-06110-SBA (JCS), 2008 U.S. Dist. LEXIS 117351, at *12 (N.D. Cal. Dec. 19, 2008) ("[S]ignificant weight should be attributed to counsel's belief that settlement is in the best interest of those affected by the settlement."). Therefore, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Omnivision,* 559 F. Supp. 2d at 1043 (citation and internal quotation marks omitted). In *Omnivision*, the court held that the recommendation of counsel

17

weighed in favor of settlement given their familiarity with the dispute and their significant experience in securities litigation. *Id. See also In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.,* MDL Docket NO. 901, 1992 U.S. Dist. LEXIS 14337, at *5-6 (C.D. Cal. June 10, 1992) (belief of counsel that the proposed settlement represented the most beneficial result for the class a compelling factor in approving settlement); *Glass v. UBS Fin. Servs.,* No. C-06-4068-MMC, 2007 U.S. Dist. LEXIS 8476, at *15 (N.D. Cal. Jan. 26, 2007) ("The settlement was negotiated and approved by experienced counsel on both sides of the litigation, with the assistance of a well-respected mediator with substantial experience . . . [and] this factor supports approval of the settlement.").[9]

On this record, which included lengthy mediation overseen by two highly experienced mediators, there is no doubt that the Settlement was reached without collusion and is the product of mediated negotiations between the Settling Parties, fully informed of the relative strength and weaknesses of their claims and defenses, thus supporting a determination that the Settlement Agreement is fair, adequate, and reasonable and merits final approval.

Lead Counsel, Barrack, Rodos & Bacine, is a highly skilled litigation firm with a broad range of experience litigation complex securities class action lawsuits. *See* Basser Decl., ¶¶ 104-106, Ex. 6, the Firm Biography of Barrack, Rodos & Bacine (the "Barrack Firm Biography"). Lead Counsel worked diligently and relentlessly in securing the best possible result for Lead Plaintiffs and the Settlement Class. Lead Counsel's views and recommendation of the Settlement are the product of thorough analysis and consideration of the issues and risks and the assessment of a reasonable estimate of the likely range of the aggregate amount of claimant's recovery. Basser Decl. ¶¶ 60-61.

---

[9] As likewise stated by the *Manual for Complex Litigation*, a **"presumption of fairness, adequacy and reasonableness"** may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery…" *Manual for Complex Litigation*, §30.42 (3rd ed. 1995) (emphasis added). *See also In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, at *12 (finding belief of counsel that the proposed resolution of the action represented a favorable result for the class a compelling factor in approving settlement); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1392 (D. Ariz. 1989) *aff'd sub nom. Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992).

Additionally, the Settlement was vetted and approved by each of the Lead Plaintiffs, all of whom are sophisticated institutional investors. *See* Lead Plaintiff Declarations filed herewith as Exs. 1, 2, and 3 to the Basser Declaration (the "Lead Plaintiff Declarations"). *See also* ECF No. 31. Congress enacted the PSLRA in large part to encourage sophisticated institutional investors to take control of securities class actions and "increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel." H.R. Conf. Rep. No. 104-369, at *32 (1995) *reprinted in* 1995 U.S.C.C.A.N. 730, 733. Here, Lead Plaintiffs did exactly that and achieved an excellent result.

### 6. The Reaction of the Settlement Class Members to the Proposed Settlement is Indicative of Their Strong Approval

The Notice, which described the Plan of Allocation in detail, has been issued consistent with the Court's Order granting preliminary approval of the settlement. ECF No. 178 at 5-7, Cormio Decl. at ¶¶ 3-12. *See also* Section II. G. *infra*. Settlement Class Members have until September 14, 2021 to file claims and until July 30, 2021 to file objections to the Settlement or to exclude themselves from the Settlement. To date, Kroll has received no objections and no requests for exclusion. Cormio Decl. ¶ 15.

