STEPHEN R. BASSER (121590)
SAMUEL M. WARD (216562)
**BARRACK, RODOS & BACINE**
One America Plaza
600 West Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
Facsimile: (619) 230-1874
*sbasser@barrack.com*
*sward@barrack.com*

JEFFREY A. BARRACK (admitted *pro hac vice*)
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-0600
Facsimile: (215) 963-0838
*jbarrack@barrack.com*

*Attorneys for Lead Plaintiffs the Public Employees'*
*Retirement System of Mississippi, the Public Employees*
*Retirement Association of New Mexico, and the Government*
*Employees' Retirement System of the Virgin Islands and the*
*Proposed Settlement Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| IN RE WAGEWORKS, INC., SECURITIES LITIGATION | CASE NO. 4:18-CV-01523-JSW |
| | **LEAD PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEY FEES AND PAYMENT OF LITIGATION EXPENSES AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| This Document Relates to: | |
| ALL ACTIONS. | |
| | **Judge:  Hon. Jeffrey S. White** |
| | **Dept.:   Courtroom 5** |
| | **Hearing Date:  August 20, 2021** |
| | **Hearing Time:  9:00 a.m.** |

# TABLE OF CONTENTS

**Page(s)**

NOTICE OF MOTION AND MOTION...……………………………………………..…vii

STATEMENT OF ISSUES TO BE DECIDED (CIVIL L.R. 7-4(A)(3)) ...................................1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................1

I.      PRELIMINARY STATEMENT ........................................................................1

II.     FACTUAL BACKGROUND .............................................................................6

III.    ARGUMENT ......................................................................................................7

      A.      Lead Counsel's Request for Attorneys' Fees of 22.5% of the Settlement
          Fund Should be Approved .......................................................................7

             1.      Lead Counsel is Entitled to an Award of Attorneys' Fees From the
                Common Fund .............................................................................7

             2.      A Reasonable Percentage of the Fund Recovered is the
                Appropriate Method for Awarding Attorneys' Fees in Common
                Fund Cases ...................................................................................7

             3.      Analysis Under the Percentage Method and the *Vizcaino* Factors
                Justifies a Fee Award of at Least 22.5% in This Case..............................8

             4.      A 22.5% Fee Award is Below Both the Ninth Circuit Benchmark
                of 25% and the Average Fee Awarded in Similar Complex Class
                Actions ...................................................................................... 19

             5.      Lodestar Cross-Check............................................................... 20

              6.      Reaction of the Settlement Class ............................................. 22

      B.      Lead Counsel's Expenses are Reasonable and Were Necessarily Incurred
          To Achieve the Benefit Obtained ......................................................... 22

IV.     CONCLUSION...................................................................................................25

i

Ld Pltffs' Notice of Mot. & Mot. for Award of Attys' Fees & Payment of Litig. Expenses
Case No.: 4:18-CV-01523-JSW

# TABLE OF AUTHORITIES

## CASES

Page(s)

*AOL Time Warner, Inc. Sec. & ERISA Litig.*,
No. 1500, 02 Civ. 5575 (SWK), 2006 U.S. Dist. LEXIS 17588
(S.D.N.Y. Apr. 6, 2006) ............................................................................... 15

*Atlas v. Accredited Home Lenders Holding Co.*,
CASE NO. 07-CV-00488-H (CAB), 2009 U.S. Dist. LEXIS 103035
(S.D. Cal. Nov. 2, 2009) .............................................................................. 12

*Barbosa v. Cargill Meat Sols. Corp.*,
297 F.R.D. 431 (E.D. Cal. 2013) ................................................................. 22

*Blum v. Stenson*,
465 U.S. 886 (1984) ...................................................................................... 7

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ...................................................................................... 7

*Colin v. Onyx Acceptance Corp.*,
31 F. App'x 359 (9th Cir. 2002) .................................................................. 12

*Craft v. County of San Bernardino*,
624 F. Supp. 2d 1113 (C.D. Cal. 2008) ................................................... 20-21

*DeMarco v. DepoTech Corp.*, 32 F. App'x 260 (9th Cir. 2002)
32 F. App'x 260 (9th Cir. 2002) .................................................................. 13

*Dubeau v. Sterling Sav. Bank*
No. 1:12-cv-01602-CL, 2013 U.S. Dist. LEXIS 123337
(D. Or. Aug. 28, 2013) .................................................................................. 8

*Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*,
213 F.3d 454 (9th Cir. 2000) ................................................................. 11, 20

*Dzung Chu v. Oracle Corp.  (In re Oracle Corp. Sec. Litig.)*,
627 F.3d 376 (9th Cir. 2010) ....................................................................... 14

*Eddings v. Health Net, Inc.*,
CASE NO. CV 10-1744-JST (RZx), 2013 U.S. Dist. LEXIS 84811
(C.D. Cal. June 13, 2013) ......................................................................... 8, 17

*Eminence Capital, L.L.C. v. Aspeon, Inc.  (In re Aspeon Secs. Litig.)*,
168 F. App'x 836 (9th Cir. 2006) ................................................................ 12

*Evans v. Linden Rsch., Inc.*,
No. C-11-01078 DMR, 2014 U.S. Dist. LEXIS 59432 (N.D. Cal. Apr. 29, 2014) .............. 8

*Fla. v. Exxon Corp.  (In re Coord. Pretrial Proceedings in
Petrol. Prods. Antitrust Litig.)*,
109 F.3d 602 (9th Cir. 1997) ....................................................................... 19

ii

Ld Pltffs' Notice of Mot. & Mot. for Award of Attys' Fees & Payment of Litig. Expenses
Case No.: 4:18-CV-01523-JSW

*Franco v. Ruiz Food Prods.*,
 CASE NO. 1:10-cv-02354-SKO, 2012 U.S. Dist. LEXIS 169057
 (E.D. Cal. Nov. 27, 2012) ................................................................................ 23

*Geffon v. Micrion Corp.*,
 249 F.3d 29 (1st Cir. 2001) ............................................................................... 14

*Goldstein v. MCI Worldcom*,
 340 F.3d 238 (5th Cir. 2003) ............................................................................. 17

*Gottlieb v. Wiles*,
 150 F.R.D. 174 (D. Colo. 1993) ........................................................................ 23

*Greebel v. FTP Software, Inc.*,
 194 F.3d 185 (1st Cir. 1999) ............................................................................. 14

*Gutierrez v. Wells Fargo Bank N.A.*,
 No. C 07-05923 WHA, 2015 WL 2438274 (N.D. Cal. May 21, 2015) .............. 21

*Halliburton Co. v. Erica P. John Fund, Inc.*,
 573 U.S. 258, 134 S. Ct. 2398 (2014) ................................................................ 4

*Harris v. Marhoefer*,
 24 F.3d 16 (9th Cir. 1994) ................................................................................. 22

*Haw. Structural Iron Workers Pension Tr. Fund v. Apple Comput., Inc.*
 (*In re Apple Comput., Inc.*),
 127 F. App'x 296 (9th Cir. 2005) ...................................................................... 12

*Hensley v. Eckerhart*,
 461 U.S. 424 (1983) ........................................................................................... 9

*IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
 No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742
 (D. Nev. Oct. 19, 2012) .................................................................................... 11

*In re Wash. Pub. Power Supply Sys. Secs. Litig.*,
 19 F.3d 1291 (9th Cir.) .................................................................................. 7, 20

*In re Am. Equity Annuity Practices & Sales Litig.*,
 No. CV-05-6735-CAS(MANx), 2014 WL 12586112
 (C.D. Cal. Jan. 29, 2014) .................................................................................. 19

*In re Animation Workers Antitrust Litig.*,
 No. 14-CV-4062-LHK, 2016 WL 6663005 (N.D. Cal. Nov. 11, 2016) .............. 19

*In re Cendant Corp.*,
 232 F. Supp. 2d 327 (D.N.J. 2002) ............................................................... 11-12

*In re Heritage Bond Litig.*,
 MDL CASE NO.: 02-ML-1475 DT, Consolidated with Cases:
 CV 01-5752 DT (RCx), CV 02-382 DT (RCx), 2005 U.S. Dist.
 LEXIS 13555 (C.D. Cal. June 10, 2005) ............................................................ 15

*In re Ikon Off. Sols., Inc. Sec. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000) ................................................................. 14, 17

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007) ............................................................ 23

*In re LDK Solar Secs. Litig.*,
    No. C 07-05182 WHA, 2010 U.S. Dist. LEXIS 20797
    (N.D. Cal. Feb. 17, 2010) ......................................................................... 12

*In re Michael Milken & Assocs. Sec. Litig.*,
    150 F.R.D. 57 (S.D.N.Y. 1993) ................................................................... 11

*In re Omnivision Techs.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2007) ................................................. 11, 14, 17

*In re Oracle Corp. Secs. Litig.*,
    No. C 01-01263-SI, 2009 U.S. Dist. LEXIS 50995
    (N.D. Cal. June 16, 2009) ..................................................................... 17-18

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005) ...................................................................... 21

*In PAR Pharm. Sec. Litig.*,
    No. CIV.A. 06-3226-ES, 2013 WL 3930091 (D.N.J. July 29, 2013) ................................ 11

