STEPHEN R. BASSER (121590)
SAMUEL M. WARD (216562)
**BARRACK, RODOS & BACINE**
One America Plaza
600 West Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
Facsimile: (619) 230-1874
*sbasser@barrack.com*
*sward@barrack.com*

JEFFREY A. BARRACK (admitted *pro hac vice*)
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-0600
Facsimile: (215) 963-0838
*jbarrack@barrack.com*

*Attorneys for Lead Plaintiffs the Public Employees' Retirement System of Mississippi, the Public Employees Retirement Association of New Mexico, and the Government Employees' Retirement System of the Virgin Islands and the Proposed Settlement Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| IN RE WAGEWORKS, INC., SECURITIES LITIGATION<br><br>This Document Relates to:<br>ALL ACTIONS. | CASE NO. 4:18-CV-01523-JSW<br><br>**NOTICE OF MOTION AND MOTION FOR DISTRIBUTION OF SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF**<br><br>**Judge: Hon. Jeffrey S. White**<br>**Dept.: Courtroom 5**<br>**Hearing Date: May 26, 2023**<br>**Hearing Time: 9:00 A.M.** |

**TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

**PLEASE TAKE NOTICE** that on May 26, 2023 at 9:00 AM at 1301 Clay Street, Courtroom 5, Oakland, California, Lead Plaintiffs the Public Employees' Retirement System of Mississippi, the Public Employees Retirement Association of New Mexico, and the Government Employees' Retirement System of the Virgin Islands ("Lead Plaintiffs"), by and through the undersigned attorneys, hereby move for the entry of an order: (i) approving the administrative determinations of the Court-approved Claims Administrator concerning the acceptance and rejection of the claims submitted; (ii) directing the distribution of the Net Settlement Fund to Settlement Class Members whose claims have been accepted as valid and approved by the Court, according to the distribution plan proposed by the Claims Administrator; (iii) establishing a bar date beyond which new claims will not be allowed; (iv) approving payment of the Claims Administrator's fees and expenses in connection with the initial distribution of the Net Settlement Fund; (v) authorizing destruction of Proofs of Claim after the distribution is complete; and (vi) following reasonable and diligent efforts to distribute the Net Settlement Fund, distribution of any remainder to Opportunity Junction, a non-profit that operates within the Northern District of California.

This motion is based upon this Notice of Motion, the accompanying Memorandum of Law, the Declaration of Samuel M. Ward filed in support thereof, and the Declaration of Justin R. Hughes, Kroll Settlement Administration, LLC, in Support of Lead Plaintiffs' Motion for Distribution of the Net Settlement Fund (and its annexed exhibits) submitted concurrently herewith, the pleadings and other documents on file in this action, and all other written material or oral argument as may be presented to the Court. A proposed order is being submitted herewith.

**I.      PRELIMINARY STATEMENT**

Lead Plaintiffs respectfully submit this memorandum of law in support of their motion for entry of the proposed Order Approving Distribution of Net Settlement Fund (the "Distribution Order") in the above-captioned action (the "Action"), consistent with the accompanying Declaration of Justin R. Hughes, Kroll Settlement Administration, LLC, in Support of Lead

Plaintiffs' Motion for Distribution of the Net Settlement Fund (the "Hughes Declaration"), submitted on behalf of the Court-approved Claims Administrator in the Action, Kroll Settlement Administration, LCC ("KSA"), filed as Exhibit A to the Declaration of Samuel M. Ward ("Ward Decl.").

If granted, the motion will permit the distribution of the Settlement proceeds to members of the Settlement Class whose Proof of Claim and Release forms ("Proofs of Claim") are accepted by the Court. More specifically, the proposed Distribution Order will: (i) approve KSA's administrative determinations accepting and rejecting the claims submitted; (ii) direct the distribution of the Net Settlement Fund to Settlement Class Members whose claims have been accepted as valid and approved by the Court, according to the distribution plan proposed by KSA; (iii) establish a bar date beyond which new claims will not be allowed; (iv) approve payment of KSA's fees and expenses in connection with the initial distribution of the Net Settlement Fund; and (v) authorize destruction of Proofs of Claim after the distribution is complete.

Previously, Lead Plaintiffs and Defendants reached a Settlement of this action that created a settlement fund of $30,000,000 for the Settlement Class. Pursuant to the Stipulation of Settlement and the Court's order approving the Settlement, that Settlement Fund was deposited into an escrow account and has been earning interest for the benefit of the Class.