Lead Counsel are not aware of any objections to the Settlement or the Plan of Allocation.[10] The paucity of objections supports a determination that the Plan of Allocation is fair and adequate. Even assuming that a small number of objections to the settlement are ultimately filed, "[i]f only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) (citing Newberg § 11.41 at 108).

### 7. The Settlement is the Result of a Thorough, Rigorous, Arm's Length Process by Well Qualified Counsel and Private Mediators

There is an initial presumption that a proposed settlement is fair and reasonable when it is "the product of arms-length negotiations." *In re Portal Software, Inc. Sec. Litig.*, No. C-03-

---

[10] Any objections to the Settlement or Plan of Allocation will be addressed in Lead Plaintiffs' reply papers which are due to be filed no later than August 13, 2021.

19

5138 VRW, 2007 WL 1991529, at *6 (N.D. Cal. June 30, 2007). *Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 WL 450064, *5 (N.D. Cal. July 18, 1997); *aff'd* 151 F.3d 1234 (9th Cir. 1998) ("The involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair."); *see also, Torrisi*, 8 F.3d at 1375. When settlements are reached before formal class certification, additional scrutiny is appropriate to assure that the settlement is not the product of collusion. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-947 (9th Cir. 2011). In *Bluetooth*, the Ninth Circuit identified instances which might suggest collusion, such as "arrangement[s] providing for the payment of attorneys' fees separate and apart from class funds," reversion to defendants of fees not paid to plaintiffs' counsel, or when the class receives no monetary award. *Id.* None of those are relevant here.

The settlement process was extensive and involved two mediation sessions: October 29, 2019, and February 10, 2021. Before, during, and following the two mediations, the strengths and weaknesses of Lead Plaintiffs' and Defendants' respective claims and defenses were fully explored by the Settling Parties. The two mediations – overseen initially by Robert Meyer, Esquire, and thereafter by Judge Phillips – focused on many disputed issues of liability, falsity, materiality, *scienter*, loss causation, so-called "negative causation," due diligence, good faith reliance on the advice of professionals, and damages. The Settling Parties considered the impact of the CBCA decision of December 18, 2020, favorable to WageWorks. The Settling Parties also considered the subsequent "settlement" by Mssrs. Jackson and Callan with the SEC, culminating in a cease-and-desist order including findings that are inadmissible as evidence against them, did not require a disgorgement of defendant Jackson's insider selling proceeds, and did not issue any action versus the Outside Director Defendants. The Settling Parties also considered extensive econometric evaluations of loss causation and damages assessments respecting 1933 and 1934 Act claims, as well as Defendant's position regarding negative causation. Basser Decl. ¶ 57.

With this informed understanding of the various issues, the Settling Parties agreed to the Settlement. There was no collusion, nor is there any preferential treatment of any Lead Plaintiff or any other Settlement Class member.

Importantly, the Settlement was finally achieved on February 10-11, 2021, with the assistance of Judge Phillips, an experienced and highly regarded mediator. Courts have recognized that "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, No. C-03-2878-SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007); *see also Adams v. Inter-Con Sec. Sys., Inc.*, No. C-06-5428 MHP, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007) (same). Indeed, "where the services of a private mediator are engaged, this fact tends to support a finding that the settlement valuation by the parties was not collusive." *Eisen v. Porsche Cars N. Am., Inc.,* No. 11-cv-09405-CAS, 2014 WL 439006 at *5 (C.D. Cal. Jan. 30, 2014). Judge Phillips played an active role in addressing the relevant issues with the Settling Parties and bringing about the Settlement. Indeed, "the fact that the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation," provides further proof that approval is appropriate. *In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689(SAS), 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003). *See also Glass*, 2007 U.S. Dist. LEXIS 8476 at *15 ("The settlement was negotiated and approved by experienced counsel on both sides of the litigation, with the assistance of a well-respected mediator with substantial experience … [and] this factor supports approval of the settlement.").