*In re TFT-LCD Antitrust Litig.*,
    No. M 07-1827 SI, 2013 WL 1365900 (N.D. Cal. Apr. 3, 2013) ..................................... 21

*In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act Litig.*,
    295 F.R.D. 438 (C.D. Cal. 2014) ................................................................. 23

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
    MDL No. 2673 CRB (JSC), 2017 WL 1352859, (N.D. Cal. Apr. 12, 2017) .............................. 21

*Indep. Living Ctr. of S. Cal. v. Kent*,
    No. 2:08-CV-03315-CAS(MANx), 2020 WL 418947 (C.D. Cal. Jan. 24, 2020) ............... 19

*Johnson v. Fujitsu Tech. & Bus. Of Am., Inc.*,
    488 F.2d 714, No. 16-cv-03698-NC (5th Cir. 1974) .......................................... 21

*Johnson v. Ga. Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) ..................................................................... 17

*Kinder v. Acceptance Ins. Cos.  (In re Acceptance Ins. Cos. Sec. Litig.)*,
    423 F.3d 899 (8th Cir. 2005) ..................................................................... 14

*La. State Emps. Ret. Sys. v. Digi Int'l, Inc.  (In re Digi Int'l, Inc. Sec. Litig.)*,
    14 F. App'x 714 (8th Cir. 2001) .................................................................. 14

*Marshall v. Holiday Magic, Inc.*,
    550 F.2d 1173 (9th Cir. 1977) ............................................................... 20, 22

iv

*Martin v. AmeriPride Servs.*,
    CASE NO. 08cv440-MMA (JMA), 2011 U.S. Dist. LEXIS 61796
    (S.D. Cal. June 9, 2011) .......................................................................................... 11

*McGrath v. Wyndham Resort Dev. Corp.*,
    No.: 15cv1631 JM (KSC), 2018 WL 637858 (S.D. Cal. Jan. 30, 2018) ............................ 21

*McPhail v. First Command Fin. Planning, Inc.*,
    No. 05cv179-IEG-JMA, 2009 WL 839841 (S.D. Cal. Mar. 30, 2009) ............................... 11

*Metzler Inv. GmbH v. Corinthian Colls., Inc.*,
    540 F.3d 1049 (9th Cir. 2008) ................................................................................... 12

*Michael A. Cramer, MAI, SRPA, Inc. v. United States*,
    47 F.3d 379 (10th Cir. 1995) ............................................................................... 8, 12

*Mortensen v. Snavely*,
    145 F. App'x 218 (9th Cir. 2005) ................................................................................ 14

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
    No. CV-05-6838-CAS(MANX), 2015 WL 12592726 (C.D. Cal. Mar. 17, 2015) ............. 19

*Nguyen v. Radient Pharms. Corp.*,
    No.: SACV 11-00406 DOC(MLGx), 2014 U.S. Dist.
    LEXIS 63312 (C.D. Cal. May 6, 2014) ................................................................. 13-14, 16

*Ok. Firefighters Pension & Ret. Sys. v. Smith & Wesson Holding Corp.*
    (*In re Smith & Wesson Holding Corp. Sec. Litig.*),
    669 F.3d 68 (1st Cir. 2012) ...................................................................................... 14

*Powers v. Eichen*,
    229 F.3d 1249 (9th Cir. 2000) ............................................................................... 8, 19

*Principe v. Ukropina* (*In re Pac. Enters. Sec. Litig.*),
    47 F.3d 373 (9th Cir. 1995) ........................................................................................ 6

*Redwen v. Sino Clean Energy, Inc.*,
    No. CV 11-3936 PA (SSx), 2013 U.S. Dist. LEXIS 100275
    (C.D. Cal. July 9, 2013) ...................................................................................... 14, 22

*Roeder v. Atl. Richfield Co.*,
    No. 3:11-CV-00105-RCJ-WGC, 2013 U.S. Dist. LEXIS 160624
    (D. Nev. Oct. 21, 2013) ............................................................................................ 12

*Rubke v. Capitol Bancorp, Ltd.*,
    551 F.3d 1156 (9th Cir. 2009) ................................................................................... 12

*Salamanca v. Sprint/United Mgmt. Co.*,
    No. 15-cv-05084-JSW, 2018 U.S. Dist. LEXIS 97696 (N.D. Cal. Mar. 9, 2018) ............. 19

*Schuler v. Meds. Co.*,
    No. CV 14 Civ. 1149 (CCC), 2016 WL 3457218
    (D.N.J. June 24, 2016) .............................................................................................. 11

*Steiner v. Am. Broad. Co.*,
    248 F. App'x 780 (9th Cir. 2007) ............................................................................... 20

v

*Vincent v. Hughes Air W., Inc.*,
  557 F.2d 759 (9th Cir. 1977) ............................................................................ 7

*Vincent v. Reser*,
  No. C 11-03572 CRB, 2013 U.S. Dist. LEXIS 22341 (N.D. Cal. Feb. 19, 2013) .............. 22

*Vizcaino v. Microsoft Corp.*,
  142 F. Supp. 2d 1299 (W.D. Wash. 2001) .......................................................... 17

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir.) ...................................................................... *passim*

*Xcel Energy, Inc.*,
  364 F. Supp. 2d 980 (D. Minn. 2005) ............................................................. 18

*Zucco Partners, L.L.C. v. Digimarc Corp.*,
  No. 06-35758, 2009 U.S. App. LEXIS 7025 (9th Cir. Feb. 10, 2009) ............................ 12

## STATUTES

15 U.S.C. § 11 ...................................................................................... 10

15 U.S.C. § 21.9 ..................................................................................... 20

15 U.S.C. § 78 ........................................................................................ 2

15 U.S.C. § 78u ................................................................................... 8, 22

## RULES

Fed. R. Civ. P. 9(b) ............................................................................... 15

Fed. R. Civ. P. 16 ................................................................................... 3

Fed. R. Civ. P. 26(f) ............................................................................. 3, 16

## OTHER

Charles Silver, *Due Process and the Lodestar Method: You Can't Get There From Here*,
  74 Tul. L. Rev. 1809, 1819-20 (2000) .............................................................. 8

NERA Economic Consulting, *Recent Trends in Securities Class Action Litigation:
  2020 Full Year Review* (January 25, 2021). ECF No. 167-4 at 17..........................9, 10, 18

T. Bulan and Laura E. Simmons, *Securities Class Action Settlements. 2020 Review and
  Analysis*, at 1 (Cornerstone Research 2021). ECF No. 167-5 at 1 ............................... 10

# NOTICE OF MOTION AND MOTION

**TO:     ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

**PLEASE TAKE NOTICE** that on August 20, 2021 at 9:00 a.m., or as soon thereafter as counsel may be heard, the Public Employees' Retirement System of Mississippi ("MPERS"), the Government Employees' Retirement System of the Virgin Islands ("VIGERS"), and the Public Employees Retirement Association of New Mexico ("NMPERA") (collectively "Lead Plaintiffs" or "Proposed Class Representatives"), will move before the Honorable Jeffrey S. White, Judge of the United States District Court, Northern District of California, Oakland Courthouse, Courtroom 5, 1301 Clay Street, Oakland, CA 94612, for an award of attorneys' fees to Lead Counsel, Barrack, Rodos & Bacine, of 22.5% — $6,750,000.00 — of the Settlement Fund and to pay or otherwise reimburse Lead Counsel's litigation expenses in the amount of $268,671.53, plus accrued interest thereon and pay Lead Plaintiffs MPERS and VIGERS costs of $11,825.00 and $1,806.02 respectively.

The motion is based on the attached Memorandum of Points and Authorities in Support of Lead Plaintiffs' Motion for an Award of Attorneys' Fees and Payment of Litigation Expenses, the Declaration of Stephen R. Basser in Support of (1) Final Approval of Settlement, (2) Approval of Plan of Allocation and (3) Award of Attorneys' Fees and Payment of Litigation Expenses ("Basser Decl. or Basser Declaration"), the declarations of each of the Lead Plaintiffs, the Declaration of Robert Cormio ("Cormio Decl. or Cormio Declaration"), the Declaration of Layn R. Phillips, retired United States District Court Judge ("Phillips Decl.") (ECF No. 167-2), the Stipulation and Settlement Agreement of April 1, 2021 (the "Settlement Agreement"), all prior pleadings and papers filed in this litigation (the "Action"), any such additional evidence or argument as may be presented at the Settlement Hearing, and any such additional evidence on argument as may be required by the Court.

## STATEMENT OF ISSUES TO BE DECIDED (CIVIL L.R. 7-4(A)(3))

1.      Whether the requested award of attorneys' fees in the amount of 22.5% of the Settlement Amount, plus accrued interest, is fair and reasonable.