## II.     SETTLEMENT APPROVAL AND NOTICE TO THE SETTLEMENT CLASS

On May 3, 2021, the Court issued the Order Granting Preliminary Approval of Class Action Settlement and Directing Notice to the Settlement Class (the "Preliminary Approval Order") that, among other things, preliminarily certified the Settlement Class, preliminarily approved the Settlement, mandated Notice of the Settlement to be disseminated to members of the Settlement Class, and scheduled a final approval hearing. The Settlement Class certified by this Court, for the purposes of effectuating settlement, consists of two subclasses, defined as follows:

> **(a) 1934 Act Class**: All persons and entities who purchased or otherwise acquired shares of WageWorks's publicly traded common stock in the open market between

May 6, 2016 and March 1, 2018, inclusive (the "Class Period"), and were damaged thereby. Excluded from the 1934 Act Class are: the Defendants; the officers and directors of WageWorks, WageWorks' successor in-interest, HealthEquity, Inc.; members of Defendants' families and their legal representatives, heirs, successors, and assigns, and any entity in which Defendants have or had a controlling interest. Also excluded from the 1934 Act Class are those persons and entities listed on Exhibit A hereto who submitted valid and timely requests for exclusion from the Settlement Class in accordance with the requirements set forth in the Notice.

**(b) 1933 Act Class**: all persons and entities who purchased or otherwise acquired WageWorks Common Stock issued pursuant or traceable to the Registration Statement and Prospectus for WageWorks's public offering of Common Stock on June 19, 2017 (the "Offering" or "June 2017 offering") and who were damaged thereby. Excluded from the 1933 Act Class are the Defendants, the officers and directors of WageWorks; WageWorks successor-in-interest, HealthEquity, Inc.; members of Defendants' families and their legal representatives, heirs, successors and assigns, and any entity in which Defendants have or had a controlling interest. Also excluded from the 1933 Act Class are those persons and entities listed on Exhibit A hereto who submitted valid and timely requests for exclusion from the Settlement Class in accordance with the requirements set forth in the Notice.

Also excluded from the Class are those Persons who timely and validly requested exclusion from the Class pursuant to the Notice of Pendency and Proposed Settlement of Class Action.

In the Preliminary Approval Order, the Court also appointed KSA as the Claims Administrator and directed KSA to issue the Notice and the Proof of Claim and process the claims submitted.

Consistent with the Preliminary Approval Order, and beginning on May 17, 2021, KSA issued notice and, thereafter on mailed the Court-approved Notice and Proof of Claim to all

potential Settlement Class Members. Hughes Declaration, ¶ 5. KSA also arranged for the publication of the Court-approved Summary Notice in *Investor's Business Daily* on May 31, 2021 and issued a press release through *PR Newswire* on June 1, 2021, and posted the Notice and Proof of Claim form on the website it had created for this case: *www.wageworkssettlement.com*. *Id.*

On August 20, 2021, following dissemination of notice, this Court entered the Final Judgment and Order (the "Final Approval Order"), by which it granted final approval of the Settlement upon a determination that the Settlement was fair, reasonable, and adequate. Dkt. No. 188. Pursuant to the Final Approval Order, the Court retained jurisdiction over matters relating to the Settlement, including its implementation and the disposition of the Net Settlement Fund. *Id.*

### III.    CLAIMS ADMINISTRATION

Pursuant to the Stipulation and the Notice, all Settlement Class Members wishing to participate in the Net Settlement Fund were required to submit Proof of Claim forms, postmarked on or before September 14, 2021. Hughes Decl., ¶ 6. Settlement Class Members seeking to share in the Net Settlement Fund were directed to submit their Proofs of Claim to an address specified for the purpose of this Settlement. *Id.*, KSA personnel opened the Proofs of Claim upon receipt and each Proof of Claim was assigned a unique claim number. *Id.*, ¶ 13. KSA personnel entered information concerning each claim into a computerized database, and reviewed the documentation provided in support of each Proof of Claim. Hughes Decl., ¶ 13, KSA processed electronically filed claims in a similar manner. *Id.*, ¶¶ 14-16.

When a Proof of Claim lacked the required documentation to substantiate the Claimant's transactions during the Class Period or was otherwise deficient, KSA sent a deficiency letter to the Claimant requesting the submission of appropriate documentary evidence to correct the deficiency. Hughes Decl., ¶ 19. The deficiency letters notified each Claimant that unless the deficiency was corrected within twenty (20) days, the claim would be entirely rejected or accepted only to the extent of the documentation supplied. *Id.* Similarly, KSA sent rejection letters to Claimants who submitted claims that KSA had determined were ineligible, in whole or in part.