Here, Judge Phillips noted that "the Settlement represents a recovery and outcome that is reasonable and fair for the Settlement Class and all parties involved. I further believe it was in the best interests of the parties that they avoid the burdens and risks associated with taking a case of this size and complexity to trial[.]" *See* Phllips Declaration, ECF No. 167-2 at ¶ 11.

## IV.    ALLOCATION OF THE SETTLEMENT AND CALCULATION OF CLAIMS

Under Federal Rule of Civil Procedure, Rule 23, assessment of a settlement's plan of allocation is "governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *Omnivision*, 559 F. Supp. 2d at 1045, *quoting In re Oracle Sec. Litig.*, No. C-90-9031-VRW, 1994 U.S. Dist. LEXIS 21593, at *3 (N.D. Cal. June 16, 1994), *citing Class Pls. v. City of* Seattle, 955 F.2d 1268, 1284-85 (9th Cir. 1992). An allocation formula, particularly a formula recommended by experienced class counsel,

need only have a reasonable basis. *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 U.S. Dist. LEXIS 13555, *11 (C.D. Cal. June 10, 2005). *See also White v. NFL*, 822 F. Supp. 1389, 1420 (D. Minn. 1993) (approving plan of allocation recommended by "experienced and competent" lead counsel and developed with the assistance of an experienced damages expert).

"A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable." *Redwen*, 2013 U.S. Dist. LEXIS 100275, at *29 (citation and internal quotation marks omitted). Here, the Plan of Allocation, which was described to members of the Settlement Class in detail in the Notice (Cormio Decl. Ex. B at 15-20), and developed with the assistance of an experienced econometric and damages expert, provides formulas for calculating the recognized claim of each Settlement Class Member based on each such person's purchases and sales of WageWorks's publicly traded common stock during the proposed Class Period. The Plan of Allocation takes into account the impact of the alleged corrective disclosures on March 1-2, 2018, April 5, 2018, and September 12, 2018. Basser Decl. ¶¶ 72-77. The proposed Plan of Allocation does not discriminate against any class member or treat them disproportionately. Lead Plaintiffs will receive a *pro rata* distribution from the Net Settlement Fund based on the same formulas that apply to the recovery of all similarly situated members of the Settlement Class.

## V.   SETTLEMENT CLASS MEMBERS HAVE BEEN PROVIDED ADEQUATE NOTICE OF THE SETTLEMENT

The Notice, approved by this Court and consistent with the requirements of the PSLRA and the Federal Rules of Civil Procedure, provides Class Members with clear and detailed information regarding: (1) the nature of the action and the definition of the Class; (2) the amount of the Settlement; (2) the plan of allocation of the Settlement; (3) the maximum attorneys' fees and expenses that Lead Counsel might seek and the average cost per share if that amount was requested and approved by the Court; (4) the procedure for requesting exclusion from the Settlement Class; (5) the procedure for objecting to the Settlement; (6) the procedure for participating in the Settlement and filing a claim; (7) the date and place of the Settlement Hearing and the procedure for making an appearance at said hearing; and (8) the identification of Lead Counsel to contact with questions regarding the Settlement.

1   "Due process requires notice 'reasonably calculated, under all the circumstances, to

2   apprise interested parties of the pendency of the action and afford them an opportunity to present

3   their objections.'" *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010) (*quoting*

4   *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865

5   (1950). *See also Ching v. Siemens Indus., Inc.*, No. C 11-4838 MEJ, 2013 WL 6200190, at *6

6   (N.D. Cal. Nov. 27, 2013) (approving notice that "adequately describes the nature of the action,

7   summarizes the terms of the settlement, identifies the class and provides instruction on how to

8   opt out and object, and sets forth the proposed fees and expenses to be paid to Plaintiff's counsel

9   and the settlement administrator in clear, understandable language").