2.      Whether the requested reimbursement or payment of litigation expenses from the Settlement Amount, plus accrued interest thereon, is fair and reasonable.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      PRELIMINARY STATEMENT

Lead Plaintiffs, on behalf of appointed Lead Counsel, Barrack, Rodos & Bacine ("Barrack" or "Lead Counsel"), respectfully submit this memorandum of law in support of an award of attorneys' fees and payment or reimbursement of litigation expenses. As set forth in the Settlement Agreement entered into between the settling parties on April 1, 2021, ECF No. 167-1, Defendants have agreed to pay $30,000,000.00 (Thirty Million Dollars) to secure the settlement and release of all claims alleged in this proposed class action (the "Settlement") arising from public statements during the proposed Class Period of May 6, 2016 through March 1, 2018, inclusive, and within WageWorks Inc.'s ("WageWorks" or the "Company") Registration Statement, and prospectus incorporated therein, issued with respect to its June 19, 2017 secondary public offering of company stock ("June 2017 offering"). This excellent recovery on behalf of putative Settlement Class members who purchased WageWorks common stock during the proposed Class Period, or on the June 2017 Offering, is the result of the unyielding efforts, skill, and effective advocacy of Lead Counsel.[1]

As detailed in the accompanying declarations and Lead Plaintiffs' Memorandum of Law in Support of their Motion for Final Approval of the Proposed Class Action Settlement, Approval of the Plan of Allocation and Certification of a Settlement Class (the "Final Approval Brief"), filed concurrently herewith, the multi-year efforts made by Lead Counsel in achieving this Settlement collectively include, *inter alia*:

---

[1]      All capitalized terms are used herein as defined in the Settlement Agreement dated April 1, 2021, ECF No 167-1, unless stated otherwise.

1

- Conducting an initial investigation, including an extensive review of publicly available information and filings with the Securities and Exchange Commission ("SEC"), and, with regard to the Government Employees' Retirement System of the Virgin Islands, drafting and filing an initial class action complaint asserting claims under the Securities Exchange Act of 1934 versus WageWorks and its former executive officers, Joseph L. Jackson and Colm M Callan, filed on March 9, 2018. ECF No 1;

- Moving for the appointment of Lead Plaintiffs, the Proposed Class Representatives, each of which is an institutional investor, and confirming their selection of Lead Counsel pursuant to 15 U.S.C. §§ 78 u-4(a)(1) and (a)(3) (B)(I), and related briefing;

- Conducting further detailed investigation of the events underlying the claims alleged in the Action, including a review of additional publicly available information, SEC filings by the Company, documents secured from the United States Office of Personnel Management ("OPM") through a Freedom of Information Act ("FOIA") request and a follow-on related legal action, interviews with dozens of potential witnesses including, without limitation, former WageWorks employees, and dozens of analyst reports that were issued by various securities analysts over a two-year period with respect to WageWorks;

- Researching the applicable law with respect to Lead Plaintiffs' claims and Defendants' anticipated defenses;

- Investigating and researching the actions of KPMG, LLP ("KPMG"), WageWorks's outside auditor, and engaging in related forensic accounting consultations and expert analysis;

- Formulating and drafting Lead Plaintiffs' Consolidated Class Action Complaint for Violation of the Federal Securities Laws ("Complaint"), filed on May 16, 2019, ECF No. 87, on behalf of all those who purchased the common stock of WageWorks on the open market from May 6, 2016 through March 1, 2018 inclusive (the "Class Period") and were damaged thereby (the "1934 Act Class"), and all those who purchased or otherwise

acquired WageWorks common stock issued in or traceable to WageWorks's June 2017 Offering pursuant to the Registration Statement and prospectus for the Offering, and were damaged thereby (The "1933 Act Class");

- Opposing and extensively briefing Defendants' motions to dismiss the Complaint, (ECF Nos. 108 and 110);

- Telephonically meeting and conferring with Defendants' various counsel, under Fed. R. Civ. P. Rule 26(f), preparing and submitting joint case management statements and submitting for the Court's approval a proposed Rule 16 Scheduling Order;

- Preparing and readying for service document requests served upon all Defendants;

- Negotiating and reaching agreement upon a comprehensive protective order regarding confidentiality in advance of securing documents from Defendants and third parties;

- Negotiating production protocols regarding Defendants' documents and securing, coding, reviewing and analyzing over 498,000 pages of documents identified and produced by the Defendants relating to the allegations in the Complaint;

- Preparing and readying for service written interrogatories to the Defendants;

- Preparing and serving document requests directed to non-party KPMG, engaging in meet and confer discussions with third party KPMG's counsel, securing over 82,000 pages of documents from said non-party, and painstakingly reviewing all of the most significant documents thereof, with assistance from forensic experts;

- Preparing and readying for service document requests to additional third parties, including the Company's former General Counsel;

- Telephonically meeting and conferring with WageWorks's defense counsel, counsel for defendants Jackson and Callan, counsel for the outside Director Defendants, and counsel for KPMG, with respect to discovery disputes associated with document requests, including fashioning and serving detailed meet and confer letters to the various

Ld Pltffs' Notice of Mot. & Mot. for Award of Attys' Fees & Payment of Litig. Expenses
Case No.: 4:18-CV-01523-JSW

Defendants' counsel and KPMG's counsel necessary to compel further document production and/or further responses by Defendants and/or KPMG;

- Analyzing, with consultation and assistance from expert forensic accounting consultants, and with the benefit of documents produced in the Action, complex accounting issues related to WageWorks's financial statements issued from 2016 through 2018, including those contained in its June 2017 Offering Documents;

- Analyzing and evaluating, with assistance from forensic accounting consultants, WageWorks's March 2019 Restatement and restated financial results;

- Conferring with forensic econometrics experts and securing expert analysis with respect to issues of loss causation and damages attributable to Defendants' allegedly false and misleading statements and material omissions, and with regard to addressing any issues arising under or otherwise impacted by *Halliburton Co. v. Erica P. John Fund, Inc.,* 573 U.S. 258, 134 S. Ct. 2398 (2014) ("*Halliburton*"), including with regard to "price impact" – amid a pending writ of *certiorari* before the United States Supreme Court, in *Goldman Sachs Group, Inc. v. Arkansas Teacher Retirement System,* Case No. 28-222, from the United States Court of Appeals for the Second Circuit, to address that issue, and securing expert damages analysis with respect to 1934 Act Class and 1933 Act Class claims;

- Participating in several extensive internal discussions among counsel for Lead Plaintiffs in order to assemble, marshal, comprehend and analyze the documentary and investigative evidence uncovered or developed in the Action, both independently and through formal discovery efforts, and synthesizing the evidence, with input from experts, for the purpose of settlement mediation, the anticipated and impending filing of a motion for class certification, and possible trial;

- Engaging in drafting motion papers seeking class certification that was due to be filed March 15, 2021 in the event that the second mediation of the Action conducted on February 10, 2021 failed to achieve a fair and reasonable settlement agreement;

4

- Conferring with defense counsel to discuss a possible resolution of the Action, participating in an initial extended mediation session at JAMS in Los Angeles on October 29, 2019, with a highly experienced and respected mediator, Robert Myers, Esquire, and a formal arms-length video settlement mediation extending from 8:00 A.M. Pacific into the late evening on February 10, 2021, and additional follow-on telephonic settlement discussions on February 11, 2021, with a highly experienced and respected mediator, the Honorable Layn R. Phillips, a retired United States District Court Judge in and for the District of Oklahoma, ("Judge Phillips");

- Continually reporting to and communicating with Lead Plaintiffs as they supervised the litigation and provided direction regarding an amicable resolution;

- Reviewing and preparing Lead Plaintiffs' responses to Defendants' written discovery requests, and assembling and producing relevant documents in their possession, custody or control; and

- Preparing the Settlement Agreement and related exhibits, and drafting papers seeking approval of the proposed Settlement, the Plan of Allocation and certification of the Settlement Class.

This Action was hard-fought and involved an intensive review of 498,000 pages of internal corporate documents, a significant portion of the 82,000 pages of documents produced by KPMG, several thousand pages of documents produced by OPM, e-mails and telephone call messages produced by the Individual Defendants, documents provided by Defendants to the Securities and Exchange Commission, and the analysis and synthesis of substantial evidentiary information, including financial accounting related documents. In the wake of the Court's June 1, 2020 denial of Defendants' motions to dismiss the Complaint ("June 1, 2020 Order") (ECF No. 130), Lead Counsel developed a discovery game plan that avoided unbridled or wasteful expenses, concentrating heavily on first developing the evidentiary record upon intensive review and analysis of the documents with the aid of experts, in a thoughtful, incisive manner. On February 10, 2021, after an exhaustive effort to develop the case, opposing dismissal, and

5

significant document intensive discovery, on the eve of further discovery being undertaken by both sides, and nearing the deadline for filing a motion for class certification, the parties reached an agreement-in-principle to settle the Action, aided by a mediation process that commenced initially in October 2019. Basser Decl. ¶ 5.

Lead Counsel has not received any compensation or reimbursement for their successful prosecution of this case, respecting which the Barrack firm has expended required over 7,000 hours of billable time. Lead Counsel has thus far paid or otherwise incurred expenses totaling $268,671.53. In accordance with the normal practice in common fund cases, Lead Counsel respectfully requests that it be awarded an attorneys' fee of 22.5% of the Settlement Fund, including any accrued interest, that it be paid and reimbursed out of the Settlement Fund for its litigation expenses in the amount of $268,671.53, plus accrued interest thereon, and that Lead Plaintiffs be awarded their expenses or costs totaling $13,631.02, plus interest thereon.