*Id*. For example, KSA sent rejection letters to Claimants whose claims were based on shares of WageWorks common stock that were purchased outside the Class Period. ¶¶ 19, 30. All Claimants who were sent either deficiency or rejection letters were advised of their right to contest the rejection of their claim. ¶ 19. To date, three Claimants have contested the rejection of their claim. ¶ 23. However, KSA contacted each of the three Claimants, discussed the determination of their claim status and, where possible, facilitated the submission of missing information or documentation. *Id.* As a result, each of the three Claimants who initially contested KSA's administrative determinations have either cured their claims or retracted their objections. *Id.* Thus there are no contested claims that require Court review. *Id.*

KSA received 23,566 Proofs of Claim. Hughes Decl., ¶¶ 17, 27. Through the claims administration process, KSA has determined that 12,032 claims are timely eligible claims and an additional 30 claims are late but otherwise eligible. *Id.* ¶¶ 27-29. KSA determined, and Lead Counsel agrees, that 11,504 of the claims received are non-payable for a variety of reasons, including, among others, that the Claimant did not purchase WageWorks stock during the Class Period, the Claimant filed a duplicate Proof of Claim, and/or the Claimant failed to provide the required documentation to substantiate their claim. *Id.*, ¶ 30.

For each payable claim submitted, KSA calculated a Claimant's Recognized Claim pursuant to the Court-approved Plan of Allocation. Hughes Decl., ¶ 28. KSA received 23,566 Proofs of Claim and determined that 12,032 of them are timely eligible claims. *Id.*, ¶¶ 27-28. 30 of these claims with recognized losses were submitted after the September 14, 2021 claim filing deadline set by the Court but are otherwise eligible claims. ¶¶ 25, 29. However, KSA recommends, and Lead Counsel agrees, that these late-filed claims should not be rejected solely because they were filed late. KSA continues to receive, review and process correspondence or information it receives from Settlement Class Members with respect to Proofs of Claim already received by KSA. If KSA believes that any claim amounts require adjustment based on this new correspondence or information, KSA will update its claims database with the new information and report updated totals to Lead Counsel before distribution of the Net Settlement Fund.

## IV.     PAYMENT TO CLAIMS ADMINISTRATOR

Both the Stipulation (at ¶ 3.8) and the Preliminary Approval Order (at ¶ 19) authorize the payment of the reasonable and customary fees and costs associated with the review of claims and administration of the Settlement out of the Settlement Fund. Such reasonable and customary fees and costs include KSA performing claims administration services in connection with providing Notice to the Settlement Class, and with the Settlement Fund distribution, as well as an estimate of additional fees and expenses required to complete the administration and distribution of the Net Settlement Fund, including but not limited to, calculating distribution amounts, printing and mailing checks, monitoring uncashed and undeliverable checks, and making reasonable and diligent efforts to contact claimants who have not cashed their checks and sending them replacement checks, if necessary.

As set forth in the Hughes Declaration, the actual fees, expenses, and anticipated fees and expenses incurred through the claims administration and distribution process is $167,000.58. Hughes Decl., ¶ 33. Thus far, KSA has received no payment from the Settlement Fund. *Id*. and Exhibit D to the Hughes Declaration. Lead Plaintiffs therefore request that the Court approve payment of the outstanding balance owed to KSA for services rendered and to be rendered through the distribution process. *Id*. The actual fees, expenses, and anticipated fees and expenses incurred through the claims administration and distribution process amount to less than the $300,000.00 authorized pursuant to the Stipulation. *See* Stipulation, ¶ 3.8.

## V.      DISTRIBUTION OF THE NET SETTLEMENT FUND

Lead Plaintiffs request that the Court approve the administrative recommendations of KSA to accept certain claims, including the late claims; to reject wholly ineligible or otherwise deficient claims, as set forth in the Hughes Declaration; and to authorize a distribution of the Net Settlement Fund (after payment or reserve for payment of the additional Claims Administrator's

expenses and taxes and tax preparation fees and additional escrow fees, if any) to the Authorized Claimants pursuant to the Court-approved Plan of Allocation.