10   In addition, the Notice satisfies all the requirements of the PSLRA, the Class Action

11   Fairness Act of 2005 and Rule 23.[11] *See* PSLRA 15 U.S.C. §78u-4(e); Class Action Fairness Act

12   of 2005, 28 U.S.C. §§1332(d) and 1711-1715 of the Federal Rules of Civil Procedure. To date,

13   70,129 copies of the Notice have been mailed to identifiable Class Members, brokerage firms,

14   banks and financial institutions. Pursuant to the Court's Preliminary Approval Order (ECF No.

15   178), the Summary Notice was published in *Investor's Business Daily* and issued over the PR

16   Newswire. Cormio Decl. ¶ 13. In addition, the Notice and Proof of Claim were posted on the

17   website of the Claims Administrator, the websites of Lead Counsel and on a website maintained

18   by the Claims Administrator, www.WageWorksSecuritiesLitigation.com. Cormio Decl. ¶ 10. In

19   addition, the Claims Administrator has maintained a toll-free telephone number for Class

20   Members who have questions regarding the Notice. Cormio Decl. ¶ 11.

21   The Notice program satisfies all applicable standards, has already generated a significant

22   response from the Class, and should be approved.

23   **VI.    FINAL CERTIFICATION OF THE CLASS FOR PURPOSES OF SETTLEMENT IS MERITED**

24

25   On March 4, 2015, the Court preliminarily certified the Settlement Class for purposes of

26   settlement and dissemination of the Notice. ECF No. 178. Nothing has changed to alter the

27   propriety of the Court's certification and no potential Settlement Class Member has objected

---

[11]    Defendants have sent out notices pursuant to the Class Action Fairness Act of 2005.

23

Ld Pls' Notice of Mot. and Mot. for Final Approval of Proposed Class Action Settlement and Memo. of Ps & As in Support Thereof - Case No.: 5:11-cv-05235-RMW

to class certification. Accordingly, and for all the reasons stated in Lead Plaintiffs' memorandum in support of their motion for preliminary approval of the Settlement (ECF No. 166), Lead Plaintiffs now request that the Court (i) finally certify the Settlement Class for purposes of the Settlement; (ii) appoint Lead Plaintiffs as Class Representatives; and (iii) appoint Lead Counsel as Class Counsel. *See, e.g., Boring v. Bed Bath & Beyond of Cal. LLC,* No. 12-cv-05259-JST, 2014 U.S. Dist. LEXIS 90258, at *4-5 (N.D. Cal. June 30, 2014) ("For the reasons discussed in the Court's preliminary Approval Order, the Court finds that the requirements for certification of the conditionally certified settlement class have been met, and that the appointment of … Class Representatives and … Class Counsel is proper.").

## VII.    CONCLUSION

The Settlement and Plan of Allocation are fair, reasonable, and adequate. Thus, Lead Plaintiffs respectfully request that the Court (1) grant final approval of the Settlement pursuant to Fed. R. Civ. P. 23(e)(2); (2) approve the Plan of Allocation; (3) grant final certification of the Settlement Class; and enter a Final Judgment and Order of Dismissal with Prejudice.

DATED: July 16, 2021                    Respectfully submitted,

BARRACK, RODOS & BACINE
STEPHEN R. BASSER (121590)
sbasser@barrack.com
SAMUEL M. WARD (216562)
sward@barrack.com

/s/ STEPHEN R. BASSER
STEPHEN R. BASSER

600 West Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
Facsimile: (619) 230-1874

JEFFREY A. BARRACK (admitted *pro hac vice*)
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103

1

Telephone: (215) 963-0600
Facsimile: (215) 963-0838
jbarrack@barrack.com

2

3

*Lead Counsel for Lead Plaintiffs the Public
Employees' Retirement System of Mississippi, the
Public Employees Retirement Association of New
Mexico, and the Government Employees' Retirement
System of the Virgin Islands, and the Proposed
Settlement Class*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

25