This 22.5% fee request is lower than the Ninth Circuit's benchmark of 25% for contingent fees in common fund cases and is unquestionably fair and reasonable. *See, e.g., In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) ("Twenty-five percent is the 'benchmark' that district courts should award in common fund cases"). In addition, the expenses incurred by Lead Counsel and Lead Plaintiffs in connection with the prosecution of the Action are both reasonable and necessary. As such, the requested attorneys' fees should be awarded in full, and the expenses or costs reimbursed or paid from the Settlement Fund.

## II.   FACTUAL BACKGROUND

To avoid repetition, Lead Plaintiffs respectfully refer the Court to and incorporate herein the Basser Declaration and their Final Approval Brief filed concurrently herewith, which set forth, among other things, a comprehensive review of the history of the Action, the discovery conducted by Lead Counsel, the Settlement discussions, and the risks faced by Lead Plaintiffs in this action. In sum, Lead Counsel vigorously prosecuted this case in the face of numerous challenges and secured an excellent recovery for Settlement Class members.

III.    **ARGUMENT**

A.    **Lead Counsel's Request for Attorneys' Fees of 22.5% of the Settlement Fund Should be Approved**

1.    **Lead Counsel is Entitled to an Award of Attorneys' Fees from the Common Fund**

The Supreme Court has recognized that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Vincent v. Reser*, No. C-11-03572 CRB, 2013 U.S. Dist. LEXIS 22341, at *13 (N.D. Cal. Feb. 19, 2013) (quoting *Boeing*). Indeed, the Ninth Circuit has expressly reasoned that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). The purpose of this rule, known as the "common fund doctrine," is to prevent unjust enrichment so that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig.* ("*WPPSS*"), 19 F.3d 1291, 1296 (9th Cir. 1994), *aff'd in part*, *Class Plaintiffs v. Jaffe & Schlesinger, P.A.* 19 F.3d 1306 (9th Cir. 1994). Here, Lead Counsel achieved a monetary benefit for the putative Settlement Class, creating a common fund of $30,000,000.00 as a result of their relentless hard work, skill, and effort.

2.    **A Reasonable Percentage of the Fund Recovered is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases**

In *Blum v. Stenson*, 465 U.S. 886 (1984), the Supreme Court recognized that, under the common fund doctrine, a reasonable fee may be based "on a percentage of the fund bestowed on the class. . . ." *Id.* at 900 n.16. The percentage-of-recovery method has become the prevailing method in the Ninth Circuit. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002), *aff'd*, 290 F.3d 1043 (9th Cir. 2002). Other circuits have similarly endorsed the percentage-of-recovery method.

The rationale for compensating counsel on a percentage basis in common fund cases is sound. Doing so more closely aligns the lawyers' interest in being paid a fair fee with the interest

of the class in achieving the maximum possible recovery in the shortest amount of time. Indeed, one of the nation's leading scholars in the field of class actions and attorneys' fees, Professor Charles Silver of the University of Texas School of Law, has concluded that the percentage-of-recovery method is the only method of fee awards that is consistent with class members' due process rights. Professor Silver notes:

> ***The consensus that the contingent percentage approach creates a closer harmony of interests between class counsel and absent plaintiffs than the lodestar method is strikingly broad.*** It includes leading academics, researchers at the RAND Institute for Civil Justice, and many judges, including those who contributed to the Manual for Complex Litigation, the Report of the Federal Courts Study Committee, and the report of the Third Circuit Task Force. Indeed, it is difficult to find anyone who contends otherwise. No one writing in the field today is defending the lodestar on the ground that it minimizes conflicts between class counsel and absent claimants.
>
> ***In view of this, it is as clear as it possibly can be that judges should not apply the lodestar method in common fund class actions.*** The Due Process Clause requires them to minimize conflicts between absent claimants and their representatives. The contingent percentage approach accomplishes this.

Charles Silver, *Due Process and the Lodestar Method: You Can't Get There From Here*, 74 Tul. L. Rev. 1809, 1819-20 (2000) (emphasis added and footnotes omitted) Basser Decl. ¶ 119, Ex. 15.[2] This is particularly appropriate in PSLRA cases where Congress recognized the propriety of the percentage method of fee awards. *See* 15 U.S.C. § 78u4(a)(6).

### 3.   Analysis Under the Percentage Method and the *Vizcaino* Factors Justifies a Fee Award of at Least 22.5% in This Case

Recognizing the utility of the percentage-of-recovery method, the Ninth Circuit has stated that "[*t*]*wenty-five percent is the 'benchmark' that district courts should award in common fund cases.*" *Pac. Enters.*, 47 F.3d at 379 (emphasis added); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) (reaffirming 25% benchmark); *Evans v. Linden Research, Inc.*, No. C-11-01078 (DMR), 2014 U.S. Dist. LEXIS 59432, at *22 (N.D. Cal. Apr. 29, 2014) ("25% of the recovery obtained is the benchmark in the Ninth Circuit.") (citing *Vizcaino*, 290 F.3d at 1047); *Dubeau v.*

---

[2]   All exhibits referenced herein are annexed to the Basser Declaration unless stated otherwise.

Ld Pltffs' Notice of Mot. & Mot. for Award of Attys' Fees & Payment of Litig. Expenses
Case No.: 4:18-CV-01523-JSW

1   *Sterling Sav. Bank*, No. 12-CV-01602-CL, 2013 U.S. Dist. LEXIS 123337, at *7 (D. Or. Aug. 28,

2   2013) (same); *Eddings v. Health Net, Inc.*, No. CV 10-1744-JST (RZX), 2013 U.S. Dist. LEXIS

3   84811, at *16 (C.D. Cal. June 13, 2013) (same); *In re Netflix Privacy Litig.*, No. 5:11-CV-00379

4   EJD, 2013 U.S. Dist. LEXIS 37286, at *27 (N.D. Cal. Mar. 18, 2013) (same). The guiding

5   principle in this Circuit is that a fee award be "reasonable under the circumstances." *WPPSS*, 19

6   F.3d at 1296 (citation and emphasis omitted). In employing the percentage method, courts may

7   perform a lodestar cross-check to confirm the reasonableness of the requested fee. *Vizcaino*, 290

8   F.3d at 1047 (affirming use of percentage method and applying the lodestar method as a cross-

9   check).

10   In view of the result obtained, the contingent fee risk, and other relevant factors, an award

11   of 22.5% of the Settlement Fund obtained for the Settlement Class, as requested, is entirely fair

12   and reasonable.[3] Importantly, the instant fee request satisfies five factors often used by courts in

13   the Ninth Circuit to evaluate the reasonableness of a requested fee, namely: (1) the result

14   achieved; (2) the risks inherent in the litigation; (3) the skill required and the quality of the work

15   of plaintiffs' counsel; (4) the customary fees for similar cases; and (5) the contingent nature of

16   the fee and financial burden carried by counsel. *Vizcaino*, 290 F.3d at 1048-50. The Ninth Circuit

17   has explained that these factors should not be used as a rigid checklist or weighed individually,

18   but, rather, should be evaluated in light of the totality of the circumstances. *Id.* Here, as set forth

19   below, all of the *Vizcaino* factors favor approving the requested fee.

20   **a.      The Result Achieved**

21   Courts have consistently recognized that the result achieved is an important factor to be

22   considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (noting the

23   "most critical factor is the degree of success obtained"); *Vizcaino,* 290 F.3d at 1048 n.7 (noting

24   "[e]xceptional results are a relevant circumstance" in awarding attorneys' fees). Lead Counsel

25   submit that the $30,000,000.00 proposed Settlement is an excellent result for the proposed

26   Settlement Class, both quantitatively and when considering the risk of a lesser (or no) recovery if

27   _____

28   [3]      Each Lead Plaintiff has also endorsed the fee request as being fair and reasonable. *See* Lead Plaintiffs' declarations attached as Exs. 1, 2, and 3 to the Basser Declaration.

1   the case proceeded through dispositive pre-trial motions, class certification, and trial. The amount

2   of the recovery — $30 million — compares favorably to other class action PSLRA settlements.

3   As recently reported by NERA Economic Consulting, the *median* annual settlement value in

4   securities fraud class actions between 2017 and 2020 ranged from $7 million in 2017 to $13

5   million in 2020. *See*, NERA Economic Consulting, *Recent Trends in Securities Class Action*

6   *Litigation: 2020 Full Year Review* (January 25, 2021). ECF No. 167-4 at 17. The median ratio of

7   settlement to investor losses in 2020 was 1.7%. *Id.* at 20. The median settlement value in securities

8   class action settlements in 2020 was reported by Cornerstone Research to be $10.1 million, *see*

9   T. Bulan and Laura E. Simmons, *Securities Class Action Settlements. 2020 Review and Analysis*,

10   at 1 (Cornerstone Research 2021). ECF No. 167-5 at 1.