The sum total of Recognized Claims for all Proofs of Claim recommended for acceptance, as calculated in accordance with the Court-approved Plan of Allocation, is $277,516,938.22, which is comprised of $267,751,812.42 in Section 10(b) Recognized Claims and $9,7665,125.81 in Section 11 Recognized Claims. Hughes Decl., ¶¶ 27-29. According to the Plan of Allocation, each Authorized Claimant whose *pro rata* payment is at least $10.00 will be allocated a *pro rata* share of the Net Settlement Fund based on his, her or its Recognized Claim as compared to the total Recognized Claim for all Authorized Claimants. Upon approval by the Court, KSA will calculate each Authorized Claimant's percentage of the total Recognized Claims and apply that percentage to the total dollar value of the Net Settlement Fund available at the time of distribution to calculate the *pro rata* share of the Net Settlement Fund to be sent to each Authorized Claimant. *Id.*, ¶ 35(a)-(d).

In accordance with paragraph 6 of the Escrow Agreement between Lead Counsel and Wells Fargo Bank, National Association (the "Escrow Agent"), Lead Counsel has selected Huntington Bank as the Disbursing Agent for the purpose of making distribution from the Settlement Fund to the Authorized Claimants. Ward Decl., Ex. B. Upon entry of an order by the Court directing the distribution of the Net Settlement Fund to Authorized Claimants, Lead Counsel, on behalf of Lead Plaintiffs, will direct the Escrow Agent to transfer the Net Settlement Fund to the Disbursing Agent.

As soon as is practicable after the receipt of the Net Settlement Fund by the Disbursing Agent, KSA will prepare and mail checks to Authorized Claimants representing their *pro rata* share of the Net Settlement Fund. *Id.*, ¶¶ 35(e).

After the initial distribution, KSA will issue replacement checks, as requested, and attempt to locate current addresses for Authorized Claimants whose checks are returned as undeliverable. Hughes Decl., ¶¶35(f), 27. If a balance remains in the Net Settlement Fund after six months from the initial distribution, KSA will notify Lead Counsel if it is feasible and economical to reallocate

7

such balance among Authorized Claimants who have cashed their initial distribution check and who would receive at least $10.00 from such a redistribution, and will, at the direction of Lead Counsel, administer any feasible and economical reallocations. *Id.*, ¶ 39.

Eighteen months after initial distribution of the Net Settlement Fund, and after reasonable and diligent efforts to distribute the entire Net Settlement Fund to Authorized Claimants, any remaining balance in the Net Settlement Fund is to be distributed to Opportunity Junction, a non-sectarian, not-for-profit § 501(c)(3) organization that operates within the Northern District of California.

As of March 27, 2023, the Net Settlement Fund had a value of $23,528,314.94. Lead Plaintiffs now request that the Court authorize the distribution of the Net Settlement Fund (after payment of the Claims Administrator expenses noted above, and payment of, or reserve for, taxes, tax preparation fees and additional escrow fees, if any), to Authorized Claimants.

## VI.   RELEASE OF CLAIMS

In order to allow the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund beyond the amount allocated to Authorized Claimants, and to provide that all persons involved in the review, verification, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or Net Settlement Fund, be released and discharged from any and all claims arising out of such involvement. Accordingly, Lead Plaintiffs respectfully request that the Court bar any further claims against the Net Settlement Fund beyond the amount allocated to Authorized Claimants, and release and discharge from any and all claims arising out of the claims administration all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration of the Settlement Fund or the Net Settlement Fund.

## VII. CONCLUSION

As explained above and in the Hughes Declaration, the work performed by KSA was conducted fairly and in accordance with the terms and provisions of the Stipulation. Accordingly, in order to, *inter alia*, allow prompt distribution of the Net Settlement Fund to the Authorized Claimants, Lead Plaintiffs respectfully request that the Court enter the proposed distribution order submitted herewith.

DATED: April 21, 2023

Respectfully submitted,

BARRACK, RODOS & BACINE
STEPHEN R. BASSER (121590)
sbasser@barrack.com
SAMUEL M. WARD (216562)
sward@barrack.com

/s/ SAMUEL M. WARD
SAMUEL M. WARD

600 West Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
Facsimile: (619) 230-1874

JEFFREY A. BARRACK (admitted *pro hac vice*)
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103

Telephone: (215) 963-0600
Facsimile: (215) 963-0838
jbarrack@barrack.com
*Lead Counsel for Lead Plaintiffs the Public Employees' Retirement System of Mississippi, the Public Employees Retirement Association of New Mexico, and the Government Employees' Retirement System of the Virgin Islands, and the Proposed Settlement Class*