11         Lead Plaintiffs' damages expert estimated that if liability were established with respect

12   to all of the remaining claims, including statistically significant price drops following the alleged

13   corrective disclosures, the maximum aggregate 1934 Act damages recoverable at trial based on

14   the non-disaggregated stock price declines on disclosures dates of March 1-2, 2018, and

15   September 12, 2018, would be approximately $123.7 million after considered assumptions

16   regarding the number of damaged shares. Lead Plaintiffs' damages expert estimates that Section

17   11 damages for the 1933 Act claims are approximately $21.2 million after considered

18   assumptions regarding the number of damaged shares and before addressing any potential

19   offsetting valuation defenses. This does not include a statistically insignificant stock price drop

20   on the April 5, 2018 corrective disclosure, nor credit the statistically significant stock price

21   increase of 4.69% when the March 18, 2019 Restatement was issued.[4]

22         As set forth in the Settlement Agreement, and as reasonably allocated per the Plan of

23   Allocation, the average recovery per allegedly damaged share of publicly traded common stock

24   of WageWorks with regard to the 1934 Act claims would be $1.92 before deduction of Court-

25   approved fees and expenses, such as attorneys' fees and expenses, and approximately $1.47 after

26   ───────────────

[4]       Had the case proceeded, the 1934 Act Defendants were expected to strenuously argue for
27   the exclusion of all non-fraud related declines or full disaggregation of confounding non-fraud
   information on the grounds Lead Plaintiff could not sufficiently link each to the 1934 Act
28   Defendants' alleged fraud.

deduction of the attorneys' fees and expenses. The average recovery respecting the 1933 Act claim per allegedly damaged share purchased directly in the Offering at the Offering price of $69.25, is estimated to be $2.56, before deduction of attorneys' fees and expenses and $1.96 after such reductions. As such, this motion should be granted.

When considering settlements in light of potential damages, the Ninth Circuit Court of Appeals has recognized that "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does ***not per se*** render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), *as amended* (June 19, 2000); *In re Michael Milken & Assocs. Sec. Litig.,* 150 F.R.D. 57, 64-65 (S.D.N.Y. 1993); *Martin v. AmeriPride Servs.*, No. 08-cv-440-MMA (JMA), 2011 U.S. Dist. LEXIS 61796, *19 (S.D. Cal. June 9, 2011).

Significantly, the Settlement recovers more than 20% of estimated damages for the Settlement Class. Since the passage of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), many courts have approved settlements that recovered far smaller percentages of estimated damages. *See, e.g.*, *Schuler v. Medicines Co.,* No. CV 14 Civ. 1149 (CCC), 2016 WL 3457218, at *8 (D.N.J. June 24, 2016) (approving $4,250,000 settlement reflecting approximately 4.0% of estimated recoverable damages and noting percentage "falls squarely within the range of previous settlement approvals"); *In re Par Pharm. Sec. Litig.,* No. CIV.A. 06-3226-ES, 2013 WL 3930091, at *2 (D.N.J. July 29, 2013) (approving settlement of $8.1 million, amounting to approximately 7% of class-wide damages); *Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*, No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742, at *2-3 (D. Nev. Oct. 19, 2012) (approving $12.5 million settlement recovering about 3.5% of the maximum damages that plaintiffs believed could be recovered at trial and noting that the amount was within the median recovery in securities class actions settled in the last few years); *McPhail v. First Command Fin. Planning, Inc.*, No. 05-cv-179-IEG-JMA, 2009 WL 839841, at *5 (S.D. Cal. Mar. 30, 2009) (finding a $12 million settlement recovering 7% of estimated damages was fair and adequate); *In re Omnivision Techs., Inc.*, 559

F. Supp. 2d at 1042 (N.D. Cal. 2008) ($13.75 million settlement yielding 6% of potential damages after deducting fees and costs was "higher than the median percentage of investor losses recovered in recent shareholder class action settlements"). *See also In re Cendant Corp., Derivative Action Litig*., 232 F. Supp. 2d 327, 336 (D. N.J. 2002) (approving a settlement that "represents less than two percent" of estimated damages where "the Settling Defendants appear to have significant defenses that increase the risks of litigation"); *In re LDK Solar Secs. Litig.*, No. C-07-5182-WHA, 2010 U.S. Dist. LEXIS 20797, *5 (N.D. Cal. Feb. 17, 2010) (approving settlement where settlement award was approximately 5% of plaintiff's estimated damages). The Settlement thus provides a significant percentage of recovery for the Settlement Class.

### b.   The Risks of Litigation

The risk of litigation is also an important factor in determining a fair fee award. *Vizcaino*, 290 F.3d at 1048 (noting "[r]isk is a relevant circumstance" in awarding attorneys' fees); *Pac. Enters.*, 47 F.3d at 379 (finding attorneys' fees justified "because of the complexity of the issues and the risks"). Here:

> [T]he parties could reasonably conclude that there are serious disputed questions of law and fact that could significantly impact the further litigation and trial of this case. These questions would have been the subject of extensive discovery and are hotly contested. Many of these issues are highly technical and will involve a battle of the experts. . . . Trial would likely have been an expensive, complex and time-consuming process that promised to feature a battle of various experts.

*Roeder v. Atl. Richfield Co.*, No. 3:11-CV-00105-RCJ-WGC, 2013 U.S. Dist. LEXIS 160624, at *23-6 (D. Nev. Oct. 21, 2013); *see also ATLAS v. Accredited Home Lenders Holding Co.*, No. 07-CV-00488-H (CAB), 2009 U.S. Dist. LEXIS 103035, at *12 (S.D. Cal. Nov. 4, 2009) (approving settlement where "litigating the complex securities fraud class action to completion would have resulted in substantial delay and expense").

As set forth further in Section IV of the Basser Declaration, there were substantial risks and uncertainties in the Action requiring the utmost tenacity, skill, and focus of Lead Counsel to bring this matter to a favorable resolution. The case was fraught with issues regarding the *prima facia* elements of materiality, *scienter*, loss causation, and damages, and the 1933 Act defenses of due diligence and negative causation. Indeed, while the Court denied Defendants' motions to

1    dismiss, its June 1, 2021 Order could not and did not address factually intensive issues and

2    defenses, nor could it unilaterally interpret the meaning, intent, and expectations of the parties to

3    the March 2016 contract between OPM and WageWorks that was at the heart of Lead Plaintiffs'

4    allegations and the Company's dispute with OPM that was a component of its March 2019

5    Restatement.[5] Indeed, WageWorks ultimately prevailed in separate litigation with OPM with

6    regard to that contract dispute, which separate litigation was decided by a three judge Panel of the

7    Civilian Contract Board of Appeals in favor of WageWorks, in their order rendered on December

8    18, 2020, that was publicly disclosed on January 13, 2021, Basser Decl. ¶ 41. This decision was

9    potentially instructive as to what a jury might find, and served as a form of mock jury exercise,

10   even though it is not likely admissible. If the fact finder in the instant Action, or the Court, were

11   to have found that WageWorks's interpretation of its contract with OPM was indeed correct, and

12   that it recognized revenue it actually earned, or was entitled to, such in finding could have

13   translated into far less of a recovery at trial, or possibly even an adverse jury verdict against

14   plaintiffs.

15        Although the Complaint survived Defendants' motion to dismiss, Lead Plaintiffs faced

16   substantial risks in ultimately proving that WageWorks's financial statements and omissions were

17   materially misleading at the time that they were made, or that the 1934 Act Defendants lacked a

18   reasonable basis for believing that OPM was required to pay WageWorks the disputed amount

19   and would do so. Lead Plaintiffs faced a significant risk in proving that the 1934 Act Defendants'

20   alleged false financial statements were made with the requisite *scienter*, as required by the federal

21   securities laws, among other risks. Final Approval Brief, Section IV and Basser Decl. ¶¶ 39-51.

22   Defendants have emphatically denied that Lead Plaintiffs could prove that there was an

23   intentional or severely reckless violation of the Exchange Act, or that their financial statements

24

25   [5]      Federal appellate reports are filled with opinions affirming dismissals with prejudice in
     securities cases. *See, e.g., Zucco Partners, LLC v. Digimarc Corp.,* No. 06-35758, 2009 U.S. App.
26   LEXIS 7025 (9th Cir. Feb. 10, 2009); *Rubke v. Capitol Bancorp, Ltd.,* 551 F.3d 1156 (9th Cir.
     2009); *Metzler Inv. GMBH v. Corinthian Colleges, Inc.,* 540 F.3d 1049 (9th Cir. 2008)*; In re
27   Aspeon, Inc. Secs. Litig.,* 168 F. App'x 836 (9th Cir. 2006); *In re Apple Computer, Inc.,* 127 F.
     App'x 296 (9th Cir. 2005)*; DeMarco v.DepoTech Corp.,* 32 F. App'x 260 (9th Cir. 2002); *Colin
28   v. Onyx Acceptance Corp.,* 31 F. App'x 359 (9th Cir. 2002).

Ld Pltffs' Notice of Mot. & Mot. for Award of Attys' Fees & Payment of Litig. Expenses
Case No.: 4:18-CV-01523-JSW

1   were materially misleading, or deceptive, or made without any reasonable basis to believe that

2   they were true.

3       In addition, the Settling Parties have asserted significantly different positions regarding

4   loss causation and damages. *See* Final Approval Brief at 12-13; Basser Decl. ¶¶ 44-47. Of course,

5   loss causation issues would be vigorously contested at summary judgment and trial which would

6   no doubt involve a battle of the experts, the outcome of which was quite uncertain. *See Nguyen*

7   *v. Radient Pharms. Corp.*, No. SACV 11-00406 DOC (MLGx), 2014 U.S. Dist. LEXIS 63312, at

8   *6 (C.D. Cal. May 6, 2014) (approving settlement and noting that "[p]roving and calculating

9   damages required a complex analysis, requiring the jury to parse divergent positions of expert

10  witnesses in a complex area of the law" with "[t]he outcome of that analysis [being] inherently

11  difficult to predict").

12      It is one thing to plead a case, but quite another to present sufficient evidence on each

13  element, especially complex and ever-changing elements like loss causation. The many appellate

14  decisions affirming the grant of such motions show that losing at summary judgment or on a

15  directed verdict is not at all unusual. *See, e.g., In re Oracle Corp. Sec. Litig.,* 627 F.3d 376 (9th

16  Cir. 2010); *Mortensen v. Snavely,* 145 F. App'x 218 (9th Cir. 2005); *In re Digi Int'l., Inc. Sec.*

17  *Litig.*, 14 F. App'x 714 (8th Cir. 2001); *Geffon v. Micrion Corp.*, 249 F.3d 29 (1st Cir. 2001);

18  *Greebel v. FTP Software, Inc.*, 194 F.3d 185 (1st Cir. 1999). *Geffon v. Micrion Corp*., 249 F.3d

19  29 (1st Cir. 2001) *Kinder v. Acceptance Ins. Cos*. 423 F.3d 899 (8th Cir. 2005); *In re Smith &*

20  *Wesson Holding Corp. Sec. Litig*., 669 F.3d 68(1st Cir. 2012); *In re Oracle Corp. Sec Litig*. 627

21  F.3d 376 (9th Cir. 2010).

22      Accordingly, Lead Plaintiffs faced the possibility of the Court granting Defendants'

23  anticipated motion for summary judgment and/or summary adjudication of issues, in whole or in

24  part, and, regardless of who would ultimately be successful at trial, there is no doubt that both

25  sides would have had to present complex and nuanced information to a jury with no certainty as

26  to the outcome. *See Omnivision*, 559 F. Supp. 2d at 1047 (noting that the risks of litigation,

27

28

Ld Pltffs' Notice of Mot. & Mot. for Award of Attys' Fees & Payment of Litig. Expenses
Case No.: 4:18-CV-01523-JSW

including the ability to prove loss causation and the risk that defendants might prevail on damages, support the requested fee).[6]

If not settled, the proposed Settlement Class faced the substantial risk of years of litigation and potential appeal[7] with no guarantee of a greater recovery. Given those challenges and uncertainties, Lead Counsel achieved a significant result for the Settlement Class in the face of very real risks. Under these circumstances, the requested fee is entirely reasonable and appropriate.

### c.     The Skill Required and the Quality of the Work

Courts have recognized that the "prosecution and management of a complex national class action requires unique legal skills and abilities." *In re Heritage Bond Litig.*, No. 02-ML-1475 DT (RCX), 2005 U.S. Dist. LEXIS 13555, at *64 (C.D. Cal. June 10, 2005); *see also Vizcaino,* 290 F.3d at 1048. Courts also have acknowledged the "notorious complexity" of securities class action litigation. *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. 02 Civ. 5575 (SWK), 2006 U.S. Dist. LEXIS 17588, at *31 (S.D.N.Y. Apr. 6, 2006).

Lead Counsel conducted its initial investigation without the benefit of Company specific internal documents, and developed sufficient detail to ultimately meet the heightened pleading standard of the PSLRA, and the specificity of pleading required by Rule 9(b), to overcome Defendants' vigorous motions to dismiss the Complaint. The investigation associated with Lead Plaintiffs' Complaint included, *inter alia*, reviewing and analyzing an extensive amount of publicly available information, data, and filings with the SEC, reviewing numerous securities

---

[6]     While courts have always recognized that securities class actions carry significant risks, post-PSLRA rulings make it clear that the risk of no recovery (and hence no fee) has increased exponentially. *See In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) (noting that "securities actions have become more difficult from a plaintiffs perspective in the wake of the PSLRA"); *see also Redwen v. Sino Clean Energy, Inc.*, No. CV 11-3936 PA (SSx), 2013 U.S. Dist. LEXIS 100275, at *19-20 (C.D. Cal. July 9, 2013) ("Courts experienced with securities fraud litigation, 'routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear.'" (quoting *In re Flag Telecom. Holdings*, No. 02-CV-3400 (CM) (PED), 2010 U.S. Dist. LEXIS 119702, at *48 (S.D.N.Y. Nov. 8, 2010))).

[7]     Since the passage of the PSLRA in 1995, only a handful of securities class actions have gone to trial and fewer still have resulted in a verdict for the class. Even those actions resulting in a plaintiff's verdict present the continued risk of ultimate loss or substantial delay following such verdict. Basser Decl. ¶¶ 86-87.

Ld Pltffs' Notice of Mot. & Mot. for Award of Attys' Fees & Payment of Litig. Expenses
Case No.: 4:18-CV-01523-JSW

1  analyst reports, and interviewing numerous former Company employees, consulting with forensic

2  econometric experts, investigating the actions of KPMG, and securing documents from OPM

3  after initiating litigation in federal court in the District of Columbia. Basser Decl. ¶ 14.

4  Subsequent to the Court's denial of Defendants' motion to dismiss, Lead Counsel prepared and

5  secured discovery and extensively reviewed more than 498,000 pages of documents produced by

6  the Defendants, and all the significant documents of the over 82,000 pages produced by KPMG,

7  as well as all of several thousand pages of documents produced by OPM. Meanwhile, Lead

8  Counsel spent significant time conferring with forensic experts in accounting and econometric

9  analysis, and developing additional discovery for service upon third parties and Defendants.

10 Basser Decl. ¶ 6. Lead Plaintiffs' Counsel worked extensively with a variety of experts in order

11 to analyze the strengths and weaknesses of the claims asserted in the Action and engaged in

12 extensive team assessments and synthesizing of the facts and documents developed through their

13 formal and informal efforts, while also deploying great negotiating skill and expertise during

14 extensive mediations in order to achieve an excellent result. *Id.* at ¶¶ 25-38.

15     The Basser Declaration includes a description of the background and experience of lead

16 Counsel's firm and its WageWorks litigation team. *See* Basser Decl. ¶¶ 104-105, Ex. 6, the Firm

17 Biography of Barrack, Rodos & Bacine (the "Barrack Firm Biography"). As that submission

18 demonstrates, Lead Counsel possess significant experience in the highly specialized field of

19 securities class action litigation, including successfully securing one of the largest federal

20 securities class action jury verdicts since passage of the PSLRA by the very same team of

21 attorneys working on the instant matter. Basser Decl. ¶ 105.

22     The quality of opposing counsel is also important in evaluating the quality of the work

23 done by Lead Counsel. *See, e.g.*, *Nguyen*, 2014 U.S. Dist. LEXIS 63312, at *9 (approving

24 settlement and noting that "Counsel on both sides of this issue are experienced litigators"). Lead

25 Counsel was opposed in the Action by Wilson Sonsini Goodrich & Rosati, Skadden Arps Slate

26 Meagher & Flom, O'Melveny & Myers, Fenwick & West, and Kane & Kimball, all formidable

27

28

firms possessing an excellent reputation for vigorous and effective advocacy on behalf of their clients' interests. Basser Decl. ¶ 106.

At every stage of the proceedings, Lead Counsel had to perform with a high level of skill, efficiency, and professionalism. In the face of strong opposition from several highly respected defense firms, and following a thorough investigation and extensive document discovery, Lead Counsel assembled what we believe was a meritorious case, albeit with significant obstacles and risks, that may have survived summary judgment, or succeeded at trial, albeit likely followed by prolonged appeals. Lead Plaintiffs' Counsel evaluated the merits and risks presented, negotiated a very favorable amount for the proposed Settlement Class, and successfully resolved the litigation. Such quality, efficiency, and dedication should be rewarded.

### d.    The Difficulty of the Questions Presented

Courts have recognized that the difficulty and complexity of the issues in a class action case are significant factors to be considered in making a fee award. *See, e.g., Vizcaino v. Microsoft Corp.*, 142 F. Supp. 2d 1299, 1306 (W.D. Wash. 2001); *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). Courts properly recognized that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA." *Ikon*, 194 F.R.D. at 194; *see also Goldstein v. MCI WorldCom*, 340 F.3d 238 (5th Cir. 2003) (affirming dismissal with prejudice of securities fraud class action complaint against Bernard Ebbers and WorldCom arising out of a massive securities fraud that resulted in a $685 million write-off of accounts receivable, for which Ebbers was later convicted). This Action was no exception and was confronted by a host of thorny legal and evidentiary issues, as more fully disclosed in the attached Basser Declaration, including, among other things, issues respecting loss causation, contract interpretation, materiality and damages. Basser Decl. ¶¶ 39-51.

### e.    The Contingent Nature of the Fee and the Financial Burden Carried by Lead Counsel

It has long been recognized that attorneys are entitled to a larger fee when their compensation is contingent in nature. *See Vizcaino*, 290 F.3d at 1048-50; *see also Omnivision*,

17

559 F. Supp. 2d at 1047 ("The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee."); *Eddings*, 2013 U.S. Dist. LEXIS 84811 at *20 (awarding fee of 25% of the common fund and noting that "[c]lass counsel took this case on a contingent basis, fronting the expenses, and they have been litigating it for more than three years").

Indeed, there have been many class actions in which plaintiffs' counsel took on the risk of pursuing claims on a contingency basis, expended thousands of hours and dollars, yet received no remuneration whatsoever despite their diligence and expertise. *See, e.g.*, *In re Oracle Corp. Sec. Litig.*, 2009 U.S. Dist. LEXIS 50995 (N.D. Cal. June 16, 2009) (granting summary judgment to defendants after eight years of litigation, and after plaintiff's counsel incurred over $6 million in expenses and worked over 100,000 hours, representing a lodestar of approximately $48 million). Lead Counsel are aware of many other hard-fought lawsuits where, because of the discovery of facts unknown when the case was commenced, changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, the litigation produced no fee for counsel. *See, e.g.*, Basser Decl. ¶¶ 83-86. As the court in *In re Xcel Energy, Inc. Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980 (D. Minn. 2005) recognized, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *Id.* at 994. Even plaintiffs who get past summary judgment and succeed at trial may find a judgment in their favor overturned on appeal or on a post-trial motion. See Basser Decl. ¶ 87.

Moreover, securities class actions present unique risks, starting with the PSLRA's stay of discovery until resolution of the defendants' motion to dismiss. Many securities class actions are dismissed before ever reaching the merits. NERA reports that between 2015 and 2017, motions to dismiss were granted in 44%-49% of securities class actions. ECF No. 167-4 at 13.

18

Here, because Lead Counsel's fee was entirely contingent, the only certainty was that there would be no fee absent a successful result and that such result would only be realized after significant amounts of time, effort, and expense had been expended. Unlike counsel for Defendants, who were paid substantial hourly rates and reimbursed for their out-of-pocket expenses on a current basis, Lead Counsel received no compensation for their efforts during the course of the Action, which commenced in 2018. Indeed, absent this Settlement, there was a real risk that, at the end of the day, Settlement Class members, as well as their counsel, might obtain no recovery should the fact-finder ultimately embrace Defendants factual contentions and/or causation arguments. Lead Counsel have risked non-payment of $265,671.53 in expenses. And Lead Counsel risked non-payment for the time ultimately expended working on this matter (over 7,000 hours), knowing that if their efforts were not successful, no fee would be paid.

## 2. A 22.5% Fee Award is Below Both the Ninth Circuit Benchmark and the Average Fee Awarded in Similar Complex Class Actions

In requesting a 22.5% fee of the Settlement Fund, Lead Counsel seek less than the benchmark that has been established by the Ninth Circuit. *Powers*, 229 F.3d at 1256 ("We have also established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach"). Hence, the requested fee is quite reasonable. The fee requested here is less than (and supported by) fee awards in other securities class actions that are above the Ninth Circuit benchmark. *See* Basser Decl. ¶ 92. As one illustration among many, in *Omnivision*, plaintiff's attorneys, who alleged accounting fraud and false financial statements via a complaint that was fully sustained, were awarded 28% of the gross settlement fund of $13,750,000. The issues confronting Lead Counsel in the instant Action were risky and complex, to a degree comparable to the risks and complexity of *Omnivision*, which settled before a class was certified, and without advancing to summary judgment. *Id. See Salamanca v. Sprint/United Mgmt. Co.*, No. 15-cv-05084-JSW, 2018 U.S. Dist. LEXIS 97696, at *9 (N.D. Cal. Mar. 9, 2018) (where this court awarded a fee of 23%, reflecting a multiplier of 1.5

1   in case that settled less than one year after being filed). In light of all the above, certainly a request

2   of 22.5% of the Settlement Fund is quite reasonable.

### 3.     Lodestar Cross-Check

4            Indeed, while an analysis of the lodestar is not required for an award of attorneys' fees in

5   the Ninth Circuit, a cross-check assessing Lead Counsel's lodestar also demonstrates its

6   reasonableness. *See Vizcaino*, 290 F.3d at 1048-50. *See also In re Coordinated Pretrial*

7   *Proceedings in Petroleum Prods. Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997) (comparing

8   the lodestar fee to the percentage fee is an appropriate measure of a percentage fee's

9   reasonableness). Lead Counsel's lodestar is $4,328,917.50 through June 30, 2021, see Basser

10  Declaration Exhibit 4.[8] This equates to a very modest and reasonable lodestar multiplier of 1.56,

11  assuming an award of 22.5% of the Settlement Fund, which calculates to $6,750,000.00.

12           Additional work will also be required on an ongoing basis, including, *inter alia*: preparing

13  for and participating in the final approval hearing; responding to any additional objections;

14  supervising the claims administration process being conducted by Kroll, the Claims

15  Administrator; moving to distribute the Net Settlement Fund in accordance with the

16  recommendation of Kroll and supervising the distribution of the Net Settlement Fund to

17  Settlement Class Members who have submitted valid proofs of claim. However, Lead Counsel

18  will not seek payment for this work.

19  ───────────────

[8]      Lead Counsel's "lodestar" alone represents over 7,000 hours of work at current billing
20  rates ranging from $650 to $820 per hour for partners, and $390 to $590 per hour for other
attorneys, which compare favorably to peer defense-side law firms litigating matters of similar
21  magnitude. Sample defense firm billing rates exceeded these rates in many cases. *See* Basser Decl.
¶ 99 and Ex. 4. Similarly, a National Law Journal's survey of law firm billing rates years ago, in
22  2014, showed that average partner billing rates among the Nation's largest defense firms at that
time ranged from $930 to $1,055 per hour and average associate billing rates ranged from $590
23  to $670 per hour.  ¶ 102 and Ex. 5. That was years ago, and rates have certainly not declined.
Hourly rates higher than the Barrack Firms' rates have been previously approved. *See, e.g.,*
24  *Negrete v. Allianz Life Ins. Co. of N. Am.*, No. CV-05-6838-CAS(MANX), 2015 WL 12592726,
*13-*14 (C.D. Cal. Mar. 17, 2015) (approving a rate for lead counsel as high as $905 (Negrete
25  Dkt. 1260)); *Indep. Living Ctr. Of S. Cal. V. Kent*, No. 2:08-CV-03315-CAS (MANx), 2020 WL
418947, at *4 (C.D. Cal. Jan. 24, 2020) (J. Snyder) (approving rate of up to $1,000); *In re Am.*
26  *Equity Annuity Practices & Sales Litig.*, No. CV-05-6735-CAS(MANX), 2014 WL 12586112
(C.D. Cal. Jan 29, 2014) (approving rates of up to $850 per hour); *In re Animation Workers*
27  *Antitrust Litig.*, No. 14-CV-4062-LHK, 2016 WL 6663005, at *6 (N.D. Cal. Nov. 11, 2016)
(approving rates of between $845 and $1,200 per hour for three senior attorneys, and rates of
28  paralegals at $290 or lower). Basser Decl. ¶ 102.

Ld Pltffs' Notice of Mot. & Mot. for Award of Attys' Fees & Payment of Litig. Expenses
Case No.: 4:18-CV-01523-JSW

The Ninth Circuit has recognized that attorneys in common fund cases are frequently awarded a multiple of their lodestar, rewarding them "for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases." *Vizcaino,* 290 F.3d at 1051 (citation omitted). For example, the district court in *Vizcaino* approved a fee that reflected a multiple of 3.65 times counsel's lodestar. *Id.* The Ninth Circuit affirmed, holding that the district court correctly considered the range of multiples applied in common fund cases, and noting that a range of lodestar multiples from 1.0 to 4.0 are frequently awarded. *Id.*; *see also Steiner v. Am. Broad. Co.,* 248 F. App'x. 780, 783 (9th Cir. 2007) ("this multiplier [of 6.85] falls well within the range of multipliers that courts have allowed").[9] Multipliers well in excess of that derived here have been accepted by other courts within this district and within this Circuit. *See, e.g., Craft v. City of San Bernardino*, 624 F. Supp. 2d 1113, 1123 (C.D. Cal. 2008) (approving a multiplier of 5.2, and noting that "plaintiffs' counsel's time in this case is likely as low as it is due to plaintiffs' counsel exceptional experience in litigation of this type. Without such expertise, it is likely that the hours would have been significantly higher to achieve the same result."); *McGrath v. Wyndham Resort Dev. Corp.* No. 15cv1631 JM (KSC), 2018 WL 637858, at *10 n.7 (S.D. Cal. Jan. 30, 2018) (approving multiplier of 4.8); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2013 WL 1365900, at *13 (N.D. Cal. Apr. 3, 2013) (approving multiplier of up to 5.22); *Gutierrez v. Wells Fargo Bank N.A.*, No. C 07-05923 WHA, 2015 WL 2438274, at *7 (N.D. Cal. May 21, 2015) ("this order allows a multiplier of 5.5 mainly on account of the fine results achieved on behalf of the class, the risk of non-payment they accepted, the superior quality of their efforts, and the delay in payment"). *See also Johnson v. Fujitsu Tech. & Bus. Of Am., Inc.,* No. 16-cv-03698-NC, 2018 WL 2183253, at *7 (N.D. Cal. May 11, 2018)

---

[9]    Furthermore, "[i]t is an established practice in the private legal market to reward attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases. *See* Richard Posner, *Economic Analysis of Law* § 21.9, at 534-35 (3d ed. 1986). "Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose." *WPPSS*, 19 F.3d at 1299. *Mego Fin.,* 213 F.3d at 459; *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977).

1    (approving a lodestar multiplier greater than 4 and explaining that, "[t]hough on the high end, this

2    multiplier falls within the range of reasonableness … given the relatively early settlement"); *In*

3    *re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, MDL No. 2673

4    CRB (JSC), 2017 WL 1352859, at *6 (N.D. Cal. Apr. 12, 2017) ("A positive multiplier rewards

5    [] Class Counsel for its efforts in achieving a swift settlement, while recognizing that counsel's

6    efficiency actually reduced its lodestar."); *Gutierrez*, 2015 WL 2438274, at *7 (approving

7    multiplier as high as 5.5). Here, Lead Counsel's request for a 22.5% fee from the Settlement fund

8    will result in a multiplier of only 1.56. Surely, this invites no reasonable objection, and is

9    unquestionably fair and reasonable.

10                    **4.      Reaction of the Settlement Class**

11            The Court-approved post and Notice was sent to more than 27,000 potential Settlement

12    Class Members and the Court-approved Summary Notice was published in *Investor's Business*

13    *Daily* and transmitted over *PR Newswire*. *See* Cormio Declaration, ¶¶ 7-8, 13. Although the

14    objection deadline is not until July 30, 2021, to date no objections to the requested amount of

15    attorneys' fees and expenses have been received. Courts have noted that a low level of objections

16    is a "rare phenomenon," *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005). And

17    this Circuit has held that a small number of objections will not stand in the way of approval of a

18    reasonable fee. *See  Mego Fin.* , 213 F.3d at 459 ; *Marshall* , 550 F.2d at 1178 (9th Cir. 1977).[10]

19            **B.      Lead Counsel's Expenses Are Reasonable and Were Necessarily Incurred to
                        Achieve the Benefit Obtained**
20
21            Barrack, Rodos & Bacine has incurred expenses in an aggregate amount of $268,671.53

22    in prosecuting the Action. These expenses are outlined in the Basser Declaration as Exhibits 7-

23    13, submitted to the Court concurrently herewith. In addition, two of the three Lead Plaintiffs

24    incurred costs for which they are entitled reimbursement under and pursuant to the PSLRA. 15

25    U.S.C.S. § 78u-4(a)(6). See Basser Decl., Exs. 1, 2, and 3, which are the separate declarations of

26

27    _____
      [10]      Lead Plaintiffs' Counsel will address objections to the request for attorneys' fees and
28    expenses, if any, in their reply papers, which will be filed with the Court by August 13, 2021.

                                                    22
      Ld Pltffs' Notice of Mot. & Mot. for Award of Attys' Fees & Payment of Litig. Expenses
      Case No.: 4:18-CV-01523-JSW

1   the three Lead Plaintiffs supporting the settlement, and stating reimbursable costs as to MPERS

2   and VIGERS, totaling $13,631.02.

3       As the *Vincent* court noted, "[a]ttorneys who create a common fund are entitled to the

4   reimbursement of expenses they advanced for the benefit of the class." *Vincent,* 2013 U.S. Dist.

5   LEXIS 22341, at *14. In assessing whether counsel's expenses are compensable in a common

6   fund case, courts look to whether the particular costs are of the type typically billed by attorneys

7   to paying clients in the marketplace. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris

8   may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would

9   normally be charged to a fee paying client.'") (citation omitted).

10      The expenses sought by Lead Counsel are of the type that are routinely charged to hourly

11  paying clients and, therefore, should be reimbursed out of the common fund. *See Redwen*, 2013

12  U.S. Dist. LEXIS 100275, at *32 (reimbursing "expenses for mediation fees, copying, telephone

13  calls, expert expenses, research costs, travel, postage, messengers, and filing fees."); *Barbosa v.*

14  *Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 454 (E.D. Cal. 2013) (noting that "travel,

15  mediation fees, photocopying, [a] private investigator to locate missing Class Members, and

16  delivery and mail charges" are "routinely reimbursed.")

17      One main expense, totaling approximately $148,674.23, relates to crucial and

18  indispensable work performed by Lead Counsel's experts and its private investigators, as outlined

19  in the Basser Decl. ¶ 112 and Ex. 12. Beyond the need to retain competent private investigators

20  to find and interview potential witnesses, the facts and complexity of this case alleging materially

21  false and deceptive accounting required Lead Plaintiffs to utilize experts in the fields of

22  accounting and econometrics, including loss causation, price impact, and damages.[11] Basser Decl.

23  ¶¶ 37-38. Lead Plaintiffs' econometric experts retained on the issues of price impact, damages

24  and loss causation performed extensive analyses in connection with and assisting in the mediation

25  of the case addressing Defendants contentions and counter – expert's analysis attempting to defeat

26

27  _____

[11]    With respect to expert expenses, some courts have also considered whether the expert's
28  work was "'crucial or indispensable' to the litigation at hand." *In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166, 1178 (S.D. Cal. 2007) (citation omitted).

1   loss causation and/or diminish recoverable damages, and with respect to the establishment of a

2   fair and reasonable Plan of Allocation. *Id.* ¶¶ 37-38, 75.

3        Lead Counsel also outlaid reasonable costs for travel (Basser Decl. Ex. 8), document

4   storage and retrieval (*id.* Ex. 11), and mediators' fees (*id*. Ex. 13). Such expenses are

5   reimbursable. *See In re Toys "R" Us FACTA Litig.*, 295 F.R.D. 438, 469 (C.D. Cal. 2014)

6   ("Expenses such as reimbursement for travel . . . are typically recoverable) (citation and internal

7   quotation marks omitted). Courts also routinely approve reimbursements for the expenses

8   associated with mediation. *See, e.g.*, *Franco v. Ruiz Food Prods., Inc.*, No. 1:10-cv-02354-SKO,

9   2012 U.S. Dist. LEXIS 169057, at *60 (E.D. Cal. Nov. 27, 2012) (noting that mediation fees are

10  among the "types of fees" that are "routinely reimbursed").

11       The expenses here also include the costs of computerized research. These are the charges

12  for computerized factual and legal research services such as LexisNexis and Westlaw. It is

13  standard practice for attorneys to use LexisNexis and Westlaw to assist them in researching legal

14  and factual issues and reimbursement is proper. *In re Immune Response*, 497 F. Supp. 2d at 1178.

15  In approving expenses for computerized research, the court in *Gottlieb v. Wiles*, 150 F.R.D. 174,

16  186 (D. Colo. 1993), *rev'd and remanded on other grounds sub nom, Gottlieb v. Barry*, 43 F.3d

17  474, 484 (10th Cir. 1994), underscored the timesaving attributes of computerized research as a

18  reason reimbursement should be encouraged. The court also noted that fee-paying clients

19  reimburse counsel for computerized legal and factual research. *Id*.

20       In sum, Lead Counsel's expenses, in an aggregate amount of $268,671.53, were

21  reasonably and necessarily incurred in the prosecution of the Action and should be approved, and

22  Lead Plaintiffs VIGERS' and MPERS' modest costs, totaling $13,631.02, as noted in their

23  supporting declarations appended as Exhibits 1 and 3 to the Basser Declaration, should be

24  reimbursed.[12]

25       
26  [12]    While the costs of administration of the settlement are dependent on the total cost of
    reimbursement to banks, brokers, and nominees, settlement administrator Kroll has agreed to a
27  cap of $150,000 for all other administration fees and expenses. Thus, costs of administration,
    which will be paid for out of the settlement fund, should approximate less than 1% of the
28  settlement.

## IV.    CONCLUSION

Lead Counsel has litigated this case with creativity and skill, and have produced an exceptional result for the Settlement Class. Lead Counsel respectfully requests that it be awarded fees in the amount of 22.5% of the Settlement Fund, of which calculates to $6,750,000.00, and reimbursed for the litigation expenses incurred in prosecuting and settling the Action in the amount of $268,671.53, together with accrued interest, and the Lead Plaintiffs be awarded their costs in the amount of $11,825.00 for the Public Employees' Retirement System of Mississippi and $1,806.02 for the Government Employees' Retirement System of the Virgin Islands.

DATED:  July 16, 2021

Respectfully submitted,

**BARRACK, RODOS & BACINE**

STEPHEN R. BARRACK (121590)
sBarrack@barrack.com
SAMUEL M. WARD (216562)
sward@barrack.com

/s/ STEPHEN R. BASSER

STEPHEN R. BASSER

600 West Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
Facsimile: (619) 230-1874

JEFFREY A. BARRACK (admitted *pro hac vice*)
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-0600
Facsimile: (215) 963-0838
jbarrack@barrack.com

*Lead Counsel for Lead Plaintiffs the Public Employees' Retirement System of Mississippi, the Public Employees Retirement Association of New Mexico, and the Government Employees' Retirement System of the Virgin Islands, and the Proposed Settlement Class*